## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABIGALE PFINGSTEN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No.: 2:20-CV-00716 |
| CARNEGIE MELLON UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |
| ANOKHY DESAI, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| CARNEGIE MELLON UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |

## CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs Abigale Pfingsten and Anokhy Desai (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated against Defendant Carnegie Mellon University ("CMU" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based upon personal knowledge.

## NATURE OF THE ACTION AND FACTS COMMON TO ALL CLAIMS

1.      This is a class action lawsuit on behalf of all people who paid tuition and fees for the Spring 2020 academic semester at CMU, and who, because of Defendant's response to the Novel Coronavirus Disease 2019 ("COVID-19") pandemic, lost the benefit of the education for

which they paid tuition, and/or the services for which they paid fees, without having their tuition and fees refunded to them. CMU is one of the country's most preeminent universities, with an enrollment of approximately 15,000 students. CMU offers approximately 80 formal major fields of study for undergraduate students, as well as a number of graduate programs.

2.      Plaintiffs and CMU entered into a contractual agreement whereby Plaintiffs would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person, on-campus educational services, experiences, opportunities, and other related services to Plaintiffs. The terms of the contractual agreement were set forth in publications from CMU, including but not limited to, CMU's Spring Semester 2020 Course Catalog ("Course Catalog").[1]

3.      When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying for selected courses.

4.      The Course Catalog provided Plaintiffs and Class Members with information regarding the courses offered, the course instructors, and the course description. Further, CMU's class schedule specified a "Delivery Mode" – "Faculty-Student" / "Same Location," in a specific building or classroom on the Pittsburgh campus. For example, the entry for Plaintiff Pfingsten's Spring 2020 Acting Ensemble for Non-Majors course is reproduced below:[2]



| COURSE | COURSE TITLE | UNITS | SEC | MINI | DAYS | BEGIN | END | TEACHING LOCATION | BLDG/ROOM | DELIVERY MODE | INSTRUCTOR |
|--------|-------------|-------|-----|------|------|-------|-----|-------------------|-----------|---------------|------------|
| 54192 | Acting Ensemble for Non-Majors | 4.5 | A | | TR | 12:30PM | 02:50PM | Pittsburgh, Pennsylvania | PCA 314 | Faculty-Student Same Location | Vandenberg, Jonathan |

5.      The detailed catalog entry for Plaintiff Pfingsten's Spring 2020 Acting Ensemble for Non-Majors course is reproduced below:

---

[1] http://coursecatalog.web.cmu.edu/pdf/2019-20.pdf (lasted visited Sept. 17, 2020).
[2] https://enr-apps.as.cmu.edu/open/SOC/SOCServlet/search (last visited Sept. 17, 2020) - SCREENSHOTS



6.      Other publications from CMU reference the in-person, on-campus nature of the Spring Semester 2020 course offerings, including course specific syllabi and the University Policies.[3]

7.      CMU's Spring 2020 semester commenced on January 13, 2020 and concluded on or about May 12, 2020.  Plaintiffs and Class Members' payment of tuition and fees were intended to cover in-person, on-campus education, experiences, and services for the entirety of the Spring

_____

[3] https://www.cmu.edu/policies/student-and-student-life/ug-course-meeting.html (stating that the Undergraduate Course Meeting Procedure is intended "to ensure that students have a period in which they are free to carry on co-curricular activities and athletics").

Semester.

8.      On March 11, 2020, CMU, via letter from University President Farnam Jahanian, announced that because of the global COVID-19 pandemic, beginning Monday, March 16 (the first day back from Spring Break) all classes for the remainder of the Spring 2020 Semester would be held remotely, online.

9.      CMU has not held any in-person classes after March 6, 2020.  Classes that have continued were only offered in an online format, with no in-person instruction.

10.     As a result of the closure of Defendant's facilities, Defendant did not deliver the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  The online learning options being offered to CMU students are subpar in practically every aspect, including the lack of facilities, materials, and access to faculty, but, most importantly, they are _not_ the in-person, on-campus educational opportunity which was promised. . Students were deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.  The remote learning options are in no way the equivalent of the in-person, on-campus educational experience that Plaintiffs and the putative class members contracted and paid for, and which makes CMU one of the premier educational institutions in the world.

11.     CMU did not provide in-person education, experiences, or related services for approximately 50% of the Spring Semester 2020.

