## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABIGALE PFINGSTEN, individually and on behalf of all others similarly situated, <br><br>                 Plaintiff, <br>    v. <br><br> CARNEGIE MELLON UNIVERSITY <br><br>                 Defendant. | Case No.  2:20-cv-00716 |

ANOKHY DESAI, individually and on behalf of all others similarly situated,

                Plaintiff,

   v.

CARNEGIE MELLON UNIVERSITY

                Defendant.


## PLAINTIFFS' RESPONSE OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     LEGAL STANDARDS ..........................................................................................2

III.    ARGUMENT .........................................................................................................2

    A.  Plaintiffs Stated a Claim for Breach of Contract ...........................................2

          1.     The Court Should Not Reach the Same Outcome as the *Pitt*,
                *Penn*, or *Temple* Decisions ...........................................................6

          2.     Plaintiffs' Breach of Contract Claim Is Not Foreclosed by
                Defendant's Citation to University Documents ........................................8

                a)     Student Financial Obligation ...........................................9

                b)     Emergency Policy .........................................................11

                c)     Tuition Adjustment Policy...............................................11

                d)     Disclaimer.....................................................................12

    B.  Plaintiffs Sufficiently Stated a Claim in the Alternative for Unjust Enrichment ............13

    C.  Plaintiffs Sufficiently Stated a Claim for Money Had and Received.............................15

    D.  Plaintiffs' Claims Do Not Require Inquiry Into The Quality Of Plaintiffs' Education
       Received ......................................................................................................16

          1.     Damages Are Not Inherently Linked to an Assessment of Whether
                Plaintiffs Received a "Subpar" Education ..................................................19

IV.    CONCLUSION....................................................................................................20

# TABLE OF AUTHORITIES

## Cases

*Arredono v. Univ. of La Verne*,
  2021 WL 1588995 (C.D. Cal. Apr. 21, 2021) ................................................................. 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ......................................................................................................... 2

*Bahrani v. Northeastern Univ.*,
  2020 WL 7774292 (D. Mass. Dec. 30, 2020) ................................................................. 5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................................................................... 2

*Bergeron v. Rochester Inst. of Tech*,
  2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020) ............................................................... 5

*Botts v. Johns Hopkins Univ.*,
  2021 WL 1561520 (D. Md. Apr. 21, 2021) ............................................................... 5, 6

*Cavaliere v. Duff's Bus. Inst.*,
  605 A.2d 397 (Pa. Super. Ct. 1992) .............................................................................. 16

*Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*,
  795 F.2d 291 (3d Cir. 1986) .......................................................................................... 11

*Chong v. Northeastern Univ.*,
  2020 WL 7338499 (D. Mass. Dec. 14, 2020) ................................................................. 5

*Cross v. Univ. of Toledo*,
  2020 WL 4726814 (Ohio Ct. Cl. July 8, 2020) ............................................................ 14

*Doe v. Bradley Univ.*,
  2020 WL 7634159 (C.D. Ill. Dec. 22, 2020) .................................................................. 5

*Doe v. Emory Univ.*,
  2021 WL 358391 (N.D. Ga. Jan. 22, 2021) .................................................................... 5

*Espejo v. Cornell University*,
  2021 WL 810159 (N.D.N.Y. Mar. 3, 2021) .................................................................... 5

*Ford v. Rensselaer Polytechnic Institute*,
  2020 WL 7389155 (N.D.N.Y. Dec. 16, 2020) .......................................................... 5, 18

*Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*,
  91 A.3d 723 (Pa. Super. Ct. 2014) ............................................................................. 3, 8

*Geisinger Clinic v. Di Cuccio*,
  606 A.2d 509 (Pa. Super. Ct. 1992) ................................................................................ 9

*Gibson v. Lynn Univ.*,
  2020 WL 7024463 (S.D. Fla. Nov. 23, 2020) ........................................................ 5, 8, 17

*Great Northern Ins. Co. v. ADT Sec. Svcs., Inc.*,
    517 F. Supp. 2d. 723 (W.D. Pa. 2007) ................................................................. 3

*Hiatt v. Brigham Young Univ.*,
    2021 WL 66298 (D. Utah Jan. 7, 2021) ............................................................... 5

*Hickey v. Univ. of Pittsburgh*,
    2021 WL 1630579 (W.D. Pa. Apr. 27, 2021) ............................................. 6, 7, 16

*Hopkins v. GNC Franchising, Inc.*,
    288 F. App'x 871 (3d Cir. 2008) ......................................................................... 3

*In re: Boston University Covid-19 Refund Litigation*,
    2021 WL 66443 (D. Mass. Jan. 7, 2021)............................................................. 5

*In Re: University of Miami Covid-19 Tuition and Fee Refund Litigation*,
    2021 WL 1251139 (S.D. Fla. Mar. 5, 2021) ...................................................... 5

*Ingrassia Const. Co., Inc. v. Walsh*,
    486 A.2d 478 (Pa. Super. Ct. 1984)..................................................................... 3

*Lackner v. Glosser*,
    892 A.2d 21 (Pa. Super. Ct. 2006)....................................................................... 9

*Liss & Marion, P.C. v. Recordex Acquisition Corp.*,
    983 A.2d 652 (Pa. 2009)...................................................................................... 3

*Little v. Grand Canyon Univ.*,
    2021 WL 308940 (D. Ariz. Jan 29, 2021)........................................................... 5

*McCarthy v. Loyola Marymount Univ.*,
    2021 WL 268242 (C.D. Cal. Jan. 8, 2021) ......................................................... 5

*McTernan v. City of York*,
    577 F.3d 521 (3d Cir. 2009) ................................................................................ 2

*Metzner v. Quinnipiac Univ.*,
    2021 WL 1146922 (D. Conn. Mar. 25, 2021) .................................................... 5

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*,
    179 A.3d 1093 (Pa. 2018)................................................................................... 13

*Miller v. Thomas Jefferson Univ. Hosp.*,
    908 F. Supp. 2d 639 (E.D. Pa. 2012)................................................................. 17

*Nguyen v. Stephens Institute*,
    2021 WL 1186341 (N.D. Cal. Mar. 30, 2021) ................................................... 5

