# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABIGALE PFINGSTEN, *individually and on behalf of all others similarly situated,* | ) ) ) | |
| Plaintiff, | ) ) | Case No. 2:20-cv-00716 |
| v. | ) ) | |
| CARNEGIE MELLON UNIVERSITY, | ) ) | ELECTRONICALLY FILED |
| Defendant. | ) ) | |

| | | |
|---|---|---|
| ANOKHY DESAI, *individually and on behalf of all others similarly situated,* | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| CARNEGIE MELLON UNIVERSITY, | ) ) | |
| Defendant. | ) ) | |

## CARNEGIE MELLON UNIVERSITY'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

## CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................2

I.  The Course Catalog Forecloses Plaintiffs' Claims. ..............................................2

II.  Plaintiffs' implied contract theory is not viable against a Pennsylvania university. ...........4

III.  Plaintiffs' implied contract theory also fails as the parties' relationship is governed
by a written agreement.............................................................................................6

IV.  To avoid dismissal, Plaintiffs ask this Court to change Pennsylvania law, in violation
of the *Erie* doctrine. ............................................................................................7

V.  *Penn*, *Temple,* and *Pitt* are consistent with each other and with longstanding
Pennsylvania law in their key holdings. ................................................................8

VI.  The Consolidated Amended Complaint Sounds in Educational Malpractice.....................9

VII.  Plaintiffs' Conversion, Unjust Enrichment, and Money Had and Received Claims
Are Foreclosed by the Course Catalog. ..............................................................10

## INTRODUCTION

Plaintiff's Opposition to CMU's Motion to Dismiss their Consolidated Amended Complaint ("CAC") confirms that dismissal is appropriate here.

In their CAC, Plaintiffs allege that CMU breached the terms of an express agreement – most notably and repeatedly relying upon the Course Catalog – by transitioning to remote instruction during the 2020 Spring semester in response to the COVID-19 pandemic. In its Motion to Dismiss, CMU demonstrated that the Course Catalog permits CMU to act as it did, specifically addresses tuition refunds in a manner that confirms that Plaintiffs are not entitled to refunds, and is otherwise fatal to Plaintiffs' claims. Plaintiffs now pivot in their Opposition to assert a claim for breach of an implied-in-fact contract. Not only is there no implied contract alleged in the CAC – the third version of the complaint in this case – but also implied contract claims are not viable in Pennsylvania against universities whose relationship with students is governed by express contractual terms.

Three recent decisions by Pennsylvania federal courts dismissing refund class action claims against The University of Pennsylvania, Temple University and The University of Pittsburgh reached the same result. In each of those cases, the breach of contract claims for tuition refunds were dismissed with prejudice because, in each case, the plaintiffs failed to identify a specific promise by the university to provide an in-person experience. The implied contract, quasi-contract, and tort claims also were dismissed in each case because the parties' relationship is governed by an express agreement.

The outcomes in *Penn*, *Temple*, and *Pitt* are consistent with long-established Pennsylvania law, dating back at least thirty years. Plaintiffs' Opposition fails to demonstrate why this Court should deviate from that established precedent and from the building consensus among federal

courts that plaintiffs asserting a tuition refund claim under Pennsylvania law are precluded under that law from obtaining the relief they seek in the absence of a specific contractual promise.

Plaintiffs' Opposition fails to rebut the following points, each of which further demonstrates that CMU's Motion to Dismiss should be granted and that Plaintiffs' CAC should be dismissed with prejudice:

- Plaintiffs' shift to an implied contract theory does not change the CAC's express allegations of a written agreement. As demonstrated in CMU's opening brief, there is a controlling written agreement, and that agreement forecloses Plaintiffs' claim for breach.

- As to Plaintiffs' assertion that the Court may "plausibly infer" an implied agreement by CMU to provide in-person instruction, Plaintiffs cite no Pennsylvania federal or state case in which a court has permitted an implied contract claim against a higher education institution or where the relationship between the parties is governed by express terms.

- Plaintiffs ask this Court to change established Pennsylvania law, and permit implied contract claims against higher educational institutions. This Court is prohibited from doing so by *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938) and its progeny, which require federal courts to apply, not attempt to change, Pennsylvania common law in diversity actions like this one.

- Plaintiffs continue to seek recovery based on the allegedly "subpar" remote learning experience, precisely the sort of challenge to educational quality courts decline to address.

In short, Plaintiffs are pursuing the same fatally flawed theories that CMU has demonstrated in its initial motion to dismiss brief should be dismissed. *Penn*, *Temple* and *Pitt* further underscore that dismissal with prejudice is the appropriate outcome here.

