IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ABIGALE PFINGSTEN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CARNEGIE MELLON UNIVERSITY<br><br>Defendant. | Case No. 2:20-cv-00716-RJC |
| ANOKHY DESAI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CARNEGIE MELLON UNIVERSITY<br><br>Defendant. | Case No. 2:20-cv-00844-RJC |

## PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE

On March 22, 2022, the Court issued an Order to Show Cause (ECF 46) as to why this case should not be stayed pending the appeals in *Hickey v. Univ. of Pitt.*, 535 F. Supp. 3d 372 (W.D. Pa. 2021), and *Ryan v. Temple Univ.*, 535 F. Supp. 3d 356 (E.D. Pa. 2021), as both were cited in the parties' motion to dismiss briefing. Plaintiffs Abigale Pfingsten and Anokhy Desai submit that this case should not be stayed pending the appeals for the reasons stated below.

## ARGUMENT

"Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). A court abuses its discretion if it issues a "stay of indefinite

1

duration in the absence of a pressing need." *Id.*  A stay for purposes of awaiting disposition of another action is only appropriate if the other case "may substantially affect" or "be dispositive of the issues." *Bechtel Corp v. Local 215, Laborers' Int. Union of N. Am., AFL-CIO*, 544 F.2d 1207, 1215 (3d Cir. 1976). Courts in this Circuit typically review four factors to determine whether to grant a stay:

> (1) the length of the requested stay; (2) the hardship that the moving party would face if the stay were not granted; (3) the injury that a stay would cause to the non-movant; and (4) whether granting a stay would streamline the proceedings by simplifying issues and promoting judicial economy.

*Duchene v. Westlake Servs., LLC*, No. 2:13-CV-01577, 2015 WL 5947669, at *2 (W.D. Pa. Oct. 13, 2015).

This case—involving a simple breach of contract under Pennsylvania law, and quasi-contract claims in the alternative—does not present the type of rare circumstance requiring a stay. Neither the *Pitt* nor *Temple* court's dismissal of those plaintiffs' claims offer a disagreement on any controlling question of law at issue in this action. Instead, those courts applied well-established Pennsylvania contract law, and the cases are on appeal for fact- and case-specific reasons. The length of time required for the Third Circuit to resolve the appeals is also entirely unpredictable, and could easily be a year or more. Thus, both the first and fourth factors above are not met here.

Contract law in Pennsylvania is clear, and the Third Circuit is unlikely to stray from the Pennsylvania Supreme Court and the Pennsylvania Superior Court's multiple holdings in this context: "the relationship between a private educational institution and an enrolled student is contractual in nature . . . ." *Swartley v. Hoffner*, 734 A.2d 915, 919 (Pa. Super. Ct. 1999). "[B]reach of contract actions brought by a party against a private college or learning institution [are] treated as any other contract." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 480–81 (Pa.

2

Super. Ct. 2007); *see also Liss & Marion, P.C. v. Recordex Acquisition Corp.*, 983 A.2d 652, 659 (Pa. 2009) (describing implied contracts); *Ingrassia Constr. Co. v. Walsh*, 486 A.2d 478, 483 (Pa. Super. 1984) (same).

The "essence of the bargain between student and university" is the student's "reasonable expectation based on statements of policy by [the university] and the experience of former students . . . ." *Gati v. Univ. of Pittsburgh of Com. Sys. of Higher Educ.*, 91 A.3d 723, 731 (Pa. Super. Ct. 2014). When reviewing claims for breach of implied contracts, a court may also consider allegations pointing to website materials and publications in its analysis. *McCabe v. Marywood University*, 166 A.3d 1257, 1262 (Pa. Super. Ct. 2017). This theory is not novel. In *Cavaliere*, the Pennsylvania Superior Court considered a cause of action for "*breach of an alleged implied contract* for a quality education". *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 398–99 (Pa. Super. Ct. 1992) (emphasis added). The Pennsylvania Superior Court ultimately dismissed that cause of action because it was considered to be a claim for educational malpractice, *not* because any rule of Pennsylvania law precludes the existence of an implied contractual relationship between a university and its students. The Third Circuit's review of *Pitt* and *Temple* will not alter these bedrock principles but instead will turn on whether those district courts correctly applied the law to the specific factual allegations before them.

In *Pitt*, Judge Stickman's statement of the applicable law was correct: "Pennsylvania law recognizes the existence of an implied contract between universities and their students." *Id.* at 378. The court in *Pitt* also explained, citing to *Swartley*, that the contractual relationship is "not governed by a single document" but instead comprises materials provided to student throughout their enrollment. *Id.*  Judge Stickman ultimately dismissed the students' implied contract claim because he found that defendant's "websites, promotional materials, circulars, admission papers,

3

and publications" did not indicate the university manifested assent to provide the services students alleged were part of the parties' bargain. *Id.* at 379. Although the court correctly considered those materials as per *McCabe*, the *Pitt* court ultimately found that those materials amounted to a subjective view of a student's experience in "ordinary times[.]" *Id.* The holding in *Pitt* therefore turned primarily on the court's application of well-settled law to the facts, and on appeal the student plaintiffs in *Pitt* primarily assign error to the court's application, rather than the court's interpretation of Pennsylvania law.

