## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ABIGALE PFINGSTEN and ANOKHY DESAI, )
*individually and on behalf of all others similarly* )
*situated*, )
)     Case No. 2:20-cv-00716-RJC
PLAINTIFFS, )
)
v. )
)
CARNEGIE MELLON UNIVERSITY, )
)
DEFENDANT. )

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO PRELIMINARILY APPROVE CLASS ACTION SETTLEMENT, CERTIFY THE CLASS, APPOINT CLASS COUNSEL, APPROVE PROPOSED CLASS NOTICE, AND SCHEDULE A FINAL APPROVAL HEARING

**TABLE OF CONTENTS**

INTRODUCTION ..........................................................................................................1

BACKGROUND AND STATUS OF THE LITIGATION.........................................2

SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT...................4

    A.     Class Definition .........................................................................4

    B.     The Proposed Class Notice .......................................................4

    C.     Monetary Terms.........................................................................6

    D.     Dismissal and Release of Claims..............................................8

    E.     Proposed Schedule Following Preliminary Approval...............9

ARGUMENT ...............................................................................................................9

    A.     The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) Factors for Preliminary Approval...............................11

        i.     The proposal was negotiated at arm's length ...............12

        ii.     The relief provided for the class is adequate ...............13

        iii.     The settlement accounts for the costs, risks, and delay of trial and appeal ...............................14

        iv.     The settlement provides for an effective method of distributing relief to the Class..........................17

        v.     The proposed attorneys' fee award is reasonable........................17

        vi.     Additional agreements required to be identified under Rule 23(e)(3) ...............................18

        vii.     The remaining Girsh factors also support approval of the Settlement.........................18

    B.     The remaining Girsh factors also support approval of the Settlement..................20

    C.     The Proposed Settlement Class Satisfies the Criteria of Rule 23 ..........................20

        i.     Rule 23(a) – Numerosity.........................................................21

ii.     Rule 23(a) – Commonality...........................................................................21

iii.    Rule 23(a) – Typicality ............................................................................22

iv.    Rule 23(a) – Adequacy ...........................................................................23

D.     Rule 23(b) Requirements Are Satisfied Here .......................................................23

E.     The Proposed Settlement Notice to the Class Should be Approved.....................25

F.     Gary F. Lynch and Nicholas A. Colella of Lynch Carpenter, LLP
and Philip L. Fraietta of Bursor & Fisher, P.A. Should be Appointed
as Class Counsel .................................................................................................26

CONCLUSION...................................................................................................................27

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods. v. Windsor,*
521 U.S. 591 (1997) ........................................................................................ 20, 24

*Baby Neal for & by Kanter v. Casey,*
43 F.3d 48 (3d Cir. Dec. 15, 1994) ................................................................... 22

*Caddick v. Tasty Baking Co.,*
2021 WL 1374607 (E.D. Pa. Apr. 12, 2021) .................................................... 26

*Dewey v. Volkswagen Aktiengesellschaft,*
681 F.3d 170 (3d Cir. 2012) .............................................................................. 23

*Ehrheart v. Verizon Wireless,*
609 F.3d 590 (3d Cir. 2010) .............................................................................. 10

*Fulton-Green v. Accolade, Inc.,*
2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ................................................... 16

*Fulton-Green v. Accolade, Inc.,*
2019 WL 316722 (E.D. Pa. Jan. 23, 2019) ........................................... 10, 13, 20

*Gates v. Rohm & Haas Co.,*
248 F.R.D. 434 (E.D. Pa. 2008) ........................................................................ 12

*Geis v. Walgreen Co.,*
2010 WL 11570447 (D.N.J. Sept. 30, 2010) ..................................................... 17

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975) ....................................................................... 11, 19

*Hall v. Accolade, Inc.,*
2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) ................................................. 9, 10

*Hickey v. Univ. of Pittsburgh,*
81 F.4th 301 (3d Cir. 2023) ................................................................................. 3

*Hickey v. University of Pittsburgh,*
535 F. Supp. 3d 372 (W.D. Pa. 2021) ................................................................. 3

*Horizon Blue Cross Blue Shield of New Jersey,*
2018 WL 10133574 (D.N.J. June 29, 2018) ...................................................... 14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ..................................................................... 16

*In re Centocor, Inc. Secs. Litig. III*,
    1999 WL 54530 (E.D. Pa Jan. 27, 1999)............................................... 22

*In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*,
    269 F.R.D. 468 (E.D. Pa. 2010) ............................................................ 19

*In re CertainTeed Fiber Cement Siding Litig.*,
    303 F.R.D. 199 (E.D. Pa. 2014) ............................................................ 14

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    216 F.R.D. 197 (D. Me. 2003)................................................................. 16

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*,
    55 F.3d 768 (3d Cir. 1995) ..................................................................... 19

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*,
    2013 WL 504857 (E.D. Pa. Feb. 12, 2013) ........................................... 11

*In re Linerboard Antitrust Litig.*,
    203 F.R.D. 197 (E.D. Pa. 2001) ............................................................ 22

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014) ............................................................ 12

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) ........................................................ 22, 24, 26

*In re Processed Egg Prods. Antitrust Litig.*,
    284 F.R.D. 249 (E.D. Pa. 2012) ............................................................ 13

*In re Processed Egg Prods. Antitrust Litig.*,
    2014 WL 12614451 (E.D. Pa. Dec. 19, 2014).......................................... 10

*In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) ................................................................... 24

*In re Ravisent Techs., Inc. Sec. Litig.*,
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005)............................................ 18

*In re Remicade Antitrust Litig.*,
    2022 WL 3042766 (E.D. Pa. Aug. 2, 2022) ..................................... 25, 26

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................. 15

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................... 10

*In re Wawa, Inc. Data Sec. Litig.*,
    2021 WL 3276148 (E.D. Pa. July 30, 2021) ................................................. 13

*In re Yahoo! Inc. Customer Data Security Breach Litig.*,
    2020 WL 4212811 (LHK) .............................................................................. 16

*Mack Trucks, Inc. v. Int'l Union, UAW*,
    2011 WL 1833108 (E.D. Pa. May 12, 2011) ................................................ 12

*Mehling v. New York Life Ins. Co.*,
    246 F.R.D 467 (E.D. Pa. 2007) .................................................................... 12