12.     Nonetheless, CMU has not refunded any tuition for the Spring 2020 semester.  And while CMU has offered refunds of some mandatory fees, it has not committed to refunding all mandatory fees.

13.     Plaintiffs and the putative class did not enter into an agreement with CMU for online education, but rather sought and were promised an in-person, on-campus education from

CMU.  Plaintiffs and the putative class are therefore entitled to a refund of tuition and fees for in-person educational services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

14.     Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the reduction in benefit provided during the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased.  Plaintiffs seek a return of these amounts, as damages, on behalf of themselves and the Class as defined below

## PARTIES

15.     Plaintiff Abigale Pfingsten is a citizen of Pennsylvania who resides in Pittsburgh, Pennsylvania.  Ms. Pfingsten is an undergraduate student at CMU pursuing a Bachelor's Degree in Statistics, and a Bachelor's Degree in International Relations.  The Statistics and Data Science, as well as the International Relations programs at CMU rely extensively on in-person instruction, peer collaboration, and access to CMU's facilities.  None of these resources are available to Ms. Pfingsten while in-person classes are suspended.  Additionally, Ms. Pfingsten was enrolled in an acting class.  The Acting program at CMU also relies extensively on in-person instruction, peer collaboration, student presentations, and access to CMU's facilities.   Ms. Pfingsten paid approximately $2,769.62 tuition and fees to Defendant for the Spring Semester 2020.  Ms. Pfingsten has not been provided a refund of any tuition monies paid, despite the fact that in-person classes have not been held since March 6, 2020.  Ms. Pfingsten has also not been provided a refund of all fees.

16.     Plaintiff Anokhy Desai is a citizen of Pennsylvania and resides in Allegheny

County, Pennsylvania. Ms. Desai is a graduate student at CMU pursuing a Master of Science in Information Security Policy. Ms. Desai paid tuition and fees for the Spring Semester 2020 to enable her to obtain an in-person, on-campus educational experience and allow her to participate in the activities and to utilize the services covered by the fees. Ms. Desai has not been provided a refund of any tuition monies paid, despite the fact that in-person classes have not been held since March 6, 2020. Ms. Desai has also not been provided a refund of all fees.

17.     Prior to beginning the Spring Semester 2020, and prior to paying tuition and fees, Plaintiffs consulted the Course Catalog and enrolled in courses for the Spring Semester 2020. The fees Plaintiffs paid include a Student Activities Fee, a Technology Fee, a Media Fee, and a Transportation Fee.

18.     The "Student Activities Fee" is designed to cover student programming and events on campus.[4] This mandatory fee is $132 for undergraduates and $109 for graduate students.

19.     The "Technology Fee" is designed to support information technology, software licensing, and the email system.[5] This is a mandatory $215 fee.

20.     The "Media Fee" is assessed to undergraduate students only to support the newspaper program.[6] This is a mandatory $5 fee.

21.     The "Transportation Fee" is designed to support students' transportation needs to campus including unlimited access to the local Port Authority Transit system as well as the Carnegie Mellon University Shuttle and Escort Service.[7] This is a mandatory $112 fee.

22.     Prior to beginning the Spring 2020 Semester, and to paying tuition and fees, Plaintiffs consulted the Course Catalog and enrolled in courses for the Spring Semester 2020. In

---

[4] https://www.cmu.edu/sfs/tuition/fees/2019-2020-fees.html
[5] *Id.*
[6] *Id.*
[7] *Id.*

consulting the Course Catalog, Plaintiffs understood and believed that every course in which they were enrolled in, were to be taught in-person and on campus. Plaintiffs' understanding and belief were based on the class schedule specifying an on-campus location where the course would be taught.[8] Thus, the in-person nature of the courses was part of the benefit of the bargain, and Plaintiffs would not have paid as much, if any, tuition and fees for the Spring Semester 2020 at CMU had they known that the courses would not, in fact, be taught in-person, on the CMU campus.