*Ohama v. Markowitz*,
    434 F. Supp. 3d 303 (E.D. Pa. 2020)................................................................... 9

*Omori v. Brandeis Univ.*,
    2021 WL 1408115 (D. Mass. Apr. 13, 2021)..................................................... 5

*Paladino v. Adelphi Univ.*,
    89 A.D.2d 85 (N.Y. App. Div. 1982) ................................................................ 16

*Pashak v. Barish*,
   450 A.2d 67 (Pa. Super. 1982) ........................................................... 19, 20

*Patel v. Patel*,
   2018 WL 3642417 (E.D. Pa. Aug. 1, 2018) ........................................... 16

*Patel v. Univ. of Vermont*,
   2021 WL 1049980 (D. Vt. Mar. 15, 2021) ............................................... 5

*Paynter v. New York University*,
   319 N.Y.S.2d 893 (N.Y. App. Div. 1971) ............................................... 18

*Phillips v. Cty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) .................................................................... 2

*Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*,
   967 F.3d 218 (3d Cir. 2020) .................................................................... 2

*Reardon v. Allegheny Coll.*,
   926 A.2d 477 (Pa. Super. 2007) ............................................................. 3

*Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*,
   2021 WL 140708 (M.D. Fla. Jan. 14, 2021) ...................................... 5, 19

*Rodrigues v. Boston Coll.*,
   2021 WL 1439784 (D. Mass. Apr. 15, 2021) ........................................... 5

*Roe v. Loyola Univ. New Orleans*,
   2007 WL 4219174 (E.D. La. Nov. 26, 2007) .......................................... 18

*Rosado v. Barry Univ.*,
   2020 WL 6438684 (S.D. Fla. Oct. 30, 2020) ..................................... 5, 19

*Ross v. Pennsylvania State Univ.*,
   445 F. Supp. 147 (M.D. Pa. 1978) ........................................................... 3

*Ryan v. Temple Univ.*,
   2021 WL 1581563 (E.D. Pa. Apr. 22, 2021) ........................................ 6, 7

*Salerno v. Florida S. Coll.*,
   488 F. Supp. 3d 1211 (M.D. Fla. 2020) .............................................. 5, 15

*Saroya v. Univ. of the Pacific*,
   2020 WL 7013598 (N.D. Cal. Nov. 27, 2020) .......................................... 5

*Smith v. Univ. of Penn.*,
   2021 WL 1539493 (E.D. Pa. Apr. 20, 2021) ............................. 6, 7, 8, 16

*Stevenson v. Economy Bank of Ambridge*
   197 A.2d 721 (Pa. 1964) ........................................................................ 19

*U.S. v. Kensington Hosp.*,
   760 F. Supp. 1120 (E.D. Pa. 1991) ........................................................ 15

*USA Mach. Corp. v. CSC, Ltd.*
   184 F.3d 257 (3d Cir. 1999) .................................................................. 20

*Vantage Learning (USA), LLC v. Edgenuity, Inc.*,
   246 F. Supp. 3d 1097 (E.D. Pa. 2017)............................................................ 14, 15

*Vurimindi v. Fuqua Sch. of Bus.*
   435 F. App'x 129 (3d Cir. 2011) ................................................................... 17, 18

*White v. Conestoga Title Ins. Co.*,
   53 A.3d 720 (Pa. 2012)........................................................................................ 15

## Rules

Fed. R. Civ. P. 8(a)(3)........................................................................................... 15

Fed. R. Civ. P. 8(d) .............................................................................................. 16

Fed. R. Civ. P. 8(d)(3)........................................................................................... 14

Federal Rule of Civil Procedure 8(a) .................................................................... 19

## I.    INTRODUCTION

Covid-19 is an ongoing global pandemic that impacted every aspect of our national economy, significantly impeding the exchange of goods and services. When things came to a sudden halt in the Spring of 2020, many consumers who had pre-paid for various goods and services were told that what they had purchased either: 1) could not be delivered at all; 2) would be delivered at some unknown point in the future; or 3) would be delivered in a completely different format or manner than what had been contractually promised.  This is precisely what happened in the market of higher education, including at Carnegie Mellon University ("CMU" or "Defendant").  College students all over America who in many instances incurred substantial debt to pay their tuition and campus activity fees for the spring 2020 semester were suddenly told to leave their campuses and go home to participate in their classes in an online format only, foregoing their expected (and chosen) format of live instruction and an on-campus experience.

This case is about who must bear the ultimate cost for the inability of a school to deliver the services which it promised, and for which it received payment.  Plaintiffs allege they were offered and paid for a particular bundle of services inclusive of in-person, on-campus, live education. Plaintiffs had a reasonable expectation to receive those services in exchange for payment of tuition and fees, as this is what CMU has been providing its students for decades. Despite this, Plaintiffs did not receive all that they paid for.

CMU points to several university documents in an attempt to foreclose Plaintiffs' breach of contract claim. These arguments fail, however, either because of a lack of consideration or due to a misreading of the plain language of the documents. CMU's argument that Plaintiffs' allegations are in the nature of "educational malpractice" has been rejected by numerous courts evaluating similar claims. Plaintiffs' additional claims for unjust enrichment, money had and

received, and conversion should be read as claims in the alternative, and should not be dismissed unless the Court recognizes the existence of a contract between Plaintiffs and the University governing this subject matter.

## II.   LEGAL STANDARD

"A Rule 12(b)(6) motion to dismiss for failure to state a claim must be denied where "a complaint [] contain[s] sufficient factual matter, accepted as true, [that] 'state[s] a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). The court must "accept all factual allegations in the complaint as true and draw all reasonable inferences in the "[nonmoving party]'s favor." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 229 (3d Cir. 2020).