## ARGUMENT

### I.   The Course Catalog Forecloses Plaintiffs' Claims.

The CAC alleges that the Course Catalog was the contractual agreement between the parties. *See, e.g.,* ECF No. 9, ¶ 2 ("The terms of the contractual agreement [between the Parties] were set forth in publications from CMU, including but not limited to, CMU's Spring Semester

2020 Course Catalog."). The Course Catalog or its contents are referred to 17 times throughout the CAC. ECF No. 9, ¶¶ 2-5, 17-25, 33-34, 57-59. Notwithstanding the CAC's reliance upon CMU's Course Catalog and other disseminated writings as the basis for Plaintiffs' breach of contract claim, Plaintiffs now argue those documents are not enforceable contractual obligations by asserting that CMU's Course Catalog, the Student Financial Obligations and the Emergency (Temporary) Closure of the University Policy, and Tuition Adjustment Policy lack mutuality, consideration and/or material terms. Opposition at 9-10. This Court should reject these arguments outright as they directly contradict Plaintiffs' own allegations in the CAC, and are flat wrong. The Course Catalog and incorporated policies constitute the terms of the parties' contract; Plaintiffs simply wish the contract said something different than what it does.

As noted in greater detail in CMU's Opening Brief at pp. 4-6, the Course Catalog and incorporated policies specify that:

- Each enrolled student specifically agrees that she is "responsible and obligated to Carnegie Mellon for the timely payment of Carnegie Mellon tuition, fees and other charges incurred by you or on your behalf while at Carnegie Mellon."

- Tuition is based on "units," or credits, to be earned toward a degree, with no mention of the method of delivery of instruction, and there is no differentiation in tuition rate based on whether a unit is earned in person or remotely. Plaintiffs have in fact accepted full credit toward graduation for the remote instruction they received in the second half of the Spring 2020 semester.

- CMU's policy related to emergencies expressly allows the President to suspend normal operations where "such operation represents a clear danger to students, staff or faculty."[1]

- CMU policy allows for tuition refunds until the expiration of 60% of a semester. The announcement of remote classes in the second half of the Spring 2020

---

[1] Plaintiffs attempt to argue the Emergency Policy is inapplicable here are unavailing. Plaintiffs fail to explain why COVID-19 does not constitute an "emergency", or why they believe a transition to remote instruction constitutes a "permanent" closure, as they contend. Opp. at 11. The Emergency Policy expressly permits the President to act in circumstances that "represent a clear danger to students, staff, faculty and visitors." Ex. A. to Motion to Dismiss, p. 45. This is precisely what happened during Spring 2020 semester.

semester occurred *before* 60% of the semester had passed.  Plaintiffs could have withdrawn and received a partial tuition refund for the Spring 2020 semester, but chose not to do so.

These are the terms of Plaintiffs' alleged contract with CMU, and they are fatal to Plaintiffs' claims.

## II.    Plaintiffs' implied contract theory is not viable against a Pennsylvania university.

In their Opposition, Plaintiffs change course, claiming that "Plaintiffs' factual allegations are sufficient at this stage to state a plausible claim, at a minimum, under a breach of implied contract theory."  Opp. at 3.  Plaintiffs ask this Court to "draw reasonable *inferences* that a contract exists between Plaintiffs and Defendant which included, at least, an implied promise by CMU to provide in-person, on-campus education, services and facilities."  Opp. at 4.  Plaintiffs further argue that such an inference is "plausible" and therefore should survive under *Twombly* and *Iqbal*. *Id.* at 3.  Respectfully, it is quintessentially *implausible* to base a complaint upon a theory of liability that consistently and repeatedly has been rejected by courts.  Longstanding Pennsylvania law is clear that a viable breach of contract claim against a university requires an express, written promise.  *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999) (finding breach of contract claim "cannot stand [against a university] unless linked to the written policies of the university"); s*ee also David v. Neumann Univ.*, 187 F. Supp. 3d 554, 558 (E.D. Pa. 2016) (same); *Hart v. Univ. of Scranton*, No. 3:11-CV-1576, 2012 WL 1057383, at *3 (M.D. Pa. Mar. 28, 2012) (to survive a motion to dismiss, a "complaint must point to *specific failures* on the part of a university *within these written materials*)" (emphasis added); *Vurimindi v. Fuqua Sch. of Bus.*, 435 F. App'x 129, 133 (3d Cir. 2011)); *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 404 (Pa. Super. 1992) (dismissing breach of contract claim where the "complaint does not allege that there was any specific undertaking, in the student handbook and catalog or otherwise, to provide a specific course of instruction which was not provided.").