Similarly, the court in *Temple* did not hold that implied contracts cannot exist between students and universities. Rather, the *Temple* court accurately described Pennsylvania law pertaining to implied contracts theory,[1] and found that *factually* the claim failed based on the allegations contained in the complaint. Specifically, the *Temple* court dismissed plaintiffs' implied contract claim because "Plaintiffs' implied contract theory is precluded by the existence of an express contract [Student Financial Responsibility Agreement] concerning the same subject-matter as the alleged implied contract." *Id.* at 364.

Both *Pitt* and *Temple* cited to well-established Pennsylvania law on contracts. Those cases were dismissed for reasons that are fact- and case-specific. They are on appeal because appellants in those cases, both of whom are represented by some of the same counsel here, believe the allegations in those complaints were sufficient, and that the district courts improperly

---

[1] *Temple*, 535 F. Supp. 3d at 369 ("Courts may infer an implied contract where the parties manifest an agreement upon mutual obligations by virtue of their actions. *See Weiss v. Thomas Jefferson University*, No. 3103 EDA 2017, 2019 WL 2501483, at *7 (Pa. Super. June 17, 2019). A complaint that advances claims under an implied contract must show that there was a meeting of the minds concerning the binding rights and duties therein. *See Hirsch v. Schiff Benefits Group, LLC*, No. 10-2574, 2011 WL 1166127, at *3 (E.D. Pa. Mar. 28, 2011). However, 'no implied-in-fact contract can be found when…the parties have an express agreement dealing with the same subject.' *Cohn v. Pa. State. Univ.*, No. 19-2857, 2020 WL 738496, at *10 (E.D. Pa. Feb. 12, 2020) (quoting *In re Penn Central Transp. Co.*, 831 F.2d 1221, 1229 (3d Cir. 1987)).").

*applied* the law to the facts. For instance, in *Pitt*, appellants-plaintiffs contend that the websites, promotional materials, circulars, admission papers, and publications cited in the complaint were more than just descriptions of "ordinary times" and is enough to establish an implied contract. In *Temple*, appellants-plaintiffs contend that the Student Financial Responsibility Agreement proffered by Temple is not "fully integrated" agreement that bars maintenance of an implied contract based on other indications of mutual assent, such as course of dealing, course of performance, and other documents exchanged by the parties.

But even if those district court rulings are affirmed by the Third Circuit, the same outcome is not compelled here because the allegations contained in Plaintiffs' complaint contain *different* allegations and the contents of Defendant's websites, promotional materials, circulars, admission papers, and publications are not identical to those in *Pitt* and *Temple*. Further, the materials that Defendant proffers is the governing contract here differs from that in *Temple*, and will need to be reviewed separately.

On top of those factual differences, Plaintiffs' claims are supported by additional allegations not analyzed in *Pitt* or *Temple.* Specifically, Plaintiffs provide screenshots and allegations showing the "Teaching Location" and "Delivery Mode." Compl. ¶¶ 4-5, 23-25.  The operative complaint in *Pitt* did not have similar allegations to analyze, and the *Temple* court foreclosed the possibility of entertaining those allegations due to its finding that a written, integrated contract controlled the entire relationship between the parties. Therefore, this Court's treatment of Plaintiffs' allegations will not necessarily be driven in one direction or the other based on the result of those two appeals in the Third Circuit. As the appeals generally do not turn on a single binary legal question, even given an opinion from the *Pitt* and *Temple* appeals, this Court will still need to conduct its own analysis of Pennsylvania contract law and its application

of the same to Plaintiffs' allegations. This Court is already in a position to do that given that Pennsylvania law on contracts has been well established.

Another court in this district has denied a motion to dismiss in an analogous case, and has refused to certify the decision for immediate appellate review under 28 U.S.C. § 1292(B), concluding that "neither determination [by the Third Circuit] would terminate or materially advance the resolution of this case." *Figueroa v. Point Park Univ.*, No. 2:20-CV-01484, 2021 WL 4975196, at *4 (W.D. Pa. Oct. 26, 2021). In *Figueroa*, Judge Lenihan found that "[b]ecause the multi-faceted contractual relationship between a university and its students is generally not documented within a single integrated express writing, it is comprised of – and the courts look to - the many different representations provided to the students during their enrollment. That is, student-university contracts are considered under the law of implied (or 'implied-in-fact') contract." *Figueroa*, 2021 WL 3549327, at *6 (W.D. Pa. Aug. 11, 2021). The *Figueroa* court reviewed allegations similar to those here, including that the university had an online program that was offered at a lower price. In doing so, Judge Lenihan allowed plaintiffs' implied contract claim to move forward, concluding: "Plaintiffs sufficiently plead an implied contract under Pennsylvania law to provide in-person, on-campus instruction, experiences, and activities. They specifically allege that PPU promised – in the official materials promulgated in electronic and print form during the students' enrollment - a particular method of instruction for which students paid a premium in tuition and fees, but delivered a lower-cost option which the students had previously declined." *Id.* at *11 (internal citations and quotations omitted).