*Myers v. Jani-King of Philadelphia, Inc.*,
    2019 WL 2077719 (E.D. Pa. May 10, 2019) ................................................ 10

*Neale v. Volvo Cars of North America, LLC*,
    794 F.3d 353 (3d Cir. 2015) ........................................................................... 24

*Reibstein v. Rite Aid Corp.*,
    761 F. Supp. 2d 241 (E.D. Pa. 2011) ............................................................ 19

*Ripley v. Sunoco, Inc.*,
    287 F.R.D. 300 (E.D. Pa. June 26, 2012) .................................................... 23

*Ryan v. Temple University*,
    535 F. Supp. 3d 356 (E.D. Pa. 2021) .............................................................. 3

*Schwartz v. Dana Corp.*,
    196 F.R.D. 275 (E.D. Pa. 2000) .................................................................... 21

*Sherman v. American Eagle Exp., Inc.*,
    2012 WL 748400 (E.D. Pa. March 8, 2012) ................................................ 22

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ................................................................ 20, 21, 24

*Swinton v. SquareTrade, Inc.*,
    2019 WL 617791 (S.D. Iowa Feb. 14, 2019) .............................................. 20

*Tumpa v. IOC-PA, LLC*,
    2021 WL 62144 (W.D. Pa. Jan. 7, 2021) ............................................................ 18

*Vinh Du v. Blackford*,
    2018 WL 6604484 (D. Del. Dec. 17, 2018) ......................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................ 21

*Walsh v. Great Atl. & Pac. Tea Co., Inc.*,
    726 F.2d 956 (3d Cir. 1983) ................................................................................ 20

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................Passim

Fed. R. Civ. P. 23(a) .................................................................................. 20, 21, 22, 23

Fed. R. Civ. P. 23(a)(1) ............................................................................................. 21

Fed. R. Civ. P. 23(a)(2) ............................................................................................. 21

Fed. R. Civ. P. 23(a)(3) ............................................................................................. 22

Fed. R. Civ. P. 23(b) ........................................................................................... 20, 23

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 21, 23

Fed. R. Civ. P. 23(b)(3)(A)–(D) ............................................................................... 25

Fed. R. Civ. P. 23(c) .................................................................................................. 10

Fed. R. Civ. P. 23(c)(2)(B) ................................................................................. 10, 25

Fed. R. Civ. P. 23(e) ................................................................................................ 2, 9

Fed. R. Civ. P. 23(e)(1) ............................................................................................. 10

Fed. R. Civ. P. 23(e)(1)(A) .......................................................................................... 9

Fed. R. Civ. P. 23(e)(1)(B) ......................................................................... 6, 9, 10, 25

Fed. R. Civ. P. 23(e)(2) .......................................................................................... 9, 11

Fed. R. Civ. P. 23(e)(2)(C)(i) ....................................................................... 14, 17, 20

Fed. R. Civ. P. 23(e)(2)(C)(iv)................................................................................... 18

Fed. R. Civ. P. 23(e)(3)....................................................................................... 11, 18

Fed. R. Civ. P. 23(g) ............................................................................................... 26

**Other Authorities**

Manual for Complex Litigation, Fourth, § 21.312...................................................... 25

## INTRODUCTION

Plaintiffs Abigale Pfingsten and Anokhy Desai ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their counsel, hereby respectfully move the Court for preliminary approval of the proposed class action settlement ("Settlement") set forth in the Stipulation of Settlement ("Settlement Agreement" or "SA") (attached as **Exhibit 1** to the contemporaneously filed Declaration of Nicholas A. Colella ("Colella Decl.")). Plaintiffs, with consent of Defendant Carnegie Mellon University ("CMU," the "University," or "Defendant"), respectfully move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order: (1) granting preliminary approval of the Settlement; (2) approving the form and content of the Notice to be sent to the members of the Settlement Class[1] pursuant to the plan detailed in the Settlement Agreement; and (3) scheduling a final fairness hearing.

Plaintiffs, on behalf of themselves and a proposed class of individuals, have agreed to settle all claims against CMU as to tuition and fees paid during the Spring 2020 semester. Plaintiffs allege that CMU contracted with, charged, and collected from its students, funds for in-person education and on-campus access and services, but that CMU failed to deliver an in-person education and on-campus access and services when, in response to the Covid-19 pandemic, CMU moved all classes to online-only and constructively closed the campus. As set forth in the Settlement Agreement, all students who do not opt-out of the Settlement will receive payment under the Settlement in consideration for the release of their claims against CMU. All students will receive a *pro rata* portion of the Net Settlement Fund based on the ratio of (a) the total amount of Spring 2020 Tuition and Fees assessed to Settlement Class Members enrolled at CMU during the

---

[1] All capitalized terms used throughout this brief shall have the meanings ascribed to them in the Settlement Agreement.

Spring 2020 semester to (b) the total amount of Spring 2020 Tuition and Fees assessed to each individual Settlement Class Member enrolled at CMU during the Spring 2020 semester, less financial aid provided by CMU, and less any refunds of Tuition and/or Fees already distributed related to Spring 2020 semester. To the extent the distribution formula results in an individual payment amount of less than $50, the payment amount will be adjusted upwards so that no Settlement Class Member shall receive less than $50.

As set forth below, the proposed Settlement is the product of fully informed, arm's-length settlement negotiations, including a mediation session with Honorable Diane M. Welsh (Ret.). Given these factors, and those more fully discussed below, the Settlement meets Rule 23(e)'s requirements for the issuance of notice. Plaintiffs therefore respectfully request that the Court preliminarily approve the Settlement and enter the proposed Preliminary Approval Order.[2]

## BACKGROUND AND STATUS OF THE LITIGATION

On May 15, 2020, Plaintiff Abigale Pfingsten filed a class action Complaint in the United States District Court for the Western District of Pennsylvania styled *Pfingsten v. Carnegie Mellon University*, Case No. 2:20-cv-00716 (ECF 1) (the "Action"). On June 5, 2020, Plaintiff Anokhy Desai filed a class action Complaint in the United States District Court for the Western District of Pennsylvania styled *Desai v. Carnegie Mellon University*, Case No. 2:20-cv-00844 (ECF 1). On August 26, 2020, the Court consolidated the cases (ECF 8) and, on September 25, 2020, Named Plaintiffs filed their Class Action Amended Complaint (ECF 9) ("Complaint").