23.   Indeed, Plaintiffs' class descriptions in CMU's schedule of classes, as seen online, shows that each and every class in which Plaintiffs were enrolled was to be taught in-person, at the Pittsburgh Campus. By way of example, the schedule of classes lists the "Terrorism and Insurgency" course that Plaintiff Pfingsten enrolled in for the Spring Semester 2020 as being taught by traditional "**Faculty-Student**" method and being offered at the "**Same Location,**" i.e., in person on the Pittsburgh campus in the PH building, room A18C on Mondays and Wednesdays:

| Semester | Course Type | Course Level | Teaching Location |
|---|---|---|---|
| Spring 2020 | All | Undergraduate | Pittsburgh, Pennsylvania |
| Keyword | Keyword Type | | |
| Terrorism | Course Titles Only | | |

last updated: Fri Sep 18, 2020

**INSTITUTE FOR POLITICS AND STRATEGY**

| COURSE | COURSE TITLE | UNITS | SEC | MINI | DAYS | BEGIN | END | TEACHING LOCATION | BLDG/ROOM | DELIVERY MODE | INSTRUCTOR |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 84389 | Terrorism and Insurgency | 9 | A | | MW | 12:00PM | 01:20PM | Pittsburgh, Pennsylvania | PH A18C | Faculty-Student Same Location | Clarke, Colin |

24.   The same is true for the rest of the courses that Plaintiff Pfingsten enrolled in for the Spring Semester 2020:[9]

---

[8] https://enr-apps.as.cmu.edu/open/SOC/SOCServlet/search (last visited Sept. 17, 2020).
[9] https://enr-apps.as.cmu.edu/open/SOC/SOCServlet/search (last visited Sept. 21, 2020).



25.     The same is also true for the courses that Plaintiff Desai enrolled in for the Spring

Semester 2020:[10]



26.     Defendant Carnegie Mellon University is a private research university with its

principal place of business at 5000 Forbes Avenue, Pittsburgh, PA 15213.

---

[10] https://enr-apps.as.cmu.edu/open/SOC/SOCServlet/search (last visited Sept. 21, 2020).

## JURISDICTION AND VENUE

27.     The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

28.     This Court has personal jurisdiction over Defendant because it is headquartered in this District, and many of the acts and transactions giving rise to this action occurred in this District.

29.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District, and because Plaintiffs and Defendant are residents of this District.  Specifically, the contract that is the subject of this action was formed in this District.

## FACTUAL ALLEGATIONS

### *Plaintiffs And Class Members Paid Tuition And Fees For Spring Semester 2020*

30.     Plaintiffs and Class members are individuals who paid the cost of tuition and other fees for the Spring 2020 Semester at CMU.

31.     Spring Semester 2020 classes at CMU began on or about January 13, 2020.  Classes and final exams for the semester concluded on or around May 12, 2020.

32.     Consistent with their agreement with CMU, Plaintiffs and Class members paid the cost of tuition for the Spring Semester 2020.  They also paid other fees associated with the Spring Semester 2020.

33.     Approximate tuition costs at CMU for the Spring 2020 Semester are as follows:

- Undergraduate Degree at CMU: $27,908
- Graduate Degree at CMU: $872 per credit
- MBA at CMU: $34,000

34.    Fees paid by CMU students vary based on program of study and whether undergraduate or graduate, however, all undergraduate students paid a mandatory $132 Activity Fee, $215 Technology Fee, and $112 Transportation Fee, among other fees.

*35.*    The tuition and fees described in the paragraph above is provided by way of example; total damage amounts – which may include other fees that are not listed herein but that were not refunded – will be proven at trial.

### *In Response To COVID-19, CMU Closed Campuses And Cancelled All In-Person Classes*

36.    On March 11, 2020, CMU, via letter from University President Farnam Jahanian, announced that because of the global COVID-19 pandemic, beginning Monday, March 16 (the first day back from Spring Break) all classes for the remainder of the Spring 2020 Semester would be held remotely.

37.    CMU has not held any in-person classes since March 6, 2020.  Classes that have continued have only been offered in an online format, with no in-person instruction.

38.    As a result of the closure of Defendant's facilities, Defendant has not delivered the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for.  Plaintiffs and the putative class are therefore entitled to a refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided. Even if Defendant did not have a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it is not providing.

39.    Plaintiffs and members of the Class did not choose to attend an online institution of higher learning, but instead chose to attend Defendant's institution and enroll on an in-person

basis for on-campus instruction.

40.    Defendant markets the CMU on-campus experience as a benefit of enrollment on

CMU's website:

## Student Experience

The Carnegie Mellon University experience embraces all aspects of a
student's life.

In the classroom, around the dinner table, on the playing fields or on stage,
students pursue their curiosities, passions and aspirations.

## Academics

Breakthroughs happen at the intersection of fields — a Carnegie
Mellon University specialty. Renowned faculty explore side by side
with students, collaborating on research, tackling society's biggest
challenges and delivering work that matters.