## III.   ARGUMENT

### A.  Plaintiffs Stated a Claim for Breach of Contract

To bring a claim for breach of contract, "Pennsylvania law requires that a plaintiff allege: '(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the

contract, and (3) resultant damages.'" *Hopkins v. GNC Franchising, Inc.*, 288 F. App'x 871, 873 (3d Cir. 2008). A contract may be express, if the parties specifically express the terms of their agreement orally or in writing, or a contract may be implied. *Great Northern Ins. Co. v. ADT Sec. Svcs., Inc.*, 517 F. Supp. 2d. 723, 736 (W.D. Pa. 2007). "A contract implied in fact is an actual contract which arises where the parties agree upon the obligations to be incurred, but their intention, instead of being expressed in words, is inferred from acts in the light of the surrounding circumstances." *Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (citation and internal quotation marks omitted). "A contract implied in fact has the same legal effect as any other contract. It differs from an express contract only in the manner of its formation." *Ingrassia Const. Co., Inc. v. Walsh*, 486 A.2d 478, 483 n.7 (Pa. Super. Ct. 1984). Ultimately, the finding of whether a contract exists should be left to a reasonable jury based on the evidence admitted. *Ingrassia*, 486 A.2d at 483.

The relationship between a student and a private educational institution is contractual in nature under Pennsylvania law. *Reardon v. Allegheny Coll.*, 926 A.2d 477, 480 (Pa. Super. 2007). The "essence of the bargain between student and university" is the student's "reasonable expectation based on statements of policy by [the university] and the experience of former students. …" *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa. Super. Ct. 2014). This takes into consideration the prior "practice of the University." *Ross v. Pennsylvania State Univ.*, 445 F. Supp. 147, 153 (M.D. Pa. 1978).

Plaintiffs' factual allegations are sufficient at this stage to state a plausible claim, at a minimum, under a breach of implied contract theory. Plaintiffs alleged that Defendant touted the benefit of in-person and on-campus education and experiences through statements made on its website. Compl. ¶ 40 (describing "the classroom" as a place where "students pursue their

curiosities, passions and aspirations" and where "[r]enowned faculty explore side by side with students, collaborating on research, tackling society's biggest challenges and delivering work that matters."). Prior to registration, students are provided with a Course Catalog that provides certain information about the course, such as a course description, delivery mode, and physical location. Compl. ¶¶ 3–5, 22–25, 57–59. Defendant also provides students with syllabi for the courses chosen, confirming the location and on-campus nature of the course. Compl. ¶ 6. Further, students pay mandatory fees charged by Defendant in order to obtain access to on-campus facilities, activities, opportunities, and transportation. Compl. ¶¶ 17–21, 34, 57.  Plaintiffs' and Class Members' payment of tuition and fees were intended to be in exchange for these promised on-campus and in-person courses and experiences for the entire semester. Compl. ¶¶ 2, 7, 13, 22, 57. Defendant ultimately failed to provide in-person and on-campus education and experiences, breaching the contract with Plaintiffs and members of the Class. Compl. ¶¶ 9–12, 37–38, 63–64. This breach is undisputed. Through a string of announcements starting on March 11, 2020, Defendant transitioned to remote online learning and stopped providing on-campus access and services. Compl. ¶ 36. As a result, Plaintiffs and Members of the Class have suffered damages. Compl. ¶ 65.

These allegations permit the Court to draw reasonable inferences that a contract exists between Plaintiffs and Defendant which included, at least, an implied promise by CMU to provide in-person, on-campus education, services, and facilities. Mutual intent is evinced by Defendant's offering, and Plaintiffs choosing in-person education and experiences in exchange for tuition and fees. The decades-long experience of former students, and even Plaintiffs' own experience, created a reasonable expectation that choosing in-person and on-campus education, and paying for the same, would result in a full semester of in-person and on-campus education and experiences.

Consistent with this agreement, for the first half of the spring 2020 semester, Defendant *did* provide in-person and on-campus education and experiences. Defendant did not provide these services gratuitously; it provided them because students paid a premium in tuition and fees to receive them.

In considering similar motions to dismiss in similar cases, a legion of federal courts around the country have found that students' breach of contract claims satisfy the pleading standards of Rule 12, *Twombly*, and *Iqbal*.[1] In *Botts v. Johns Hopkins Univ.*, the court upheld plaintiff's breach of contract claim, finding that the materials and representations alleged form, *at the very least*, an implied contract for in-person, on-campus instruction. 2021 WL 1561520, at *16. The contract claim was based on similar materials and representations that Plaintiffs allege in their Complaint

---

[1] *Doe v. Emory Univ.*, Case No. 1:20-cv-2002, 2021 WL 358391, at *6 (N.D. Ga. Jan. 22, 2021); *Rosado v. Barry Univ.*, No. 1:20-cv-21813, 2020 WL 6438684, at *3–4 (S.D. Fla. Oct. 30, 2020) ("This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile."); *Salerno v. Florida S. Coll.*, 488 F. Supp. 3d 1211, 1217–18 (M.D. Fla. 2020) ("[T]his is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous."); *Saroya v. Univ. of the Pacific*, No. 5:20-cv-03196, 2020 WL 7013598, at *5–6 (N.D. Cal. Nov. 27, 2020); *Gibson v. Lynn Univ.*, No. 20-CIV-81173, 2020 WL 7024463, at *3–4 (S.D. Fla. Nov. 23, 2020); *Chong v. Northeastern Univ.*, No. 20-10844, 2020 WL 7338499, at *3 (D. Mass. Dec. 14, 2020); *Ford v. Rensselaer Polytechnic Institute*, No. 1:20-cv-00470, 2020 WL 7389155, at *3–7 (N.D.N.Y. Dec. 16, 2020); *Doe v. Bradley Univ.*, No. 20-1264, 2020 WL 7634159, at *2–3 (C.D. Ill. Dec. 22, 2020); *Bahrani v. Northeastern Univ.*, No. 20-cv-10946, 2020 WL 7774292, at *2–3 (D. Mass. Dec. 30, 2020); *Bergeron v. Rochester Inst. of Tech.*, No. 20-cv-6283, 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020); *Hiatt v. Brigham Young Univ.*, No. 1:20-cv-00100-TS, 2021 WL 66298, at *4 (D. Utah Jan. 7, 2021); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:20-cv-927, 2021 WL 140708, at *5–6 (M.D. Fla. Jan. 14, 2021); *In re: Boston University Covid-19 Refund Litigation*, No. 20-10827, 2021 WL 66443, at *2 (D. Mass. Jan. 7, 2021); *Little v. Grand Canyon Univ.*, No. 20-cv-00795, 2021 WL 308940, at *3–4 (D. Ariz. Jan 29, 2021); *McCarthy v. Loyola Marymount Univ.*, No. 2:20-cv-04668, 2021 WL 268242, at *4 (C.D. Cal. Jan. 8, 2021) ("the semester was well underway with class instruction inside a classroom with students appearing before an instructor. Plaintiff already had signed up for this instruction, and she was in the midst of the instruction for which she reasonably assumed she had bargained. At a minimum, Plaintiff's allegations are sufficient to establish an implied contract."); *Espejo v. Cornell University*, No. 3:20-cv-467, 2021 WL 810159, at *4–6 (N.D.N.Y. Mar. 3, 2021); *In Re: University of Miami Covid-19 Tuition and Fee Refund Litigation*, No. 0:20-cv-60851, 2021 WL 1251139, at *4–6 (S.D. Fla. Mar. 5, 2021); *Patel v. Univ. of Vermont*, No. 20-cv-00061, 2021 WL 1049980, at *4–6 (D. Vt. Mar. 15, 2021); *Metzner v. Quinnipiac Univ.*, No. 20-cv-00784, 2021 WL 1146922, at *9–10 (D. Conn. Mar. 25, 2021) (finding website's touting of physical campus, price difference between online and in-person programs, and parties' course of conduct allowed inference of implicit agreement for in-campus instruction); *Omori v. Brandeis Univ.*, No. 20-cv-11021, 2021 WL 1408105, at *2–4 (D. Mass. Apr. 13, 2021); *Rodrigues v. Boston Coll.*, No. 20-cv-11662, 2021 WL 1439784, at *1 (D. Mass. Apr. 15, 2021); *Botts v. Johns Hopkins Univ.*, No. 20-1335, 2021 WL 1561520, at *9–16 (D. Md. Apr. 21, 2021); *Arredono v. Univ. of La Verne*, No. 20-cv-7665, 2021 WL 1588995, at *2–3 (C.D. Cal. Apr. 21, 2021); *Nguyen v. Stephens Institute*, No. 20-cv-04195, 2021 WL 1186341, at *3–4 (N.D. Cal. Mar. 30, 2021).