- 4 -

In similar COVID-19 refund class actions, the courts in *Penn*, *Temple*, and *Pitt* all rejected the very implied contract theory Plaintiffs ask this Court to adopt.  *See Smith v. Univ. of Penn.*, No. 20-2086, 2921 WL 1539493, *6 (E.D. Pa. Apr. 20, 2021) (Savage, J.) ("A cause of action for breach of an implied promise is not cognizable under Pennsylvania law in the higher education context."); *Ryan v. Temple Univ.*, No. 5:20-cv-02164, 2021 WL 1581563, *9 (E.D. Pa. Apr. 22, 2021) (Gallagher, J.) (finding that plaintiffs' implied contract theory is precluded by the existence of an express contract concerning the same subject matter as the alleged implied contract, and rejecting arguments based on school publications and the parties' course of conduct); *Hickey v. Univ. of Pittsburgh*, No. 2:20-cv-690, 2021 WL 1630579, *5 (W.D. Pa. Apr. 27, 2021) (Stickman, J.) (rejecting implied in fact contract theory based on the University's website, promotional materials and other publications).

Plaintiffs do not cite a single case under Pennsylvania law permitting a student to proceed on an implied contract claim against an institution of higher learning.  In fact, the sole Pennsylvania state court decision Plaintiffs cite actually supports CMU's position.  Plaintiffs quote a portion of a sentence from *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa. Super. 2014), in support of their implied contract theory:

> "the essence of the bargain between student and university" is the student's "reasonable expectation based on statements of policy by the university and the experience of former students…"

Opp. at 3.  The complete quote from *Gati*, however, reads:

> "the essence of the bargain between student and university" is the student's "reasonable expectation based on statements of policy by the university and the experience of former students…[is] that if he performs the work required in a satisfactory manner and pays his fees he will receive the degree he seeks."

*Gati*, 91 A.3d at 723.   In other words, this quote from *Gati* (which is dicta) does not contemplate sweeping implied contractual obligations based on prior conduct, but rather (if

- 5 -

anything) contemplates a limited scenario in which the only implied contractual obligation is to confer a degree upon a student's successful completion of the degree requirements.  *Univ. of Penn*, 2021 WL 1539493 at *4.  That is what the express terms of CMU's Course Catalog and written policies contemplate and what CMU provided.

In sum, Plaintiffs argue that general principles of Pennsylvania contract law, which permit implied contracts, should apply to claims against colleges and universities.  Opp. at 8.  This argument ignores the well-reasoned Pennsylvania decisions, including in *Swartley* and *Cavaliere* (Pennsylvania Superior Court), *Vurimindi* (Third Circuit), and *Hart*, *Neumann*, *Penn*, *Temple*, *Pitt* (federal district courts).

## III.   Plaintiffs' implied contract theory also fails as the parties' relationship is governed by a written agreement.

Even if one were to focus on more general principles of Pennsylvania contract law as Plaintiffs suggest, Plaintiffs' implied contract theory still fails because it is foreclosed by the existence of a relevant written agreement.  "It is well-settled that where an express written agreement has been validly entered into by both parties, a party may not allege that an implied contract exists as to terms in the written agreement."  *Turkmenler v. Almatis, Inc.*, Civil Action No. 11-1298, 2012 WL 1038866, at *3 (W.D. Pa. Mar. 28, 2012) (internal quotations and citations omitted).  This bedrock principle of contract law extends beyond higher education.

As discussed above, by Plaintiffs' own allegations, the Course Catalog governs the parties' relationship with respect to the issues at the heart of this case, namely tuition, fees and refunds. Plaintiffs bear, but cannot meet, the burden to show that the purported implied contract is "entirely unrelated" to the Course Catalog.  *Id.* (internal quotations and citations omitted).

IV.     **To avoid dismissal, Plaintiffs ask this Court to change Pennsylvania law, in violation of the *Erie* doctrine.**

To survive this Motion, Plaintiffs ask this Court to attempt to change Pennsylvania law. Doing so, however, would violate the *Erie* doctrine.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

*Erie* dictates that, in matters not governed by the U.S. Constitution or federal statutes, the substantive rules of state common law, here in Pennsylvania, shall govern a federal court's holding on a state law claim.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).  The *Erie* doctrine rejects the notion that there is a "transcendental body of law outside of any particular State but obligatory within it[.]"  *Id.*, at 79.  In practice, the *Erie* doctrine requires federal courts to apply the holdings of the highest court in the state or, if the state high court has not made a definitive holding on the issue, the federal courts must predict what the state high court would hold if deciding the case.  *Id*, at 79.  In order to predict the state high court's holding, a federal court can look to the decisions of intermediate state courts, as well as other federal district courts sitting in diversity and applying Pennsylvania law to similar issues.  *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 178 (1940); *In re Paoli R. Yard PCB Litigation*, 916 F.2d 829, 849 (3d Cir. 1990).