Further, the law in analogous cases is in Plaintiffs' favor. As Judge Bibas of the Third Circuit indicated while sitting in designation in an analogous case "most college students never sign a single, integrated contract," and "[s]chools and students show their intent to contract

mostly through their actions, not words: the school admits them, the students enroll and pay tuition, and the students go to class." *Ninivaggi v. U. of Delaware*, Case No. 20-cv-1478, 2021 WL 3709765, at *2–3 (D. Del. Aug. 20, 2021). Recently, the U.S. Court of Appeals for the District of Columbia Circuit reversed the dismissal of implied contract and unjust enrichment claims in two other university cases. *Shaffer v. George Washington Univ.*, 27 F.4th 754 (D.C. Cir. 2022). In doing so, the D.C. Circuit looked to appellants-plaintiffs' allegations citing to websites and brochures, similar to those in this action. *Id.* at *5. The D.C. Circuit also held that the maintenance of unjust enrichment claims in the alternative was proper. *Id.* at *9.

The notion proffered by some university defendants in the Pennsylvania cases—that Pennsylvania law is somehow unique compared to Delaware or the District of Columbia and prohibits entirely any implied contract claims against universities—is based on an overextension of *Swartley v. Hoffner*. 734 A.2d 915 (Pa. Super. Ct. 1999). But *Swartley* is factually inapposite because it was a challenge to an "essentially academic decision[]." *Swartley*, 734 A.2d at 921. Pennsylvania courts' historically reject claims that sound in a vague "educational malpractice" cause of action, "'where the allegation is simply that the educational institution failed to provide a quality education.'" *Id.* at 918.[2]

The plaintiff in *Swartley* relied on a "tortured interpretation" of the policies at issue, particularly "[g]iven the context of the provisions and the academic nature of the institution." *Id.* at 919–21. These facts indicate that the *Swartley* court did not have before it a cause of action

---

[2] (quoting *Cavaliere*, 605 A.3d at 403. The *Cavaliere* court had explained that there is a crucial distinction between "a cause of action for an alleged general failure to educate," (non-cognizable educational malpractice) and causes of action based on "a specific contractual undertaking which was breached," for which the court could "fathom no policy against permitting." *Cavaliere*, 605 A.3d at 401–404.

7

with "available proof of a specific contractual undertaking." *Cavaliere*, 605 A.2d, 401.[3] Fifteen years after *Swartley*, the court in *Gati* seemingly rejected any limitation of implied contract theory in the educational context and considered the course of dealings between the parties by looking at the "experience of former students[.]" *Gati*, 91 A.3d at 731. Three years after *Gati*, the Superior Court entertained a student's claim that the university's "website and literature" implied a promise that the university was "fully accredited." *McCabe*, 166 A.3d at 1261. If a contractual promise *must* be express and in writing, the *Gati* and *McCabe* courts would have said so, but they did not, because Pennsylvania law does not have special rules for institutions of higher learning.

Additionally, and as a practical matter, a stay in this case would potentially reduce options for resolution, resulting in prejudice to Plaintiffs. As it stands, some of the students who were enrolled in the Spring 2020 semester are still enrolled with the Defendant. A potential settlement option for class members could be to receive credits/discounts on future tuition and fees *in lieu* of monetary consideration. As time passes and more students graduate, the potential for that structure narrows. Likewise, class members who can be notified of class settlement through student e-mail addresses (which can be ascertained easily and efficiently) may no longer have access to student e-mail addresses after graduation, and administration costs would increase in an attempt to locate other avenues for communication.

## **CONCLUSION**

For the reasons stated herein, the Court should not stay the proceedings.

---

[3] For that reason, the statement Defendant depends upon most—"the contract between the university and its students is comprised solely of the written materials provided to the students," *Swartley*, 734 A.2d at 919—is nonbinding *dicta* because it was not necessary to resolve the plaintiff's claim.

| | |
|---|---|
| Dated: March 28, 2022 | Respectfully Submitted: |

**LYNCH CARPENTER LLP**

*/s/ Gary F. Lynch*
Gary F. Lynch
Edward W. Ciolko*
Kelly K. Iverson
1133 Penn Avenue 5th Floor
Pittsburgh, PA 15222
P. (412) 322-9243
F. (412) 231-0246
gary@lcllp.com
eciolko@lcllp.com
kelly@lcllp.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (*Pro Hac Vice*)
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Frederick J. Klorczyk III*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
Sarah N. Westcot*
2665 S. Bayshore Drive, Suite 220
Miami, FL 33133
Telephone: (305) 330-5512
Facsimile: (305) 676-9006
Email: swestcot@bursor.com

*Attorneys for Plaintiffs*