On November 16, 2020, CMU filed a Motion to Dismiss. (ECF 15-16). On December 18, 2020, Named Plaintiffs filed papers in opposition to the Motion to Dismiss (ECF 21). On January

---

[2] While CMU denies liability, it does not oppose this Motion, and supports preliminary approval of the Settlement Agreement, certification of the proposed class for settlement purposes only, and dissemination of the Class Notice to the students.

4, 2021, CMU filed its Reply in Support of its Motion to Dismiss. (ECF 23). On April 30, 2021, the Court issued a Memorandum Order denying the Motion to Dismiss without prejudice and ordering the Parties to re-submit their briefing in light of numerous decisions in similar matters that had been issued (ECF 34).

On May 14, 2021, CMU re-filed the Motion to Dismiss (ECF 37-38). On May 28, 2021, Named Plaintiffs filed papers in opposition to the Motion to Dismiss (ECF 39). On June 4, 2021, CMU filed its Reply in Support of its Motion to Dismiss (ECF 40). Following oral argument, on March 22, 2022, the Court issued an Order to Show Cause why the Action should not be stayed pending the consolidated Third Circuit appeals in *Hickey v. University of Pittsburgh*, 535 F. Supp. 3d 372 (W.D. Pa. 2021), and *Ryan v. Temple University*, 535 F. Supp. 3d 356 (E.D. Pa. 2021) (ECF 48), and ultimately issued a Stay on March 29, 2022 (ECF 49).

After the opinion was issued in *Hickey v. Univ. of Pittsburgh*, 81 F.4th 301 (3d Cir. 2023), the Court lifted the stay on September 18, 2023 (ECF 55). On October 25, 2023, Defendant filed its Answer, Affirmative Defenses, and New Matter (ECF 58). Thereafter, the Parties began formal written discovery in preparation for class certification.

While formal discovery was ongoing, in anticipation of mediation, the Parties exchanged detailed information related to the amount of tuition and fee payments made by or on behalf of the putative class members for the Spring 2020 semester and exchanged proposals in an effort to reach a settlement of the Action. On October 22, 2024, the Parties held a mediation session with Hon. Diane M. Welsh (Ret.). Though progress was made, the Parties did not settle that day. However, the Parties continued negotiating and, on November 21, 2024, reached an agreement on all material terms of a class action settlement.

Based upon their independent analysis, and recognizing the risks of continued litigation, counsel for Plaintiffs believe that the proposed settlement is fair, reasonable, and in the best interest of Plaintiffs and the Class. Although CMU denies liability, it likewise agrees that settlement is in the Parties' best interests. For those reasons, and because the Settlement is contingent on Court approval, the Parties submit the Settlement Agreement to the Court for its review.

### SUMMARY OF THE TERMS OF THE PROPOSED SETTLEMENT

The key components of the Settlement are set forth below, and a complete description of its terms and conditions are contained in the Settlement Agreement.

### A.    Class Definition

Through the Settlement Agreement, the Parties stipulate to the following Class definition:

> All students who were assessed tuition and/or fees to attend at least one in-person course(s) during the Spring 2020 semester at CMU but had their course(s) moved to remote learning.

SA ¶ 1(z). Excluded from this definition is: (i) any person who properly executes and files a timely opt-out request to be excluded from the Settlement Class; and (ii) the legal representatives, successors or assigns of any such excluded person. *Id.* The Parties estimate that there are approximately 13,337 individuals in the Settlement Class. Should the Court grant final approval of the Settlement, by operation of law and as set forth in Paragraph 10 of the Settlement Agreement: (a) all members of the Releasing Settlement Class Parties shall be deemed to have released any and all Released Claims against the Released CMU Parties, and (b) shall forever be barred and enjoined from prosecuting any or all of the Released Claims against any of the Released CMU Parties.

### B.    The Proposed Class Notice

The Settlement Agreement provides for dissemination of a Short Form Class Notice. The Short Form Class Notice will provide potential Settlement Class Members with pertinent

information regarding the Settlement as well as directing them to the Long Form Class Notice, the Settlement Website, and the contact information for Class Counsel. Within fourteen (14) days of the entry of the Preliminary Approval Order, CMU shall provide the Settlement Administrator with a list that includes the names and last known personal email address and permanent postal address, to the extent available, belonging to all potential Settlement Class Members. *See* SA ¶ 16.

Shortly after receiving the Class List, the Settlement Administrator will send the Short Form Notice (attached to the SA as **Exhibit A-1**) via email or U.S. Mail. *See* SA ¶ 17. The Short Form Notice shall advise the potential Settlement Class Members of their rights under the Settlement, including the right to be excluded from and/or object to the Settlement or its terms. The Short Form Notice shall also inform potential Settlement Class Members that they can access the Long Form Notice on the Settlement Website. The Long Form Notice shall advise the potential Settlement Class Members of the procedures specifying how to request exclusion from the Settlement or submit an objection to the Settlement. *See* SA ¶ 18.

Before the issuance of the Short Form Notice, the Settlement Administrator shall also establish a Settlement Website, which will include: (i) the Long Form Notice; (ii) the Preliminary Approval Order; (iii) this Settlement (including all of its exhibits); (iv) a Question and Answer section agreed to by the Parties anticipating and answering Settlement-related questions from prospective class members; (v) contact information for the Settlement Administrator and Class Counsel; and (vi) any other materials agreed upon by the Parties and/or required by the Court. *See* SA ¶ 19. Additionally, following Notice and until the Final Approval Hearing, CMU will inform potential Settlement Class Members of the Settlement and provide a link to the Settlement Website on a website hosted by CMU. SA ¶ 20.

The form and method of Class Notice agreed to by the Parties satisfies all due process considerations and meets the requirements of Federal Rule of Civil Procedure 23(e)(1)(B). The proposed Long Form Class Notice describes plainly: (i) the terms and effect of the Settlement Agreement; (ii) the time and place of the Final Approval Hearing; (iii) how the recipients of the Class Notice may object to the Settlement; (iv) the nature and extent of the release of claims; (v) the procedure and timing for objecting to the Settlement; and (vi) the form and methods by which potential Settlement Class Member may either participate in or exclude themselves from the Settlement.[3]

### C.    Monetary Terms

The proposed Settlement Amount is a non-reversionary cash payment of Four Million Eight Hundred Thousand Dollars ($4,800,000.00). *See* SA ¶ 38. In accordance with the Settlement Agreement, the Settlement Administrator shall make deductions from the Settlement Fund for court-approved attorneys' fees and reasonable litigation costs, fees, and expenses for the Settlement Administrator, and any court-approved Case Contribution Award to the Plaintiffs, in recognition of the risks and benefits of their participation and substantial services they performed. *See* SA ¶ 39.