41.    CMU uses its websites, promotional materials, circulars, admission papers, and

publications to tout the benefit of being on campus and the education and opportunities students

will receive in its facilities.

42.    The online learning options being offered to CMU students are subpar in practically

every aspect and a shadow of what they once were, from the lack of facilities, materials, and access

to faculty.  Students have been deprived of the opportunity for collaborative learning and in-person

dialogue, feedback, and critique. This deprivation of opportunity and subpar learning experience

is the result of the unilateral reduction in bargained for benefits.

43.     The remote learning options are in no way the equivalent of the in-person education putative class members contracted and paid for.  The remote education being provided is not even remotely worth the amount charged class members for Spring Semester 2020 tuition.  The tuition and fees for in-person instruction at CMU are higher than tuition and fees for other online institutions because such costs cover not just the academic instruction, but encompass an entirely different experience which includes but is not limited to:

- Face to face interaction with professors, mentors, and peers;

- Access to facilities such as libraries, laboratories, computer labs, and study room;

- Student governance and student unions;

- Extra-curricular activities, groups, intramural sports, etc.;

- Student art, cultures, and other activities;

- Social development and independence;

- Hands on learning and experimentation;

- Networking and mentorship opportunities.

44.     In acknowledging that a tuition and fee decrease or refund is the proper remedy when reducing the benefit paid for and providing education to an online-only format, Northwestern, Georgetown, Princeton, American, and Johns Hopkins Universities have all provided refunds of 10% of students' tuition for the Fall 2020 semester after going fully virtual; and Williams College 15%.[11]

45.     Through this lawsuit Plaintiffs seek, for themselves and Class members, Defendant's disgorgement of the pro-rated portion of tuition and fees, proportionate to the

---

[11] https://www.marketwatch.com/story/more-colleges-are-reversing-course-and-going-remote-after-covid-19-outbreaks-and-some-are-now-reducing-tuition-11599076746

reduction in benefit received during the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided. Plaintiffs seek return of these amounts on behalf of themselves and the Class as defined below.

## CLASS ALLEGATIONS

46.     Plaintiffs seek to represent a class defined as all people who paid CMU Spring Semester 2020 tuition and/or fees for in-person educational services that CMU failed to provide, and whose tuition and fees have not been refunded (the "Class"). Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

47.     Plaintiffs also seek to represent a subclass consisting of Class members who reside in Pennsylvania (the "Subclass").

48.     Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

49.     **Numerosity.** The members of the Class and Subclass are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable. Upon information and belief, Plaintiffs reasonably estimate that there are tens of thousands of members in the Class and Subclass. Although the precise number of Class members is unknown to Plaintiffs, the true number of Class members is known by Defendant and may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or

publication through the distribution records of Defendant and third-party retailers and vendors.

50.     **Existence and predominance of common questions of law and fact.**   Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual Class members.   These common legal and factual questions include, but are not limited to, the following:

(a)     whether Defendant accepted money from Class and Subclass members in exchange for the promise to provide services;

(b)     whether Defendant has provided the services for which Class and Subclass members contracted; and

(c)     whether Class and Subclass members are entitled to a refund for that portion of the tuition and fees that was contracted for services that Defendant did not provide.

(d)     whether Defendant has unlawfully converted money from Plaintiffs, the Class and Subclass; and

(e)     whether Defendant is liable to Plaintiffs, the Class, and Subclass for unjust enrichment.

51.     **Typicality.**   Plaintiffs' claims are typical of the claims of the other members of the Class in that, among other things, all Class and Subclass members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.   Further, there are no defenses available to Defendants that are unique to Plaintiffs.

52.     **Adequacy of Representation.**   Plaintiffs will fairly and adequately protect the interests of the Class and Subclass.   Plaintiffs have retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this action

on behalf of the Class and Subclass.  Furthermore, Plaintiffs have no interests that are antagonistic to those of the Class or Subclass.

53.    **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for the Class or Subclass on an individual basis, to obtain effective redress for the wrongs committed against them.  Furthermore, even if Class or Subclass members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

54.    In the alternative, the Class and Subclass may also be certified because:

(a)    the prosecution of separate actions by individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the Defendant;

(b)    the prosecution of separate actions by individual Class and Subclass members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the

adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

## COUNT I
### Breach Of Contract
### (On Behalf Of The Class And Subclass)

55.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

56.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclass against Defendants.