here, such as statements from the university's website touting the benefits of being on campus, and access to technology or labs that students can use while on campus. *Id.* at *9–16. This Court should reach the same results as these cases, and not the three recent opinions from district courts in Pennsylvania heavily relied upon by Defendant.[2] As explained in more detail below, the interpretations of Pennsylvania law and resulting conclusions in the *Pitt*, *Penn*, and *Temple* opinions are inconsistent, and in any event, the cases are factually distinguishable from this one. Pennsylvania law does not materially differ from the law of other states with respect to the relationship between a university and its students, and Defendant has not raised any valid grounds for dismissal at this stage.

> ### 1.    The Court Should Not Reach the Same Outcome as the *Pitt*, *Penn*, or *Temple* Decisions

The *Pitt*, *Penn*, and *Temple* courts each came to similar conclusions, but through varying and at times contradictory interpretations and applications of Pennsylvania law. Like Defendant here, the universities in each of those cases argued that the parties' contractual agreements were confined to the short financial responsibility agreements students enter before enrolling. The *Penn* and *Pitt* courts both correctly held that these short agreements are not the parties' entire agreements. *Penn*, 2021 WL 1539493, at *5 ("Contrary to Penn's argument, the contract is comprised of more than the Financial Responsibility Statement and related financial policies contained in the PennBook."); *Pitt*, 2021 WL 1630579, at *4 (acknowledging that despite existence of Financial Responsibility Agreement, plaintiffs could allege an implied contract claim arising from other evidence. By contrast, the *Temple* court held squarely that the "Student Financial Responsibility Agreement is a fully integrated, binding contract," and that the plaintiffs'

---

[2] *Smith v. Univ. of Penn.*, Case No. 2:20-cv-02086-TJS, 2021 WL 1539493 (E.D. Pa. Apr. 20, 2021) ("*Penn*"); *Ryan v. Temple Univ.*, Case No. 5:20-cv-02164-JMG, 2021 WL 1581563 (E.D. Pa. Apr. 22, 2021) ("*Temple*"); *Hickey v. Univ. of Pittsburgh,* Case No. 2:20-cv-00690-WSS, 2021 WL 1630579 (W.D. Pa. Apr. 27, 2021) ("*Pitt*").

"implied contract theory is precluded by the existence of this express contract governing the payment of tuition and fees." *Temple*, 2021 WL 1581563, at *4.[3]

Where all three opinions go wrong is in their implicit assertion that students' remedies are limited by the express, *written* promises of the universities, to the extent there are any. For instance, in *Pitt*, Judge Stickman held that while the agreements between students and universities include more than just "a single document," and may be implied from sources other than those that are "specifically expressed," the court then went on to conclude that none of the other materials identified by the plaintiffs included "identifiable and specific promises," thereby effectively conflating the standards for express agreements and implied agreements. *See Pitt*, 2021 WL 1630579, at *4–5. In *Penn*, the court held that the students' only available implied contract claim related to the university's obligation to provide a degree if a student completes the degree requirements, again limiting the students to only enforcing *written*, express promises for in-person education. *Penn*, 2021 WL 1539493, *4–6 (stating, without citation, that "A cause of action for breach of an implied promise is not cognizable under Pennsylvania law in the higher education context.").

In *Temple*, the court went even further by holding that the short "Student Financial Responsibility Agreement" was the *only* place plaintiffs could look to for *any* promises on the part of the university, despite the obvious incompleteness of that agreement in the context of the parties' relationship. *Temple*, 2021 WL 1581563, at *4. The court held that because that short agreement did not expressly include a promise of in-person instruction, the plaintiffs' breach of express *and* implied contract claims all failed. *Id.*

---

[3] The *Temple* court's interpretation of Pennsylvania law is incorrect, but also inapplicable here because the SFRA is not a fully integrated or binding contract, as explained below.

These opinions are incorrect because there is no Pennsylvania authority suggesting or holding that there is anything unique about the types of contractual relations between students and universities.[4] Pennsylvania contract law recognizes implied-in-fact contracts. The *Pitt*, *Temple*, and *Penn* opinions all presume, directly or indirectly, that any enforceable promise by the universities must be express and in writing. But, as Plaintiffs show here, there are substantial allegations from which the Court can reasonably infer a promise by Defendant to provide in-person, on-campus instruction and services. When faced with an array of choices for shaping their education, Plaintiffs specifically chose in-person education at a specific campus, and they paid Defendant to get those benefits. These allegations are sufficient under *Twombly* and *Iqbal* to state a claim for breach of contract.