In this context, Plaintiffs cite no Pennsylvania Supreme Court authority.  And they cite no authority from any intermediate Pennsylvania state court, or any federal district court sitting in diversity and applying Pennsylvania law, that permits an implied contract claim against a higher education institution.  As detailed above and in CMU's opening brief, the Pennsylvania Superior Court at least twice (*Swartley* and *Cavaliere*), as well as the Third Circuit Court of Appeals (*Vurimindi*) and at least five federal district courts applying Pennsylvania law (*Hart*, *Neumann*, *Penn*, *Temple*, *Pitt*) **all** require contract claims to be based on specific and definite written promises.  Plaintiffs, therefore, point to no authority indicating that the Pennsylvania Supreme Court would rule in any way other than to adhere to this longstanding precedent.  Simply put, there

is no Pennsylvania precedent upon which this Court may rely to permit an implied contract claim

consistent with this Court's obligations under *Erie* and its progeny.[2]

**V.     *Penn*, *Temple,* and *Pitt* are consistent with each other and with longstanding Pennsylvania law in their key holdings.**

Plaintiffs wrongly suggest that *Penn*, *Temple,* and *Pitt* involve ""varying and at times

contradictory interpretations and applications of Pennsylvania law."  Opp. at 6.  Plaintiffs note

---

[2]     Plaintiffs cite in the Opposition to a number of decisions in COVID-19 refund class actions from other jurisdictions where courts denied motions to dismiss and permitted plaintiffs' breach of contract claims to proceed.  Opp. at 5 n.1.  None of these decisions applies Pennsylvania law.  CMU notes, however, that courts in other jurisdictions also have granted motions to dismiss; Pennsylvania is not an outlier in that regard.  *Hernandez v. Ill. Inst. of Tech.*, No. 20-cv-3010, 2021 WL 1600171 (N.D. Ill. Apr. 23, 2021); *Romankow v. New York Univ.*, 20 Civ. 4616 (GBD), 2021 WL 1565616 (S.D.N.Y. Apr. 21, 2021); *Rynasko v. New York Univ.*, 20 Civ. 3250 (GBD), 2021 WL 1565614 (S.D.N.Y Apr. 21, 2021); *Meissner v. Syracuse Univ.*, 5:20-CV-839 (TJM/ATB), 2021 WL 1536676 (N.D.N.Y. Apr. 13, 2021); *Dougherty v. Drew Univ.*, Civ. No. 21-00249 (KM) (ESK), 2021 WL 1422935 (D. N.J. April 14, 2021); *Miller v. Lewis Univ.*, Case No. 20 C 5473, 2021 WL 1379488 (N.D. Ill. April 11, 2021); *Buschauer v. Columbia College Chi.*, No. 20 C 3394, 2021 WL 1293829 (N.D. Ill. April 6, 2021); *Abuelhawa v. Santa Clara Univ.*, Case No. 20-cv-04045-LHK, 2021 WL 1176689 (N.D. Cal. Mar. 29, 2021); *Shaffer v. George Wash. Univ.*, Civil Action No. 20-1145 (RJL), 2021 WL 1124607 (D.D.C. Mar. 21, 2021); *Morales v. N.Y. Univ.*, 20 Civ. 4418 (GBD), 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021); *Zagoria v. N.Y. Univ.*, 20 Civ. 3610 (GBD) (SLC), 2021 WL 1026511 (S.D.N.Y. Mar. 17, 2021); *Patel v. Univ. of Vt. & State Agric. Coll.*, Case No. 5:20-cv-00061-gwc, 2021 WL 1049980 (D. Vt. Mar. 15, 2021); *Seslar v. Trs. of Purdue Univ.*, Case No. 79D02-2005-PL-000059, 2021 WL 1235493 (Tippecanoe Co. Mar. 8, 2021); *Hannibal-Fisher v. Grand Canyon Univ.*, No. CV-20-01007-PHX-SMB, 2021 WL 842134 (D. Ariz. Mar. 5, 2021); *Burt v. Bd. of Trustees of the Univ. of R.I.*, C.A. No. 20-465-JJM-LDA; C.A. No. 20-295-JJM-LDA; C.A. No. 20-191-JJM-LDA; C.A. No. 20-246-JJM-LDA; C.A. No. 20-226-JJM-LDA, 2021 WL 825398 (D. R.I. Mar. 4, 2021); *Espejo v. Cornell Univ.*, 3:20-CV-467, 2021 WL 810159 (N.D.N.Y. Mar. 3, 2021); *Marbury v. Pace Univ. (In re: Columbia Tuition Refund Action)*, 20-cv-3208 (JMF); 20-cv-3210 (JMF), 2021 WL 790638 (S.D.N.Y. Feb. 26, 2021);*Oyoque v. DePaul Univ.*, No. 1:20-cv-03431, 2021 WL 679231 (N.D. Ill. Feb. 21, 2021); *King v. Baylor Univ.*, No. 6:20-CV-00504, 2021 WL 1230488 (W.D. Tex. Jan. 29, 2021); *Hassan v. Fordham University*, 20-CV-3265, 2021 WL 293255 (S.D. N.Y. Jan. 28, 2021); *Gociman, et al v. Loyola University of Chicago*, Case No. 20 C 3116, 2021 WL 243573 (N.D. Il. Jan. 25, 2021).