After all applicable fees, expenses and awards are deducted, the Net Settlement Fund will be allocated *pro rata* to each Settlement Class Member based on the ratio of (a) the total amount of Spring 2020 Tuition and Fees assessed to Settlement Class Members enrolled at CMU during the Spring 2020 semester to (b) the total amount of Spring 2020 Tuition and Fees assessed to each individual Settlement Class Member enrolled at CMU during the Spring 2020 semester, less financial aid provided by CMU, and less any refunds of Tuition and/or Fees already distributed

---

[3] *See generally* Colella Decl. and exhibits attached thereto.

related to Spring 2020 semester. To the extent the distribution formula results in an individual payment amount of less than $50, the payment amount will be adjusted upwards so that no Settlement Class Member shall receive less than $50. SA ¶ 4.

To the extent that a potential Settlement Class Member properly executes and files a timely opt-out request to be excluded from the Settlement Class, the amount that would have been distributed to such potential Settlement Class Member had they not filed an opt-out request will instead be distributed to the remaining Settlement Class Members, following the same *pro rata* method described above. SA ¶ 5.

Should the Court grant preliminary approval of the Settlement, CMU shall pay the Settlement Amount into an Escrow Account with the Settlement Administrator within ten (10) business days after the Court enters the Preliminary Approval Order. *See* SA ¶ 38. Within sixty (60) days after Final Approval, the Settlement Administrator will send Settlement Class Members their portion of the Settlement Benefit by check, Venmo, or PayPal. *See* SA ¶¶ 7, 9. The Settlement Administrator will pay all legally mandated Taxes prior to distributing the settlement payments to Settlement Class Members. *See* SA ¶ 43.

If the balance of class members' checks which are not deposited or cashed within one hundred and eighty (180) days is less than $250,000, such funds shall, subject to Court approval, be designated to a scholarship fund for CMU students to be administered by CMU. If the balance of class members' checks which are not deposited or cashed within one hundred and eighty (180) days of issuance exceeds $250,000, such funds will be redistributed as a second distribution to Settlement Class Members who previously did cash their settlement checks. If, after the second distribution, there are funds remaining from undeposited or uncashed checks, the funds shall,

subject to Court approval, be designated to a scholarship fund for CMU students to be administered by CMU. *See* SA ¶¶ 1(hh), 9.

### D.    Dismissal and Release of Claims

Upon the Settlement becoming Final, Settlement Class Members shall be deemed to have forever released any and all suits, claims, controversies, rights, agreements, promises, debts, liabilities, accounts, reckonings, demands, damages, judgments, obligations, covenants, contracts, costs (including, without limitation, attorneys' fees and costs), losses, expenses, actions or causes of action of every nature, character, and description, in law, contract, tort or in equity, that any Releasing Party ever had, or has, or may have in the future upon or by reason of any matter, cause, or thing whatever from the beginning of the world to the Effective Date, whether known or unknown, arising out of, concerning, or relating in any way to CMU's transition to or provision of remote education with respect to the COVID-19 pandemic, the implementation or administration of such remote education, the closing of portions of CMU's campus and the suspension of certain services due to the COVID-10 pandemic, or the provision of any services whatsoever that were altered in connection with the COVID-19 pandemic during , the Spring 2020 semester. This definition includes but is not limited to all claims that were brought or could have been brought in the Action. These releases are described in the proposed Long Form Class Notice.

E.    **Proposed Schedule Following Preliminary Approval**

| EVENT | TIMING |
| --- | --- |
| Mailing of Class Notices | Within fourteen (14) calendar days after entry of Preliminary Approval, CMU will produce a list of potential Settlement Class Members to the Settlement Administrator (SA ¶ 16).<br><br>Within forty-five (45) calendar days after entry of Preliminary Approval, the Settlement Administrator will send the Short Form Notice to potential Settlement Class Members (SA ¶ 17). |
| Deadline for Filing Objections to the Settlement | Within forty-five (45) days after the issuance of the Short Form Notice (SA ¶¶ 22, 28). |
| Deadline for Submitting Requests for Exclusion from the Settlement | Within forty-five (45) days after the issuance of the Short Form Notice (SA ¶ 22). |
| Final Approval Hearing | No less than seventy-five (75) days after the Short Form Notice is disseminated (SA ¶ 36). |

## ARGUMENT

Federal Rule of Civil Procedure 23(e), as amended in 2018, "explicitly discusses the requirements for class settlements." *Hall v. Accolade, Inc.*, No. 2:17-cv-03423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019). First, the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The court then decides whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In conducting their preliminary review, courts are cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *accord In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (emphasizing that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged").

At this "preliminary approval" stage, a district court may provisionally certify a class, "leaving the final certification decision for the subsequent fairness hearing." *Hall*, 2019 WL 3996621, at *2; *accord Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 316722, at *1 (E.D. Pa. Jan. 23, 2019); *Myers v. Jani-King of Philadelphia, Inc.*, No. 09-cv-1738, 2019 WL 2077719, at *2 (E.D. Pa. May 10, 2019) (stating that preliminary approval is not a commitment to grant final approval but "establishes an initial presumption of fairness").

If the Court determines that it will "likely be able to" approve the Settlement and certify the Settlement Class, it should direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The notice is usually sent under both Rule 23(e)(1) (regarding settlement) and Fed. R. Civ. P. 23(c)(2)(B) (regarding class certification). *See* 2018 Advisory Committee Notes on Rule 23(c); *Fulton-Green,* 2019 WL 316722, at *1, *5 (granting motion for preliminary approval settlement "because it is within the range of possible approval, the requirements of conditional class certification are met, and the notice plan is reasonably designed to notify class members of the settlement agreement"); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2014 WL 12614451, at *2-4 (E.D. Pa. Dec. 19, 2014) (conditionally certifying class, preliminarily approving settlement, and directing

notice to proposed class); *In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*, No. 11-md-02284, 2013 WL 504857, at *1 (E.D. Pa. Feb. 12, 2013) (same).