57.     Plaintiffs and Defendant entered into a contractual relationship where Plaintiffs would provide payment in the form of tuition and fees, and Defendant, in exchange, would provide in-person, on-campus educational services, experiences, opportunities, and other related services. The terms of the parties' contractual relationship are set forth in publications from Defendant, including but not limited to the Spring Semester 2020 Course Catalog.[12]

58.     When Plaintiffs and Class Members sought to enter into a contractual agreement with Defendant for the provision of educational services for the Spring Semester 2020, Plaintiffs and Class Members viewed the Course Catalog to make specific course selections prior to registering and paying tuition and fees for those selected courses.  Defendant's Course Catalog constitutes an offer to enter a contractual agreement.

59.     The Course Catalog provided Plaintiffs and Class Members with information

---

[12] http://coursecatalog.web.cmu.edu/pdf/2019-20.pdf (lasted visited Sept. 17, 2020).

regarding the courses offered, the instructor, the days and times during which the courses would be held, and the location (including the building and room number) in which the courses would be held.

60.     Through the admission agreement and payment of tuition and fees, Plaintiffs and each member of the Class and Subclass entered into a binding contract with Defendant.

61.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs, Class, and Subclass members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.  Tuition for Spring Semester 2020 was intended to cover in-person, on campus educational services from January through May 2020.  In exchange for tuition monies paid, Class and Subclass members were entitled to in-person educational services through the end of the Spring Semester.

62.     As part of the contract, and in exchange for the aforementioned consideration, Defendant promised to provide certain services, all as set forth above.  Plaintiffs and Class members fulfilled their end of the bargain when they paid monies due for Spring Semester 2020 tuition.  Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class members were entitled to in-person, on campus educational services through the end of the Spring Semester.

63.     Defendant materially breached the parties' contractual agreement by failing to provide in-person, on campus education services for the entirety of the Spring Semester 2020.  The provisions of the contract breached by Defendant include, but are not limited to, the provision setting forth the details of in-person educational services as described in the Spring Semester 2020 Course Catalog.   The Spring Semester 2020 Course Catalog indicated classes would be

administered in an in-person, on-campus setting.  The Course Catalog did not make any reference to the administration of these courses in an online format.

64.     Defendant has failed to provide the contracted for services and has otherwise not performed under the contract as set forth above by failing to provide in-person education services. Defendant has retained monies paid by Plaintiffs and the Class for their Spring Semester 2020 tuition and fees, without providing them the benefit of their bargain.

65.     Plaintiffs and members of the Class and Subclass have suffered damage as a direct and proximate result of Defendant's breach, including but not limited to being deprived of the education, experience, and services to which they were promised and for which they have already paid.

66.     As a direct and proximate result of Defendant's breach, Plaintiffs, the Class, and Subclass are entitled to damages, to be decided by the trier of fact in this action, to include but not be limited to reimbursement of certain tuition, fees, and other expenses that were collected by Defendant for services that Defendant has failed to deliver.  Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since CMU shut down on March 6, 2020.

67.     Defendant's performance under the contract is not excused due to COVID-19. Indeed, Defendant should have refunded the pro-rated portion of any education services not provided.  Even if performance was excused or impossible, Defendant would nevertheless be required to return the funds received for services it will not provide.

68.     Therefore, Defendant should return a pro-rata share of the tuition and fees paid by Plaintiffs and Class Members that relate to those in-person educational services that were not provided after CMU stopped providing in-person classes after March 6, 2020.   In-person

educational services were not provided for approximately 50% of the Spring Semester 2020.

**COUNT II**
**Unjust Enrichment**
**(On Behalf Of The Class And Subclass In The Alternative)**

69.     Plaintiffs hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

70.     Plaintiffs brings this claim individually and on behalf of the members of the Class and Subclass against Defendant, in the alternative to their Breach of Contract claim, in the event that no contract is deemed to exist.

71.     Plaintiffs and members of the Class and Subclass conferred a benefit on Defendant in the form of monies paid for Spring Semester 2020 tuition and other fees in exchange for certain service and promises.   Tuition for Spring Semester 2020 was intended to cover in-person educational services from January through May 2020.  In exchange for tuition monies paid, Class members were entitled to in-person educational services through the end of the Spring Semester.