### 2. Plaintiffs' Breach of Contract Claim Is Not Foreclosed by Defendant's Citation to University Documents

Defendant mischaracterizes various university publications and documents in an attempt to foreclose Plaintiffs' breach of contract claim. Def.'s Mem. 10-12. As an initial matter, this is an issue of fact inappropriate for the motion to dismiss stage. *See Gibson v. Lynn University*, 2020 WL 7024463, at *3 ("Nevertheless, a determination of whether the Force Majeure Provision or other statements in Lynn's policies and publications foreclose Plaintiff's breach-of-contract claim is more appropriate at the summary judgment stage."). But each argument advanced by Defendant in this manner fails regardless.

---

[4] At one point, the *Penn* opinion states: "The only implied contract Pennsylvania recognizes in the educational context is a private educational institution's obligation to confer a degree upon a student's successful completion of the degree requirements." *Penn*, 2021 WL 1539493, at *4 (citing *Gati*, 91 A.3d at 731). But *Gati* did not include such a broad holding. In the context of a case regarding academic discipline, in the portion cited by *Penn* the *Gati* court simply noted that a student's right to attend a college or university is subject to the condition that he comply with its rules, that students have a reasonable expectation to receive a degree if they fulfill the requirements, and that courts will not interfere with academic or disciplinary decisions absent an abuse of discretion. *See Gati*, 91 A.3d at 731. Nothing in *Gati* limits a student's ability to bring breach of contract claims based on a university's failure to provide specific, identifiable services that the student specifically paid more for, like in-person instruction and access to a physical campus.

### a)  Student Financial Obligation

Defendant first points to CMU's Statement of Student Financial Obligation ("SFO"). But the SFO cannot be a contract as it lacks mutuality. "If a mutuality of promises is absent, the contract is unenforceable." *Geisinger Clinic v. Di Cuccio*, 606 A.2d 509, 512 (Pa. Super. Ct. 1992). "A mutuality of obligation exists when both parties to the contract are required to perform their respective promises." *Id.* "The test for consideration is whether the promisee, at the instance of the promisor, has suffered any detriment, or whether, in return for the promise, he has done something that he was not bound to do, or has promised to do some act, or has abstained from doing something." *Ohama v. Markowitz*, 434 F. Supp. 3d 303, 315 (E.D. Pa. 2020). Here, the SFO imposes no obligation on Defendant. While the document purports to bind the student to pay charges "incurred by you or on your behalf while at Carnegie Mellon," it does not actually require Defendant to provide any benefits or services in exchange for such payment. (SFO at 1) (ECF 37-5). Assuming, *arguendo*, that the students' promise "for the timely payment of Carnegie Mellon, tuition, fees, and other charges" obligates Defendant to provide any services following the enrollment, the document fails to address numerous material terms. "An enforceable contract requires, among other things, that the terms of the bargain be set forth with sufficient clarity." *Lackner v. Glosser*, 892 A.2d 21, 30 (Pa. Super. Ct. 2006). "Where… there is no agreement or even a discussion as to any of the essential terms of an alleged bargain, such as time or manner of performance, or price or consideration, the 'agreement' is too indefinite…" *Id.* at 31. As explained in another recent COVID-19 fee refund case, "the [financial agreement] purports to be a promissory note without stating the principal debt amount, which necessarily indicates that other

documents must be resorted to flesh out its terms." *Kishinevsky v. Bd. of Trs. of Met. State Univ. of Denver*, No. 20CV31452, Opinion and Order at 3 (CO Dist. Ct. Nov. 23, 2020).[5]

Here, the SFO contains no material terms at all. The document fails to address what (if any) services Defendant will provide or the duration that such services will be provided. Furthermore, the document fails to establish the price that will be paid for the undefined services. Defendant appears free to assess any charge it sees fit, so long as that charge is "incurred by [the student] or on [their] behalf while at Carnegie Mellon," further terms left to Defendant's unfettered discretion. Indeed, under a literal reading of the document, once a student registers for classes, the student then becomes liable to pay any amount charged by Defendant as a result, even if Defendant provides nothing in exchange. According to Defendant, the University could close its doors and cancel classes the day after registration and such students would remain obligated to pay full tuition and fees.

The SFO also fails to set forth the rights or remedies of either party with respect to services rendered. For example, the document does not contemplate the conferral of credits or a degree. Seemingly, CMU students could show up to class every day, pass all required classes, and just prior to graduation, be denied a degree for no reason at all. This is not only contrary to common sense and well-established contract law, but public policy as well. For these reasons, the SFO is not contractual, it is, at most, a mere agreement to agree. The student agrees that, once he/she reaches a future agreement with Defendant regarding what classes the student will take and what tuition Defendant will charge, and if the student takes the agreed upon classes, the student will pay the agreed upon tuition. However, neither the agreement regarding classes nor payment are addressed in this document. "It is hornbook law that evidence of preliminary negotiations or an

---

[5] A copy of this decision was filed on the docket in *Ramey v. The Pennsylvania State University*, 2:20-cv-753 (W.D. Pa.) at ECF No. 27-2.

agreement to enter into a binding contract in the future does not alone constitute a contract." *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291 (3d Cir. 1986).

### b)   Emergency Policy

Defendant next points to CMU's Emergency (Temporary) Closing of the University Policy ("ETCUP") to excuse its breach. Def.'s Mem. at 11. But this lawsuit is not about CMU's decision to close its campuses. This lawsuit is about CMU's decision to keep the tuition and fees it collected for in-person services, without providing those services. Further, the language of the ETCUP suggests that it does not encompass events such as COVID-19, but rather, for "severe weather or other emergencies" (Def.'s Ex. A-1 (ECF 37-2) at 45), which suggests contemplation of a closure of several days to a week at most, not the wholesale cessation of normal operations for half of a semester. The title of the document itself indicates it covers only "temporary" closures. As students were prevented from retuning to in-person classes after March 6, 2020 through the remainder of the Spring 2020 semester, the closure was permanent, not temporary.