differences in the *Penn*, *Temple* and *Pitt* decisions that are peripheral, but none alter the fact that all three of those cases are squarely in line with established Pennsylvania law and each other.

Consistent with the longstanding Pennsylvania precedent detailed above, *Penn*, *Temple* and *Pitt* all dismissed students' breach of contract claims seeking tuition refunds because the plaintiffs failed to point to any specific failure or specific promise by schools to an in-person experience under all circumstances.  *Pitt*, 2021 WL 1630579, at *2 ("Plaintiffs' claim fails because it does not identify any specific contractual promise that the University allegedly breached with respect to in-person instruction, tuition, fees, or any other costs."); *Penn*, 2921 WL 1539493, at *5; *Temple* 2021 WL 1581563, at *7 ("Plaintiffs have not identified any provision within the Agreement stating that Temple University would provide in-person classes under all circumstances or that tuition and fees would be refunded should classes be moved to an online format.").

That the courts in *Penn*, *Temple*, and *Pitt* vary slightly in how they define the outer contours of the parties' express contract (for example whether the contract is limited to a financial responsibility agreement or includes written policies and procedures) is irrelevant here, as the Plaintiffs have identified no specific promise in ***any writing***, whether in the Course Catalog or otherwise, that CMU allegedly breached.  Those variations in *Penn*, *Temple*, and *Pit* also reflect alleged factual differences in the terms of the written agreements themselves (for example, whether they include an integration clause) rather than any ambiguity or disagreement among the courts in their fundamental rulings based on Pennsylvania law.

## VI.    The Consolidated Amended Complaint Sounds in Educational Malpractice.

Plaintiffs attempt to circumvent dispositive Pennsylvania educational malpractice precedent to avoid dismissal, while at the same time attempting to preserve their ability later to seek damages based on the allegedly subpar remote instruction they received.  Plaintiffs cannot

have it both ways.  Specifically, Plaintiffs cannot disavow that their claims sound in educational

malpractice (*i.e.* that their experience was subpar), and still seek damages based on their effort to

quantify the difference in value of the in-person versus allegedly subpar remote experiences.

*Lindner*, 2020 WL 7350212 at *7 (granting a motion to dismiss breach of contract claims stating,

". . .  Plaintiffs allege that the Occidental's Spring 2020 programs were 'sub-par' and that online

classes lacked 'collaborative learning and . . . dialogue, feedback, and critique.' . . .  Thus, the

resolution of Plaintiffs' claims would require the Court to make judgments about the quality and

value of the education that Occidental provided in the Spring 2020 semester.").

## VII.    Plaintiffs' Conversion, Unjust Enrichment, and Money Had and Received Claims Are Foreclosed by the Course Catalog.

Because the Course Catalog and incorporated policies are a binding agreement that is

dispositive of this case, Plaintiffs' unjust enrichment, conversion, and money had and received

claims should be dismissed with prejudice as discussed more fully in CMU's Opening Brief.

<div style="margin-left:50%">

*/s/ Jeffrey M. Weimer*_____
Daniel I. Booker
PA I.D. No. 10319
Catherine S. Ryan
PA I.D. No. 78603
Jeffrey M. Weimer
PA I.D. No. 208409

REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh, Pennsylvania 15222

*Counsel for Defendant*

</div>

Dated:  June 4, 2021