A.   **The Settlement Is "Fair, Reasonable, and Adequate" and Satisfies the Rule 23(e)(2) Factors for Preliminary Approval.**

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a class action settlement. The factors include whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, (iii) the terms of any proposed award of attorney's fees, including timing of payment, and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[4]

In determining whether preliminary approval is warranted, the Court should consider whether the "proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible

---

[4] As the court in *Vinh Du v. Blackford*, No. 17-cv-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) explained, the Rule 23(e)(2) factors largely overlap with the nine factors the Third Circuit directed courts to consider when determining the fairness of a proposed settlement in *Girsh v. Jepson*. Those factors are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Blackford*, 2018 WL 6604484, at *6 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)). These factors weigh in favor of the Settlement's approval.

approval." *Mehling v. New York Life Ins. Co.*, 246 F.R.D 467, 472 (E.D. Pa. 2007) (citations omitted); *see also Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-cv-03737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (same). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy, and reasonableness—will be satisfied. *See Mehling*, 246 F.R.D. at 472. The Settlement here, as explained below, exceeds the preliminary approval threshold. Plaintiffs, without opposition from Defendant, respectfully request that this Court preliminarily approve the proposed Settlement.

###### i.    The proposal was negotiated at arm's length.

As referenced above, the Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this litigation, assisted by a neutral and highly experienced mediator. These circumstances weigh in favor of approval. Whether a settlement arises from arm's-length negotiations is a key factor in assessing preliminary approval. *See, e.g., In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co.*, 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included mediation).

The Parties participated in settlement discussions during a full-day mediation guided by respected mediator Hon. Diane M. Welsh (Ret.). Colella Decl. ¶ 7. While the Parties did not reach an agreement during the mediation, they were not at an impasse. *Id.* The Parties continued to discuss resolution over the ensuing weeks, and, on November 21, 2024, the Parties reached an agreement in principle. *Id.* Class Counsel who negotiated the Settlement are knowledgeable and

respected class action litigators with significant experience in complex cases. *Id.* at ¶¶ 18-20. After reaching an agreement in principle, the Parties spent significant time drafting and revising drafts of the full Settlement Agreement, proposed notices, and proposed orders, and selecting the Settlement Administrator. Colella Decl. ¶ 10. At all times, these negotiations were at arm's length, and were courteous, professional, intense, and hard-fought on all sides. *Id.*

> ii.    *The relief provided for the class is adequate.*

This case and the proposed Settlement are the product of significant investigation of Plaintiffs' and Class Members' claims. Class Counsel conducted extensive and lengthy research into the issues presented in this matter, researched and briefed CMU's motions to dismiss, reviewed documentation and all information that CMU produced, consulted with experts, and analyzed the applicable legal precedents and previous settlements in similar cases. Colella Decl. ¶ 13.

While the Parties did not engage in extensive formal discovery, the information uncovered and reviewed by Class Counsel, including informal discovery produced via the mediation process, provided the information needed for Class Counsel to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims.[5] *Id.* ¶ 6.

Based on the information obtained from this discovery, Class Counsel's independent investigation of the relevant facts and applicable law, consultation with economic experts, and

---

[5] The fact that the Parties have not yet completed full discovery is not determinative. *See In re Processed Egg Prods. Antitrust Litig.*, 284 F.R.D. 249, 267 (E.D. Pa. 2012) (Pratter, J.) (preliminarily approving class action settlement when "no formal discovery was conducted in this case during the time of the . . . Settlement negotiations or agreement"); *see also Fulton-Green,* 2019 WL 316722, at *3 (preliminarily approving class action settlement where "[e]ven though formal discovery has not started . . . the parties exchanged a substantial amount of information regarding the discrete issues in this case"); *In re Wawa, Inc. Data Sec. Litig.*, No. 19-cv-6019, 2021 WL 3276148, at *9, n.4 (E.D. Pa. July 30, 2021) (stating that it "is not necessarily an obstacle for preliminary approval of a class action settlement, especially where, as here, the parties have exchanged important *informal* discovery") (emphasis added).

Class Counsel's broad experience with other complex and novel cases, Class Counsel determined that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. *Id.* ¶ 14.

              *iii.*    *The settlement accounts for the costs, risks, and delay of trial and appeal.*

To determine whether a settlement provides adequate relief to the Class, the Court must evaluate "the costs, risks, and delay of trial and appeal," Fed. R. Civ. P. 23(e)(2)(C)(i), which involves considering the "complexity, expense, and likely duration of the litigation," were this case to proceed to trial, in relation to the Plaintiffs' "likelihood of success" on the merits. *Edwards v. Horizon Blue Cross Blue Shield of New Jersey*, No. 08-cv-6160 (KM), 2018 WL 10133574, at *3 (D.N.J. June 29, 2018). The likelihood of success on the merits necessarily implicates certain *Girsh* factors as well, including the concerns about the maturity of the substantive issue, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through the trial. Therefore, it is appropriate to address Rule 23(e)(2)(C)(i) in conjunction with the *Girsh* factors.

The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. Class Counsel thoroughly assessed those contingencies in considering the terms of the Settlement. Colella Decl. ¶ 14. If litigation continues, Plaintiffs and Class Members would need to overcome a number of issues, including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining certification through trial. *See In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); *Craig v. Rite Aid Corp.*, No. 4:08-cv-2317, 2013 WL84928, at

*9 (M.D. Pa. Jan. 7, 2013) (preliminarily approving settlement where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources."). Although Class Counsel are confident in their ability to overcome these challenges, they create risks for the Class that must be weighed against value of any potential recovery.

The strength of the settlement here is demonstrated, in part, by comparison with monetary recoveries in other university settlements involving tuition refunds following transition from in-person to remote online learning caused by the Covid-19 pandemic and resulting governmental orders. For example, in *Choi v. Brown University*, No. 1:20-cv-00191 (D.R.I. 2022), the court approved a settlement for $1.5 million (for approximately 9,500 students), and, in *Fittipaldi v. Monmouth University,* No. 3:20-cv-05526 (D.N.J. 2022), the court approved a settlement for $1.3 million (for approximately 4,200 students).