72.     Defendant voluntarily accepted and retained this benefit by accepting payment.

73.     Defendant has retained this benefit, even though Defendant has failed to provide the education, experience, and services for which the tuition and fees were collected, making Defendant's retention unjust under the circumstances.  Accordingly, Defendant should return the pro-rated portion of any Spring Semester 2020 tuition and fees for education services not provided since CMU shut down on March 6, 2020.

74.     The costs incurred for having an online only program, and by closing campus and its facilities, are lower than the cost and overhead necessary to provide classes and access on campus and in person.

75.     Allowing CMU to retain the tuition and fees, after unilaterally reducing the benefits

provided in exchange for payment of the same, would be unjust and inequitable.

76.     Defendant should be required to disgorge all profits resulting from such overpayments and establish a constructive trust from which Plaintiffs and Class Members may seek restitution.

<strong><u>COUNT III</u></strong><br><strong>Conversion</strong><br><strong>(On Behalf Of The Class And Subclass In The Alternative)</strong>

77.     Plaintiffs hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

78.     Plaintiffs brings this claim individually and on behalf of the members of the Class and Subclass against Defendant, in the alternative to their Breach of Contract claim, in the event that no contract is deemed to exist.

79.     Plaintiffs and members of the Class and Subclass have an ownership right to funds (tuition and fees) paid in exchange for the in-person educational services they were supposed to be provided during the Spring Semester 2020.

80.     CMU exercises control over Plaintiffs' and Class members' property.

81.     Plaintiffs' and Class members' funds are earmarked by the Universities in the ordinary course of business for purposes of providing account statements, and/or potential refunds, to Plaintiffs and Class members.

82.     Defendant intentionally interfered with the rights of Plaintiffs, the Class, and Subclass when it moved all classes to an online format and discontinued in-person educational services for which tuition and fees were intended to pay, while failing to provide a refund in any amount.

83.     Plaintiffs and members of the Class and Subclass demand the return of the pro-

rated portion of any Spring Semester 2020 tuition and fees for education services not provided since CMU shut down on March 6, 2020.

84.    Defendant's retention of the fees paid by Plaintiffs and members of the Class and Subclass without providing the educational services for which they paid, deprived Plaintiffs, Class and Subclass members of the funds paid for such benefits.

85.    This interference with the funds that Plaintiffs and members of the Class and Subclass paid damaged Plaintiffs and Class members in that they paid tuition and fees for services that were not be provided.

86.    Plaintiffs, Class and Subclass members are entitled to the return of pro-rated portion of any Spring Semester 2020 tuition and fees for education and services not provided since CMU shut down on March 6, 2020.

**COUNT IV**
**Money Had And Received**
**(On Behalf Of The Class)**

87.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

88.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

89.    Plaintiffs and members of the Class paid monetary funds to Defendant for tuition and fees for the Spring Semester 2020.

90.    Defendant has retained the monies paid by Plaintiffs and members of the Class for the Spring Semester 2020 while not providing in-person educational services, activities, opportunities, resources, and facilities for which those monies were paid.

91.    Defendant is in possession of and holds money that belongs to Plaintiffs and the

members of the Class in equity and good conscience.

92.     Defendant has been unjustly enriched by its retention of the funds Plaintiffs and the members of the Class paid Defendant for tuition and fees, and it is unconscionable for Defendant to retain funds to which it is not entitled.

93.     Defendant's unlawful retention of Plaintiffs' and Class Members' funds has damaged Plaintiffs and the members of the Class.

94.     Defendant owes Plaintiffs and members of the Class for money had and received, including, but not limited to, the amount of Plaintiffs' and Class Members' pro-rated tuition and fees for the Spring Semester 2020.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)     For an order certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representative of the Class and Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass;

(b)     For an order finding in favor of Plaintiffs and the Class and Subclass on all counts asserted herein;

(c)     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

(d)     For prejudgment interest on all amounts awarded;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For injunctive relief as pleaded or as the Court may deem proper; and

(g)     For an order awarding Plaintiffs and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: September 25, 2020                    Respectfully submitted,

**CARLSON LYNCH LLP**

By:     */s/ Gary F. Lynch*
Gary F. Lynch
Edward W. Ciolko*
Kelly K. Iverson
James P. McGraw
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
Email: glynch@carlsonlynch.com
        eciolko@carlsonlynch.com
        kiverson@carlsonlynch.com
        jmcgraw@carlsonlynch.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Interim Class Counsel*
**Pro Hac Vice* Forthcoming

23