### c)   Tuition Adjustment Policy

Defendant then points to CMU's Tuition Adjustment Policy ("TAP"), which "sets forth the only circumstances under which students may receive a tuition adjustment." Def.'s Mem. at 11. This is a red herring. The TAP is not contractual, it is a unilateral document allowing refunds for students when a student elects to "withdraw or take a leave of absence before completing 60% of the semester." Thus, this policy sets forth the way that refunds will be handled only when students withdraw from courses – it contemplates a scenario where the student elects to break the contract. It does not govern the university's breach of the contract. Therefore, Defendant's attempt to point to language in the policy stating that "[t]here is no tuition adjustment after 60% of the

semester is completed" is unavailing. This refund policy has nothing to do with the case at hand, where Defendant's cessation of in-campus instruction and services caused the alleged breach.

### d)     Disclaimer

Defendant's final argument that the Schedule of Classes and Undergraduate Catalog allowed CMU to switch to online learning mid-semester is a mischaracterization of what the catalog and course schedule actually say. The Undergraduate Catalog merely "reserves the right to make changes to hours, units or instructional staff when such changes seem necessary or advisable." Def.'s Ex. A-1 (ECF 37-2) at 14**.** This does *not* allow CMU to switch format from in-person to online distance learning. Further, although the schedule of classes[6] provided by Defendant does contain vague language that "[t]hese files are updated NIGHTLY"[7], this language does not come close to the level of reserving a right to switch format of instruction for ***classes*** pre-paid mid-way through a semester. It simply states that the "files" themselves are updated nightly. The files in reference are a several hundred page comprehensive list of courses that CMU offers during each semester. It is likely that these files are not reviewed at all by students, as students would have very little use for an approximately 250-page list of all courses at CMU. Instead, students likely use the Course Search feature, allowing them to sort by subject, or find classes that are mandatory to meet their degree requirements.[8] The Course Search page does not contain similar language regarding updating of files.[9] Even if the students do use the files that can be "updated,"

---

[6] https://enr-apps.andrew.cmu.edu/open/SOC/SOCServlet/completeSchedule
[7] The link that Defendant cites was last accessed on November 4, 2020, almost a year after students would have reviewed the schedule of classes to choose their Spring 2020 courses. A search on Web Archive did not yield any results prior to the Spring 2020 semester. To the extent this document is even relevant, discovery is needed to determine if that language was used prior to November 2020.
[8] Notably, the allegations and screenshots in the Complaint come from this search feature, not the link provided by Defendant.
[9] https://enr-apps.andrew.cmu.edu/open/SOC/SOCServlet/search

those files are only relied upon at the beginning of the semester, not after the courses commence.[10] After registration, there is an expectation that the classes will continue as registered, and Defendant can point to no disclaimer reserving the right to change to online-only classes. Finally, there is no evidence that Defendant *actually did* update the files to indicate that the courses were only to be delivered online. Discovery would be needed in order to confirm or deny this position.

### B.  Plaintiffs Sufficiently Stated a Claim in the Alternative for Unjust Enrichment

To state a claim of unjust enrichment, a plaintiff must merely establish: (1) "benefits [were] conferred on defendant by plaintiff"; (2) "appreciation of such benefits by defendant"; and (3) "acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value."  *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (Pa. 2018) (citation omitted).

Defendant argues that Plaintiffs failed to allege that Defendant received any "unjust" benefit. However, Plaintiffs sufficiently allege that the retention of the tuition and fees pre-paid for in-person and on-campus education and experiences is unjust.  Compl. ¶ 73.  At the motion to dismiss stage, this is all that is required to plead a claim for unjust enrichment.  *See Meyer*, 179 A.3d at 1102 (stating the elements of unjust enrichment). Nevertheless, Defendant further argues that Plaintiffs cannot plead unjust enrichment because they "do not allege that CMU withheld any earned credit to Plaintiffs" and that "CMU provided instruction to students throughout the Spring 2020 semester."  Def.'s Mem. at 18, n. 10.  But this argument misses the mark.  Equity and good

---

[10] Indeed, even the Undergraduate Catalog states that "[r]egistration is the process of selecting courses for the ***upcoming*** semester[,]" "[m]ost freshman receive their schedules and enrollment information ***prior to the first day of classes***[,]" "[c]urrently enrolled students select their courses for the ***upcoming*** semester during Registration Week," and "The Schedule of Classes . . . is available online ***prior*** to Registration Week, listing available courses along with general enrollment information." (emphasis added).

conscience require disgorgement not because Defendant switched classes to a virtual format, but because Defendant did so while retaining the tuition and fee monies Plaintiffs paid for an in-person education, experience, and services.  Compl. ¶¶ 71–73.  Allowing retention of those funds is plainly inequitable.  Accordingly, Plaintiffs state a claim for unjust enrichment at this juncture.[11]

Defendant next argues that there is a contract governing Plaintiffs' claims, making unjust enrichment inapplicable. Def.'s Mem. at 17–18. Despite this position, Defendant disputes any breach. *Compare* Def.'s Mem. at 1 ("CMU admits, as it must for purposes of this motion, that it has a contract with students and that this contract is embodied in writings provided to students on its website, and particularly in the Course Catalog to which the recently filed Amended Complaint extensively refers."), with *id.* at 9 ("Plaintiffs still have not identified (and cannot identify) a 'specific failure' or a 'specific and identifiable promise' CMU failed to honor during the Spring 2020 semester, either in the Course Catalog or any other University policy.").  Plaintiffs dispute both that the purportedly exculpatory writings referred to by CMU are contractually valid and that they apply to Plaintiffs' claims.  *See supra* at Section III.A.2.