There are several risks in this case that could pose obstacles to achieving a favorable outcome for Plaintiffs and the Settlement Class. If not for the Settlement, Plaintiffs would be faced with the task of extensive and contentious motion practice including moving for class certification and/or opposing CMU's motion for summary judgment, which could have resulted in dismissal of this case. While Plaintiffs believe they would have prevailed, Plaintiffs acknowledge there are risks involved in this litigation—a relatively new area of law—including proving the existence of an implied contract, or that CMU has been unjustly enriched. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval). Given that the case law is still developing, there is uncertainty whether Plaintiffs would likely prevail on the merits had the case gone to trial.

Plaintiffs likely would have incurred significant costs to prove their case through fact and expert discovery, and possibly trial. *See, e.g., Fulton-Green v. Accolade, Inc.*, No. CV 18-274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) (recognizing that continued litigation "would be a time consuming and expensive process that would delay relief for class members"); *In re Yahoo! Inc. Customer Data Security Breach Litig.*, No. 16-md-02752, 2020 WL 4212811 (LHK), at *8 (N.D. Cal. July 22, 2020) (approving settlement after finding, among other things "[l]itigation costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony"), *appeal dismissed*, No. 20-cv-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021); *see also In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 212 (D. Me. 2003) (explaining that, absent settlement, "[m]ore experts will have to be hired at great expense"), *judgment entered*, No. MDL 1361, 2003 WL 21685581 (D. Me. July 18, 2003). Given the novel nature of the alleged misconduct, this Action would necessarily involve a battle of experts with respect to damages and other issues. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 233 (3d Cir. 2001) (explaining that the first *Girsh* factor favors approval of a settlement when the case involves "complex and protracted discovery, extensive trial preparation, and difficult legal and factual issues"); *see also In re Yahoo!*, 2020 WL 4212811, at *9, 13 (noting that prior to settlement of class action, plaintiffs produced four different expert reports, and defendants deposed four experts and filed three *Daubert* motions to exclude plaintiffs' experts).

The costs and risks would only further increase as the Parties contest class certification, file motions *in limine*, and proceed through to trial and any related appeals. The proposed Settlement, if approved, exchanges the extensive costs and a lengthy litigation timeline with prompt financial recovery and certainty for the Class, finality as to the Parties, and the preservation of the Court's time and resources that can be redirected elsewhere.

The Settlement appropriately balances the strength of Plaintiffs' case against the risks and potential outcomes of continued litigation. *See Geis v. Walgreen Co.*, No. 07-cv-4238, 2010 WL 11570447, at *12 (D.N.J. Sept. 30, 2010) (finding that several obstacles at trial meant that "the risks of continued litigation and the benefits of immediate settlement favor settlement"). Because of the substantial costs, risks and delay in recovery associated with continued litigation, the first, fourth, fifth, and sixth *Girsh* factors and Rule 23(e)(2)(C)(i) support approval of the Settlement.

> iv.    *The settlement provides for an effective method of distributing relief to the Class.*

The Settlement creates a straight-forward and automatic distribution procedure for Class Members to receive benefits. SA ¶¶ 6, 7. It also provides for effective notice to Class Members using email and, if no email is available, U.S. mail, and Class Counsel is confident that the addresses of nearly all Class Members will be ascertained by the time Notice is issued. SA ¶ 17; Colella Decl. ¶ 15; RG/2 Decl.[6] ¶¶ 8-11. A copy of the Notice will also be publicized on the Settlement Website; and CMU will inform potential Class Members about the Settlement on a website hosted by CMU. SA ¶¶ 19-20. For this reason, Class Members are likely to gain familiarity with the terms of the Settlement and their rights.

> v.    *The proposed attorneys' fee award is reasonable.*

Class Counsel has devoted significant time and financial resources to the litigation despite the uncertainty of prevailing at class certification and on the merits, and of establishing damages. Pursuant to the Settlement Agreement, prior to a Final Approval Hearing, Class Counsel will file a motion seeking an amount not to exceed thirty-three and one-third percent (33.33%) of the Settlement Amount as a fee award, plus reimbursement of all reasonable litigation expenses

---

[6] Declaration of Stephanie M. Valerio of RG/2 Claims Administration LLC filed contemporaneously herewith.

incurred. This maximum amount Class Counsel can request is presumptively reasonable. In *In re Ravisent Techs., Inc. Sec. Litig.,* Judge Surrick noted that "courts within [the Third] Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (citing *In re CareSciences. Inc. Sec. Litig.,* Civ. A. No. 01–5266 (E.D. Pa. Oct. 29, 2004)) (awarding one-third recovery of $3.3 million settlement fund, plus expenses). Importantly, this fee request is plainly documented in the proposed Short Form and Long Form Class Notices.

vi.    <em>Additional agreements required to be identified under Rule 23(e)(3)</em>

Rule 23(e)(2)(C)(iv) requires courts to consider any agreement among the parties outside of the settlement agreement. *See also* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal."). Other than the Settlement Agreement itself, there are no additional agreements involving the parties related to this Settlement. Colella Decl. ¶ 9.

vii.    <em>The remaining Girsh factors also support approval of the Settlement.</em>

Given the present posture of the Action, it is too early to evaluate the second *Girsh* factor concerning the reaction of the proposed Settlement Class. If the Court grants preliminary approval of this Settlement, Class Notice will be issued to Settlement Class Members, advising them of their opportunities to voice their reaction to the Settlement. Notably, Plaintiffs, whose interests are aligned with the Settlement Class, support the Settlement and have been closely involved in its negotiation. Colella Decl. ¶ 11.

The third *Girsh* factor asks whether sufficient discovery has been completed to provide the parties with a "clear view of the strengths and weaknesses of their cases." *In re Ravisent Techs.*, 2005 WL 906361, at *8 (internal citations omitted). This does not require the parties to complete discovery. *See Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7,

18

2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case"); *see also* note 5, *supra*. As described above, Class Counsel had more than sufficient information, along with the help of neutral mediator Hon. Diane M. Welsh (Ret.), to assess the Settlement in light of the strengths of the case and determined that the Settlement is fair, reasonable, and adequate.

The seventh *Girsh* factor, the ability to withstand a greater judgment, is relevant if "a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011). This factor is not dispositive, and courts apply a flexible standard as to how much weight it is given based on the unique circumstances of a given case.[7] When "the Court has not been presented with any reason to believe that [defendant] faces any financial instability . . . this [*Girsh*] factor is largely irrelevant for the purpose of resolving the instant motion." *Id.* at 254.