Moreover, unjust enrichment claims will only fail where there is a *valid and enforceable* contract that *actually governs the issue in dispute*.  Cases like this one, in which the existence of the governing contract is in dispute, are exactly the type where it is permissible to plead unjust enrichment in the alternative. *See Vantage Learning (USA), LLC v. Edgenuity, Inc.*, 246 F. Supp. 3d 1097, 1100 (E.D. Pa. 2017) (stating unjust enrichment may be plead in the alternative under Pennsylvania law where "the existence of a contract is uncertain or its validity is disputed by the parties"). Defendant's argument also ignores the plain language of Fed. R. Civ. P. 8(d)(3), which

---

[11] *See, e.g.*, *Cross v. Univ. of Toledo*, 2020 WL 4726814, *3 (Ohio Ct. Cl. July 8, 2020) ("Based on the Court's review, it does not appear beyond doubt that, after all reasonable inferences are afforded in favor of Cross, Cross can prove no set of facts entitling him, or members of the proposed class, to relief based on claims of unjust enrichment. … UT's request for a Civ. R. 12(B)(6) dismissal of Cross's claims of unjust enrichment is not well taken.").

provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency."  *See also* Fed. R. Civ. P. 8(a)(3) ("[A] demand for relief sought, which may include relief in the alternative or different types of relief."); *Vantage Learning,* 246 F. Supp. 3d at 1100; *U.S. v. Kensington Hosp*., 760 F. Supp. 1120 (E.D. Pa. 1991) (Allowing unjust enrichment claim to be pled in alternative under Pennsylvania law because "[c]ourts have permitted plaintiffs to pursue alternative theories of recovery based both on breach of contract and unjust enrichment, even when the existence of a contract would preclude recovery under unjust enrichment.").[12] *See* Complaint "Count II" (specifying the unjust enrichment claim is brought in the alternative). Accordingly, Defendant's written policies do not bar Plaintiffs' claims for unjust enrichment.

### C.  Plaintiffs Sufficiently Stated a Claim for Money Had and Received

"A cause of action for money had and received is a claim by which the plaintiff seeks to recover money paid to the defendant by mistake or under compulsion, or where the consideration was insufficient." *White v. Conestoga Title Ins. Co.*, 53 A.3d 720, 723 n.5 (Pa. 2012). Defendant's argument entirely misstates the basis of Plaintiffs' claim and overlooks the allegations of the Complaint.  Plaintiffs allege that they paid tuition and mandatory fees for an in-person educational experience and did not receive one. *See* Compl. ¶¶ 89–91.  Thus, the goods contracted for were not actually delivered, Defendant's consideration provided was insufficient, and Plaintiffs have stated an adequate claim for relief.  Defendant also argues that Plaintiffs' claim for money had and received is "precluded by the existence of an agreement between the parties." Def.'s Mem. at 19. But as discussed previously, it is well established that a Plaintiff may plead claims in the

---

[12] *See also see Salerno v. Fla. Southern College*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020) (allowing unjust enrichment to be plead in the alternative where "[r]egardless of whether a contract exists, the College disputes the merits of the breach of contract claim").

alternative.  Fed. R. Civ. P. 8(d); *Patel v. Patel*, No. 18-1841, 2018 WL 3642417, *8 (E.D. Pa. Aug. 1, 2018).

### D. Plaintiffs' Claims Do Not Require Inquiry Into The Quality Of Plaintiffs' Education

Defendant also seeks dismissal of Plaintiffs' claims on the basis that the Complaint asks the court to "second guess CMU's pedagogical decisions" and thus are claims of educational malpractice.  Def.'s Mem. at 14.  This is wrong.  The gravamen of an educational malpractice claim is the allegation that a school failed to provide an effective education.  *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397 (Pa. Super. Ct. 1992).  Thus, an educational malpractice claim is one that "amounts to a general allegation of lack of quality education, without more."  *Id*. at 404.  However, where a breach of contract claim does not allege that "that the school breached its agreement by failing to provide an effective education," but instead alleges failure to provide specified services, the action may be properly maintained.  *Paladino v. Adelphi Univ.*, 89 A.D.2d 85, 89–90 (N.Y. App. Div. 1982) (cited with approval by *Cavaliere*, 605 A.2d at 401).  The *Paladino* Court held that if a school "were to accept a student's tuition and thereafter provide no educational services, an action for breach of contract might lie.  Similarly, if the contract with the school were to provide for certain specified services, such as a designated number of hours of instruction, and the school failed to meet its obligation, then a contract action with appropriate consequential damages might be viable."  *Paladino*, 89 A.D.2d at 92. The Superior Court of Pennsylvania has adopted precisely this distinction.  *See Cavaliere*, 605 A.2d at 404 (citing with approval *Paladino*, 89 A.D.2d 85).

Indeed, courts across the country, have uniformly held that claims like those Plaintiffs bring here are *not* based on educational malpractice.  *See Penn*, 2021 WL 1539493, at *4 (citing to *Cavaliere* and finding that plaintiffs' claims were "simply an action for breach of contract."); *Pitt*, 2021 WL 1630579, at *4 n.2 ("Plaintiffs do not raise the type of educational malpractice claims

16

that Pennsylvania courts have rejected."); *see also Gibson v. Lynn Univ., Inc.*, 2020 WL 7024463, *4 (holding that "this is not a case about the quality of the education Lynn provided students during the Spring 2020 semester," but rather based on "Lynn's alleged failure to provide in-person, on-campus instruction and access to campus facilities and resources."). Similarly, here, the Complaint does not allege a cause of action for educational malpractice. Rather, Plaintiffs allege that they paid a large sum to Defendant for the purchase of an in-person, on-campus educational experience with multiple benefits, services, experiences and opportunities, and that Defendant, in breach of contract, did not provide that experience.

Defendant's cited cases are readily distinguishable. In *Miller v. Thomas Jefferson Univ. Hosp.*, the plaintiff's breach of contract claims failed because the plaintiff did not specify what contractual promise was unfulfilled. 908 F. Supp. 2d 639, 655–56 (E.D. Pa. 2012), aff'd, 565 F. App'x 88 (3d Cir. 2014). *Vurimindi v. Fuqua Sch. of Bus.*, suffered from a similar defect, where "[Plaintiff] Vurimindi did not point to any specific and definite terms that were violated in his case," instead pointing to the vague terms that his school would "provide the 'highest quality education'" and "appreciates and values differences." 435 F. App'x 129, 133 (3d Cir. 2011). Likewise, in *Manning v. Temple Univ.*, the plaintiff alleged only generally that "the educational institution failed to provide a quality education." 2004 WL 3019230, at *12 (E.D. Pa. Dec. 30, 2004). In finding for the defendant, the court specifically distinguished the *Manning* plaintiff's claims from the facts of this case, stating that "a cause of action for breach of contract may lie if a student is provided with no instruction at all, or if the university promises to offer a particular curriculum and fails to do so[.]" Here, in contrast, Plaintiffs allege that Defendant failed to provide specifically identified contracted-for services – a standard commercial business decision and one that is not academic in nature.