Finally, the Settlement should also be approved under the eighth and ninth *Girsh* factors because it is reasonable "in light of the best possible recovery" and "in light of all the attendant risks of litigation." *Girsh*, 521 F.2d at 157. The reasonableness inquiry compares "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, [against] the amount of the proposed settlement." *In re CertainTeed Corp. Roofing Shingle Prod. Liab. Litig.*, 269 F.R.D. 468, 489 (E.D. Pa. 2010) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liability Litig.*, 55 F.3d 768, 806 (3d Cir. 1995)). Given that

---

[7] *See Reibstein*, 761 F. Supp. 2d at 254-55 ("[T]his factor does not necessarily militate against approval of the settlement. Some courts, for example, have accorded this factor little weight based on the unique circumstances of a given case. Others have concluded a settlement is fair under this *Girsh* factor because financial stability today does not ensure financial stability tomorrow.")

Covid-19 litigation is an emerging area of law, the risk of continued litigation is significant, making the instant settlement, which provides significant relief to the class, now as opposed to years of litigation without the guarantee of recovery, even more reasonable.

**B.      The Settlement Treats Class Members Equitably Relative to Each Other.**

Finally, as discussed above*,* the Settlement treats all Class Members equitably and provides all Class Members with the same convenient means to recover under the Settlement, using a *pro rata* payout that corresponds to their individual shares of the potential damages suffered by the class. "A district court's 'principal obligation' in approving a plan of allocation 'is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.'" *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 326 (3d Cir. 2011) (quoting *Walsh v. Great Atl. & Pac. Tea Co., Inc.*, 726 F.2d 956, 964 (3d Cir. 1983)). The proposed Settlement's *pro rata* monetary relief will be mathematically derived from each Class Member's proportionate share of the unrefunded tuition and fee payments made to CMU. This approach clearly satisfies the fair and equitable treatment requirement. *See, e.g., Swinton v. SquareTrade, Inc.*, No. 18-cv-00144, 2019 WL 617791, at *8 (S.D. Iowa Feb. 14, 2019) ("There is no requirement that all class members in a settlement be treated equally. And, indeed, class members are not treated equally here. Some are entitled to cash refunds and others only benefit from a coupon and injunctive relief.") (citation omitted).

The *Girsh* factors and Rule 23(e)(2)(C)(i) thus support approval of the Settlement.

**C.      The Proposed Settlement Class Satisfies the Criteria of Rule 23.**

Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997); *Fulton-Green*, 2019 WL 316722, at *2. The proposed Settlement Class satisfies all requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties

20

are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Further, as required by Rule 23(b)(3), "questions of law or fact common to class members predominate over any questions affecting only individual members," and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the Settlement Class should be preliminarily certified, pending a final certification order after the Fairness Hearing.

### i.   Rule 23(a) - Numerosity

The proposed Class is sufficiently numerous. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23. Here, there are approximately 13,337 students in the Class. *See* Colella Decl. ¶ 7. The numerosity requirement is therefore amply satisfied.

### ii.   Rule 23(a) - Commonality

The proposed Class also satisfies the commonality requirement. *See generally Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 357-360 (2011). Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and that the class members "have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50. The commonality inquiry focuses on the defendant's conduct. *Sullivan*, 667 F.3d at 297 ("commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members"). "Commonality exists when proposed class members challenge the same conduct of the defendants." *Schwartz v. Dana Corp.*, 196 F.R.D. 275, 279 (E.D. Pa. 2000). Here, commonality exists because the Class Members' claims share several common questions of law or fact, including: (a) whether Defendant engaged in the conduct alleged herein; (b) whether there is a difference in value between online distance learning and live in-person instruction; (c) whether Defendant breached its contracts with Plaintiffs and the other members of the Class by retaining tuition and fees without providing the services the

tuition and fees were intended to cover; (d) whether certification of the Class proposed herein is appropriate under Fed. R. Civ. P. 23; (e) whether Class members are entitled to declaratory, equitable, or injunctive relief, and/or other relief; and (f) the amount and nature of relief awarded to Plaintiffs and the other Class Members.

As such, the Class raises common questions of law and fact which arise from a "common nucleus of operative facts" with respect to their claims against Defendant. *See In re Centocor, Inc. Secs. Litig. III*, No. 2:98-CV-00260, 1999 WL 54530 at *2 (E.D. Pa Jan. 27, 1999).

### iii. Rule 23(a) - Typicality

Rule 23(a)(3) requires that a named plaintiff's claims be "typical" of those of other class members. Fed. R. Civ. P. 23. Whereas commonality evaluates the sufficiency of the class, typicality judges the sufficiency of the named plaintiffs as representatives of the class. *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 57 (3d Cir. Dec. 15, 1994). "When a defendant has engaged in a common scheme relative to all members of the class, there is a strong assumption that the claims of the representative parties will be typical of the absent class members." *Sherman v. American Eagle Exp., Inc.*, No. 09-575, 2012 WL 748400, at *5 (E.D. Pa. March 8, 2012) (citing *In re Linerboard Antitrust Litig.*, 203 F.R.D. 197, 207 (E.D. Pa. 2001)). "Even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Inj. Litig.,* 821 F.3d 410, 428 (3d Cir. 2016). Plaintiffs' experiences were typical of all other students. Plaintiffs and each member of the Class enrolled as on-campus students of CMU, registered for in-person classes, complied with CMU's policy and procedures, satisfied their tuition and fee obligation for in-person and on-campus facilities and services, were denied the same when CMU closed its campus in Spring 2020, and did not receive a *pro rata* tuition and fee refund. Moreover, the members of the proposed Class

have no individual interests in controlling the litigation because, unlike a tort claim, all of their claims share a common set of facts. As such, Plaintiffs' claims are typical of the claims of members of the proposed class.

### iv.  Rule 23(a) - Adequacy

The final requirement of Rule 23(a) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23. "The adequacy requirement encompasses two distinct inquires designed to protect the interests of absentee class members: whether the named plaintiffs' interests are sufficiently aligned with the absentees', and the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. June 26, 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012).