17

Defendant's citation to *Paynter v. New York University*, 319 N.Y.S.2d 893 (N.Y. App. Div. 1971) is unavailing.  In *Paynter*, the parent of a university student brought a breach of contract claim following anti-war demonstrations. But *Paynter* involved a late-in-term suspension of classes which the court found to be a "minor" and "insubstantial change" in the schedule of classes that were due to conclude just days later. To the contrary, Defendant failed to deliver on-campus educational experiences for half of a semester. Compl. ¶¶ 36, 68. The court in *Paynter* specified that the "self-regulation" provided universities the inherent authority only to make "minor changes" to the schedule of classes. *Paynter*, 319 N.Y.S.2d at 894. The full campus shutdown that occurred for several months here cannot be characterized as a "minor change." Accordingly, *Paynter* supports Plaintiffs' position that this case should be heard on the merits.  *See also Ford v. Rensselaer Polytechnic Institute*, 2020 WL 7389155, *5.[13]

Finally, Defendant's reliance on *Roe v. Loyola Univ. New Orleans*, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) is misplaced. In *Loyola*, the university provided *the option* for its students to attend other accredited law schools as visiting students during the aftermath of Hurricane Katrina without paying tuition to those schools, so long as they paid tuition to Loyola.  *Id*. at *2-3. In dismissing Roe's unjust enrichment claim, the court explained "[p]laintiff has pointed to no provision…that would entitle him to a free semester of law school.  Rather, by attending classes during the Fall 2005 semester at SMU, plaintiff received the benefit of the emergency policy made possible by Loyola." *Id*. at *5-6.  The unjust enrichment claim failed because "if he hadn't paid tuition to Loyola, he would have been required to pay SMU's tuition, which was more expensive than that of Loyola." *Id*. at *7. Contrasting to the situation at hand, Plaintiffs were not given an

---

[13] Finding *Paynter* inapplicable because "there is a world of difference between canceling some classes – in the absence of any affirmative guarantee on the number of classes to be held – and not affording students services and benefits for an extended period of time despite such a promise."

option when Defendant shut down its campus mid-semester—they were forced to either accept a product that was not bargained for (online education) or receive no education at all and forfeit the tuition and fees they had already paid in full.

### 1. Damages Are Not Inherently Linked to an Assessment of Whether Plaintiffs Received a "Subpar" Education

Defendant's argument that Plaintiffs' damages are speculative fails for two reasons. First, it is wholly dependent on Defendant's argument that the Complaint asserts an educational malpractice claim, which as explained above, it does not. Again, regardless of quality, Defendant promised one thing and delivered another while keeping 100% of the tuition monies paid. Compl. ¶¶ 60–65. Second, nowhere in Federal Rule of Civil Procedure 8(a) is there a requirement that a specific dollar amount must be alleged, and the quantification of damages in class actions are routinely subject of expert testimony.  And in Pennsylvania, "damages are speculative only if the uncertainty concerns the fact of damages rather than the amount."  *Pashak v. Barish*, 450 A.2d 67, 69 (Pa. Super. 1982).  Here, the existence of damages flowing from Plaintiffs' claims cannot reasonably be disputed, as the Complaint clearly alleges Plaintiffs suffered damages because of the University's breach of contract by not providing the contracted-for in-person educational services.  Compl. ¶¶ 2, 10–14, 30–33, 45, 65–68.[14]  The precise value of damages can and will be established at trial.  Compl. ¶ 35.

Defendant's cited cases are also inapposite. The contract claim in *Stevenson v. Economy Bank of Ambridge* failed because the damages themselves were speculative, rather than their amount. 197 A.2d 721, 727 (Pa. 1964) ("On the record presented, appellant has not established her

---

[14] *See Rosado v. Barry Univ.*, 2020 WL 6438684, at *3–4 ("This is kind of like purchasing a Cadillac at full price and receiving an Oldsmobile."); *Rhodes v. Embry-Riddle*, 2021 WL 140708, at *5–6 ("Surely those on-campus students are paying for *something*… Following [d]efendant's logic, a theatergoer who paid to see Hamilton on Broadway would suffer no damages if the theater shut down, kept his money, and allowed him to watch a recording of Hamilton on Disney+. The two experiences are simply not the same and, therefore, have different values.")

entitlement to damages in the sum of $82,300, or in any other substantial sum."). Similarly, *USA Mach. Corp. v. CSC, Ltd.*, affirmed the district court's judgment as a matter of law that "there was no evidence upon which a jury could base a finding of damages with the reasonable certainty required[.]" 184 F.3d 257, 267 (3d Cir. 1999). Furthermore, the *USA Mach. Corp.* court held that there were no grounds for an enforceable contract at all – the damages analysis was directed at the plaintiff's unjust enrichment claims. *Id*. at 265. Lastly, *Pashak v. Barish* was a legal malpractice action that did not contain any claim of breach of contract.  Here, Plaintiffs have established both an enforceable agreement and clear damages in the form of CMU's failure to provide the bargained-for in-person educational experience.

IV.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety.

Dated:  May 28, 2021

Respectfully submitted,

**CARLSON LYNCH LLP**

By: */s/ Gary F. Lynch*
Gary F. Lynch
Edward W. Ciolko (*Pro Hac Vice*)
Kelly K. Iverson
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
Facsimile: (412) 231-0246
Email: glynch@carlsonlynch.com
eciolko@carlsonlynch.com
kiverson@carlsonlynch.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone:  (646) 837-7150
Facsimile:  (212) 989-9163
Email:  pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700
Email:  fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone:  (305) 330-5512
Facsimile:  (305) 676-9006
Email:  swestcot@bursor.com

**Pro Hac Vice* Forthcoming

*Interim Class Counsel*

21

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed electronically and will be served on counsel of record through the Court's electronic filing system.

*/s/ Gary F. Lynch*
Gary F. Lynch