Here, adequacy is readily met. First, Plaintiffs have no adverse or "antagonistic" interests towards absent Class Members. Plaintiffs seek to hold Defendant accountable for, among other things, failing to refund the portion of tuition and fees associated with the part of the Spring 2020 semester during which they failed to provide in-person education and on-campus access and services. Further, Plaintiffs have demonstrated allegiance and commitment to the litigation. As such, Plaintiffs' interests are well aligned with the interests of the absent Class Members. Second, Class Counsel is qualified, experienced, and competent in complex litigation, and have an established, successful track record in class litigation—including several similar class action suits related to Covid-19. *See* Colella Decl. ¶¶ 18-20. Accordingly, the adequacy requirement is satisfied.

### D.    Rule 23(b) Requirements Are Satisfied Here.

Under Rule 23(b)(3), a class may be certified when the court finds that (1) common questions of law or fact predominate over individual issues and (2) a class action would be superior

to other methods of resolving the controversy. Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 594, 623. Superiority requires the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative methods of adjudication." *In re Prudential Ins. Co. of Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998). Plaintiffs readily meet both requirements.

"[The] predominance test asks whether common issues of law or fact in the case predominate over non-common, individualized issues of law or fact." *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 370 (3d Cir. 2015) (citations and quotation marks omitted). "Predominance begins, of course, with the elements of the underlying cause of action." *Id.* Nevertheless, "the presence of individual questions does not *per se* rule out a finding of predominance" and if common issues "overwhelm individual issues, predominance should be satisfied." *Id.* at 371. Notably, the Third Circuit has remarked that it is "more inclined to find the predominance test met in the settlement context." *In re NFL*, 821 F.3d at 434 (quoting *Sullivan*, 667 F.3d at 304 n.29). Here, the common issues—whether Defendant breached its contracts with Plaintiffs and the members of the Class by failing to provide them with in-person, on-campus instruction, educational services, and use of facilities after March of 2020, yet retaining the tuition and fees paid for the same—clearly predominate over any individual issues that may exist. Each Class Member suffered similar harm for the same amount of time due to the same actions or inactions of Defendant. Further, the alleged contractual arrangements between each of Defendant's students and Defendant—receiving in-person, on-campus instruction, educational services, and use of facilities—are substantively identical. Similarly, the nature of Defendant's alleged breach

is the same for each member of the Class, regardless of their academic major, scholarships, or any other ancillary criteria.

Second, the Federal Rules of Civil Procedure direct courts to weigh the following factors to determine whether a class action is superior to other alternative methods of adjudication: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D). Here, each of these factors weighs in favor of finding that superiority is satisfied.

Plaintiffs and the other Class Members, due to Defendant's alleged misconduct, experienced almost identical circumstances. As these cases involve a relatively small amount of damages compared to the enormous investment of time and money that it will take to litigate them, individual plaintiffs would have little interest in and gain little benefit from initiating separate actions. Individual lawsuits would needlessly waste judicial resources, as each lawsuit would likely involve the same evidence concerning Defendant's alleged wrongdoing. Indeed, this proposed settlement effectively resolves approximately 13,337 students' lawsuits. Accordingly, the Court should preliminarily approve the Class such that Notice may be effectuated.

### E.    The Proposed Settlement Notice to the Class Should be Approved

"Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise...." Manual for Complex Litigation, Fourth, § 21.312. "First, Rule 23(c)(2)(B) requires 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *In re Remicade Antitrust Litig.*, No. 17-CV-04326, 2022

WL 3042766, at *10 (E.D. Pa. Aug. 2, 2022) (citing *In re NFL*, 821 F.3d at 435). "Additionally, principles of due process 'require[ ] that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (finding notice sufficient where notice was sent via email, then by postcard if an email bounced back).

Here, the Parties' proposed notice plan includes email (where available), direct mail (where email is not available), creating a Settlement Website, and posting a link to the Settlement Website on a website hosted by CMU. SA ¶¶ 17, 19-20. This comprehensive notice plan is intended to fully inform Potential Settlement Class Members of the proposed Settlement, and the information they require to make informed decisions about their rights. The proposed Short Form and Long Form Class Notices contain "simple and straightforward language and not legalese" and "the notice program is robust and is likely to ensure that all members receive notice of the claims and their rights with respect to the settlement." *Caddick v. Tasty Baking Co.,* No. 2:19-CV-02106-JDW, 2021 WL 1374607, *2 (E.D. Pa. Apr. 12, 2021). Accordingly, this Court should approve the form of notice and the method of publication that Plaintiffs propose as they satisfy the due process requirements of Fed. R. Civ. P. 23.

**F.      Gary F. Lynch and Nicholas A. Colella of Lynch Carpenter, LLP and Philip L. Fraietta of Bursor & Fisher, P.A. Should be Appointed as Class Counsel**

Fed. R. Civ. P. 23(g) requires the Court to examine the capabilities and resources of counsel to determine whether they will provide adequate representation to the class. Class Counsel—Gary F. Lynch and Nicholas A. Colella of Lynch Carpenter, LLP and Philip L. Fraietta of Bursor & Fisher, P.A.—easily meet the requirements of Rule 23(g). *See* Colella Decl. ¶¶ 18-20; *see also* Resumes of Lynch Carpenter, LLP, and Bursor & Fisher, P.A. Importantly, Plaintiffs are represented by counsel experienced in class action litigation including directly analogous cases.

Indeed, Class Counsel and their firms have worked on dozens of university tuition refund cases and have been appointed class counsel in substantially similar matters. *See*, Colella Decl. ¶¶ 18-20. Moreover, Class Counsel's work in this case on behalf of the Plaintiffs and the proposed class and collective has been substantial. As such, this Court should not hesitate in appointing Gary F. Lynch and Nicholas A. Colella of Lynch Carpenter, LLP and Philip L. Fraietta of Bursor & Fisher, P.A. as Class Counsel.

## CONCLUSION

The proposed Settlement is fair, reasonable, and adequate. Thus, for all the reasons set forth above, preliminary approval should be, respectfully, granted, and the Preliminary Approval Order entered to permit the Parties to effectuate notice to the potential Settlement Class Members.

Dated: February 14, 2025                    Respectfully submitted,

*/s/ Nicholas A. Colella*
Gary F. Lynch
Nicholas A. Colella
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322-9243
Gary@lcllp.com
NickC@lcllp.com

Philip L. Fraietta (admitted *pro hac vice*)
**BURSOR & FISHER, P.A.**
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
pfraietta@bursor.com

*Attorneys for Plaintiffs*