**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ABIGALE PFINGSTEN, and ANOKHY DESAI, *on behalf of themselves and all others similarly situated*, | Case No. 2:20-cv-00716-RJC |
| Plaintiffs, | |
| v. | |
| CARNEGIE MELLON UNIVERSITY, | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.................................................2

TERMS OF THE PROPOSED SETTLEMENT AGREEMENT ..................................3

     I.       THE PROPOSED SETTLEMENT CLASS .....................................3

     II.     MONETARY TERMS.................................................................3

     III.    DISMISSAL AND RELEASE OF CLAIMS .................................4

     IV.    RESULTS OF SETTLEMENT ADMINISTRATION AND NOTICE .................5

ARGUMENT .....................................................................................................6

     I.       STANDARD FOR FINAL APPROVAL OF CLASS ACTION
           SETTLEMENTS...........................................................................6

          A.     The Law Favors and Encourages Settlements .............................6

          B.     The Settlement Must be Procedurally and Substantially Fair,
              Adequate, and Reasonable ...........................................................7

     II.     THE PROPOSED SETTLEMENT IS PROCEDURALLY AND
           SUBSTANTIALLY FAIR, ADEQUATE, AND REASONABLE......................9

          A.     The Settlement Satisfies the Requirements of Rule 23(e)(2).......................9

              1.     Plaintiffs and Class Counsel Have Adequately Represented
                    the Settlement Class........................................................9

               2.     The Proposed Settlement Was Negotiated at Arm's-Length.........10

               3.     The Proposed Settlement Is Adequate in Light of the
                    Litigation Risks, Costs and Delays of Trial and Appeal...............11

                   a.     The Risks of Establishing Liability....................................11

                   b.     The Risks of Establishing Damages at Trial.....................12

                   c.     The Settlement Eliminates the Additional Costs
                     and Delay of Continued Litigation .....................................12

i

d.  The Proposed Method for Distributing Relief
Is Effective ........................................................13

e.  Class Counsel's Request for Attorneys' Fees
Is Reasonable. ...................................................14

f.  The Settlement Ensures Settlement Class Members
Are Treated Equitably. .......................................14

III.  The *Girsh* Factors Favor Settlement. ...........................................15

A.  The Complexity, Expense, and Likely Duration of the Litigation ...........15

B.  The Reaction of the Class to the Settlement. ...............................16

C.  The Stage of the Proceedings and the Amount of Discovery
Completed. ..................................................................16

D.  The Risks of Establishing Liability and Damages and the Risks
of Maintaining the Class Action through Trial. .........................17

E.  The Ability of Defendant to Withstand a Greater Judgment. ...................18

F.  The Range of Reasonable in Light of Best Possible Recovery
and All Attendant Risks of Litigation. ........................................18

IV.  THE *PRUDENTIAL* FACTORS ARE SATISFIED .............................................19

A.  Maturity of the Substantive Issues. ...........................................19

B.  The Existence and Probable Outcome of Claims by Other Classes
and Subclasses. ...........................................................19

C.  The Comparison between the Results Achieved by the Settlement
for Individual Class or Subclass Members and the Results Achieved
or Likely to be Achieved for Other Claimants. ...........................19

D.  Whether Class or Subclass Members Are Accorded the Right
to Opt-Out of the Settlement. ...................................................20

E.  Whether Any Provisions for Attorneys' Fees Are Reasonable .................20

F.  Whether the Procedure for Processing Individual Claims
under the Settlement Is Fair and Reasonable. .............................21

V.      THE MANNER OF DISTRIBUTION OF THE NET SETTLEMENT
        FUND IS FAIR AND ADEQUATE....................................................................21

VI.     THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT
        CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT. ............22

VII.    NOTICE TO THE SETTLEMENT CLASS SATISFIES
        THE REQUIREMENTS OF RULE 23 AND DUE PROCESS. ..........................22

CONCLUSION...........................................................................................................................24

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) .......................................................................................... 7

*Beck v. Manhattan Coll.,*
  2023 WL 4266015 (S.D.N.Y. June 29, 2023) ...................................... 17

*Beck v. Maximus, Inc.,*
  457 F.3d 291 (3d Cir. 2006) ........................................................................... 9

*Bell Atl. Corp. v. Bolger,*
  2 F.3d 1304 (3d Cir. 1993) ............................................................................ 16

*Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining
and Manufacturing Company),*
  513 F. Supp. 2d 322 (E.D. Pa. 2007) ....................................................... 21

*Dewey v. Volkswagen Aktiengesellschaft,*
  681 F.3d 170 (3d Cir. 2012) ........................................................................... 9

*Eichenholtz v. Brennan,*
  52 F.3d 478 (3d Cir. 1995) .............................................................................. 7

*Girsh v. Jepson,*
  521 F.2d 153 (3d Cir. 1975) ............................................................... 7, 8, 12

*In re Baby Prod. Antitrust Litig.,*
  708 F.3d 163 (3d Cir. 2013) ......................................................................... 23

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ......................................................................... 16

*In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.,*
  269 F.R.D. 468 (E.D. Pa. 2010) ........................................................... 16, 24

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.,*
  55 F.3d 768 (3d Cir. 1995) ................................................................ 6, 16, 18

*In re Linerboard Antitrust Litig.,*
  321 F. Supp. 2d 619 (E.D. Pa. 2004) ....................................................... 18

*In re N.J. Tax Sales Certificate Antitrust Litig.,*
  750 F. App'x 73 (3d Cir. 2018) ..................................................................... 8

*In re Nat. Football League Players' Concussion Inj. Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) ................................................................. 17

*In re Nat'l Football League Players Concussion Inj. Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................. 10, 17, 18, 23

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ................................................................... 8

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
    148 F.3d 283 (3d Cir. 1998) .......................................... 8, 9, 11, 17

*In re Ravisent Techs., Inc. Sec. Litig.*,
    2005 WL 906361 (E.D. Pa. Apr. 18, 2005) ............................................. 14

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
    2024 WL 815503 (E.D. Pa. Feb. 27, 2024) ..................................... 19, 20, 21

*In re Suffolk Univ. Covid Refund Litig.*,
    2022 WL 6819485 (D. Mass. Oct. 11, 2022) ........................................... 17

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ............................................................. Passim

*Lazy Oil Co. v. Witco Corp.*,
    166 F.3d 581 (3d Cir. 1999) ................................................................. 7

*Ripley v. Sunoco, Inc.*,
    287 F.R.D. 300 (E.D. Pa. 2012) ............................................................. 9

*Serrano v. Sterling Testing Sys., Inc.*,
    711 F. Supp 2.d 402 (E.D. Pa. 2010) ..................................................... 16

*Swinton v. SquareTrade, Inc.*,
    2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ........................................... 15

*Tumpa v. IOC-PA, LLC*,
    2021 WL 62144 (W.D. Pa. Jan. 7, 2021) ............................................... 16

*Wright v. S. New Hampshire Univ.*,
    2021 WL 1617145 (D.N.H. Apr. 26, 2021) ............................................. 24

*Zenith Labs., Inc. v. Carter–Wallace, Inc.*,
    530 F.2d 508 (3d Cir.1976) ................................................................. 17

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. 9, 22, 24

Fed. R. Civ. P. 23(a) ............................................................................................................ 7, 22

Fed. R. Civ. P. 23(b) ................................................................................................................. 7

Fed. R. Civ. P. 23(b)(3) ........................................................................................................... 22

Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 22

Fed. R. Civ. P. 23(e) ........................................................................................................ 1, 7, 22

Fed. R. Civ. P. 23(e)(1)(B) ...................................................................................................... 22

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 7, 9, 15

Fed. R. Civ. P. 23(e)(2)(A) .................................................................................................. 9, 10

Fed. R. Civ. P. 23(e)(2)(B) ...................................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C)(i) ............................................................................................. 11, 13

Fed. R. Civ. P. 23(e)(2)(C)(ii) .................................................................................................. 13

Fed. R. Civ. P. 23(e)(2)(C)(iii) ................................................................................................. 14

Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................................... 14

Fed. R. Civ. P. 23(e)(3) .............................................................................................................. 7

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Named Plaintiffs Abigale Pfingsten and Anokhy Desai, on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the $4,800,000 settlement reached in this Action, and for approval of the manner of distribution of the Net Settlement Fund (the "Distribution"). The terms of the settlement are set forth in the Stipulation of Settlement, dated February 7, 2025 (the "Settlement Agreement" or "Agreement"). Dkt. No. 78-2.[1]

## INTRODUCTION

On February 19, 2025, this Court preliminarily approved the class action settlement between Plaintiffs Abigale Pfingsten and Anokhy Desai and Defendant Carnegie Mellon University ("CMU" or "Defendant") and directed that notice be sent to the Settlement Class. Dkt. No. 79. The settlement administrator has implemented the Court-approved notice plan and direct notice has reached approximately **99.7%** of the provisionally certified Settlement Class. The reaction from the class has been overwhelmingly positive. Specifically, of approximately 13,337 class members, **only two** have requested to be excluded from the settlement, and **zero** class members filed objections to the settlement.[2]

The settlement's strength speaks for itself as it exceeds many other similar COVID-19 tuition refund settlements. *See, e.g., Rosado v. Barry Univ., Inc*., No. 1:20-cv-21813-JEM (S.D. Fla.) ($2.4 million common fund); *Wright v. S. New Hampshire Univ*., No. 1:20-cv-00609 (D.N.H.) ($1.25 million common fund); *Fittipaldi v. Monmouth University*, Case No. 3:20-cv-05526-RLS (D.N.J.) ($1.3 million common fund); *Martin v. Lindenwood Univ*., No. 4:20-cv-

---

[1] The capitalized terms in this memorandum shall be construed according to their meaning as defined in the Settlement Agreement, except as may otherwise be indicated.

[2] The deadline for Settlement Class Members to object or request exclusion was May 19, 2025. Dkt. No. 79, ¶ 18.

01128 (E.D. Mo.) ($1.65 million common fund); *D'Amario v. The Univ. of Tampa*, No. 7:20-cv-03744-CS (S.D.N.Y.) ($3.4 million common fund); *Smith et al v. University of Pennsylvania*, No. 2:20-cv-02086-TJS (E.D. Pa.) ($4.5 million common fund). As set forth in the Settlement Agreement, all Settlement Class Members who do not opt-out of the Settlement will automatically receive a payment under the Settlement.

The settlement is an excellent result for the class and the Court should grant final approval.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs and Settlement Class Members are current and/or former CMU students. Plaintiffs allege that they paid tuition and fees to CMU for the Spring 2020 semester in exchange for, in part, access to campus facilities, services, and in-person education. *See generally, Consolidated Amended Class Action Complaint* ("Complaint"), Dkt. No. 9. Plaintiffs allege that Defendant failed to provide that on-campus in-person access and education, and has "not refunded any tuition for the Spring 2020 semester. And while CMU has offered refunds of some mandatory fees, it has not committed to refunding all mandatory fees." *Id.* ¶ 12. As such, Plaintiffs allege that Defendant breached its contract with Plaintiffs, or was otherwise unjustly enriched, by failing to provide the services and failing to provide refunds for tuition and fees. *See, e.g., id.* ¶¶ 61–67, 73.

Defendant denies that it breached any express or implied contract with its students or that it was unjustly enriched as a result of the change in learning modalities during the Spring 2020 semester. Specifically, Defendant maintains that it acted properly and reasonably in accord with all applicable laws, rules, regulations, and ordinances to protect the health, safety and well-being of its students, faculty and staff, and that it did not violate any contractual obligations to its Spring 2020 students, particularly in light of the unprecedented circumstances created by the COVID-19 pandemic. Although CMU disagrees with Plaintiffs' claims, it determined that resolving this

lawsuit is in the best interest of its students and employees in order to remain focused on its mission to steer students along a fulfilling educational journey to earn their college degrees.

### TERMS OF THE PROPOSED SETTLEMENT AGREEMENT

## I.    THE PROPOSED SETTLEMENT CLASS

The proposed Settlement Class that received preliminary certification for settlement purposes is defined as:

> All students who were assessed tuition and/or fees to attend at least one in-person course(s) during the Spring 2020 semester at CMU but had their course(s) moved to remote learning; excluding (i) any person who properly executes and files a timely opt-out request to be excluded from the Settlement Class; and (ii) the legal representatives, successors or assigns of any such excluded person.

Dkt. No. 79, ¶ 5. As of the May 19, 2025 Objection/Exclusion Deadline, two Settlement Class Members have excluded themselves from the Settlement, and zero Class Members have filed objections to the Settlement Agreement. *See* Declaration of Stephanie M. Valerio, RG/2 Claims Administration LLC ("Valerio Decl."), ¶¶ 12-13; Colella Decl. ¶ 17.

## II.    MONETARY TERMS

The proposed Settlement Amount is a non-reversionary cash payment of four million eight hundred thousand U.S. Dollars ($4,800,000). *See* SA ¶ 38. In accordance with the Settlement Agreement, the Settlement Administrator shall make deductions from the Settlement Amount for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Settlement Administrator, and any court-approved Case Contribution Awards to the Plaintiffs, in recognition of the risks and benefits of their participation and substantial services they performed. *See id.* ¶ 39. The Net Settlement Fund will be allocated *pro rata* to each Settlement Class Member based on the ratio of (a) the total amount of Spring 2020 Tuition and Fees assessed to Settlement Class Members enrolled at CMU during the Spring 2020 semester to (b) the total amount of Spring 2020 Tuition and Fees assessed to each individual Settlement Class Member enrolled at CMU during the Spring

2020 semester, less financial aid provided by CMU, and less any refunds of Tuition and/or Fees already distributed related to Spring 2020 semester. To the extent the distribution formula results in an individual payment amount of less than $50, the payment amount will be adjusted upwards so that no Settlement Class Member shall receive less than $50. *Id.* ¶ 4.

Up until the Effective Date, the Escrow Account shall be under the control of the Escrow Agent, on behalf of the Settlement Class Representatives, the Settlement Class, and CMU. *See id.* ¶ 41. Should the Court grant final approval of the Settlement, the Settlement Administrator will send the Settlement Benefits to Settlement Class Members within sixty (60) days of the Effective Date. *See id.* ¶ 9. The Settlement Administrator will pay all legally mandated Taxes prior to distributing the settlement payments to Settlement Class Members. *See id.* ¶ 43.

Settlement Class Members shall have one hundred and eighty (180) days from the date of distribution of the checks to cash their check for the Settlement Benefit. Funds for Uncashed Settlement Checks, if less than $250,000, shall, subject to Court approval, be designated to a scholarship fund for CMU students to be administered by CMU. If the funds for Uncashed Settlement Checks exceed $250,000, such funds will be redistributed as a second distribution to Settlement Class Members who previously did cash their settlement check. If, after the second distribution, there are funds remaining from undeposited or uncashed checks, the funds shall, subject to Court approval, be designated to a scholarship fund for CMU students to be administered by CMU. *See id.* ¶ 9.

## III.    DISMISSAL AND RELEASE OF CLAIMS

Upon the Settlement becoming Final, Settlement Class Members shall be deemed to have forever released any and all suits, claims, controversies, rights, agreements, promises, debts, liabilities, accounts, reckonings, demands, damages, judgments, obligations, covenants, contracts,

costs (including, without limitation, attorneys' fees and costs), losses, expenses, actions or causes of action of every nature, character, and description, in law or in equity, that any Releasing Party ever had, or has, or may have in the future, upon or by reason of any matter, cause, or thing whatever from the beginning of the world to the Effective Date, whether known or unknown, arising out of, concerning, or relating in any way to CMU's transition to or provision of remote education with respect to the COVID-19 pandemic, or the implementation or administration of such remote education, the closing of portions of CMU's campus and the suspension of certain services due to the COVID-19 pandemic or the provision of any services whatsoever that were altered in connection with the COVID-19 pandemic during the Spring 2020 semester. This release includes but is not limited to all claims that were brought or could have been brought in the Action. *See* SA ¶ 1(r). These releases were described in the Court-approved Long Form Class Notice.

## IV.    RESULTS OF SETTLEMENT ADMINISTRATION AND NOTICE

Following the Court's Preliminary Approval Order, the Settlement Administrator completed the Notice plan set forth in the Settlement. *See* Valerio Decl., ¶¶ 6-15. The Notice plan was designed to reach as many Settlement Class Members as practicable. The Notice included the required description of the material Settlement terms, the deadline for Settlement Class Members to opt out of the Settlement Class; the deadline for Settlement Class Members to object to the Settlement; the Final Approval Hearing date; and the Settlement Website at which Settlement Class Members could access the Short Form Notice, Long Form Notice, Settlement Agreement, and other related documents and information. *Id.*, Ex.'s B-D.

Pursuant to the Court's Preliminary Approval Order, CMU provided RG/2 Claims with the Class List containing information sufficient to provide Settlement Class Members with direct notice. Valerio Decl., ¶ 7. The Settlement Class List contained information for 13,337 Settlement Class Members. *Id.* Thereafter, on April 4, 2025, RG/2 Claims sent 12,509 Email Notices to all

identified Settlement Class Members for whom email addresses were available. *Id.*, ¶ 8. RG/2 Claims also sent 824 Postcard Notices to Settlement Class Members with an associated physical address for whom a valid email address was not available, or for whom the Email Notice was returned as undeliverable. *Id*. As of June 16, 2025, 13,297 of the 13,337 unique, identified Settlement Class Members received direct notice of the Settlement. *Id.*, ¶ 15.

On April 4, 2025, RG/2 Claims established an informational Settlement Website, www.cmucovidsettlement.com, allowing Settlement Class Members to obtain detailed information about the Action, the Settlement, and to review important documents, including the Long Form Notice, Settlement Agreement, and other relevant documents. *Id.*, ¶ 9. Also on April 4, 2025, RG/2 Claims established a toll-free telephone number to allow Settlement Class Members to call for additional information. *Id.*, ¶ 10.

As a result of the Notice plan, approximately 99.7% of the identifiable Settlement Class members received direct notice of the Settlement. *Id.*, ¶ 15. The deadline to submit an objection or opt out of Settlement was May 19, 2025. To date, only two Settlement Class Members have submitted a request for exclusion. *Id.*, ¶ 12. Zero Settlement Class members have submitted objections to the settlement. *See id.*, ¶ 13; Colella Decl. ¶ 17.

## **ARGUMENT**

## I.    **STANDARD FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS.**

### **A.  The Law Favors and Encourages Settlements.**

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin Sodium Antitrust Litig*., 391 F.3d 516, 535 (3d Cir. 2004). Additionally, "[t]he law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). But, the

final approval of settlement is left to the discretion of the court. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). Further, courts in this Circuit have great discretion in such matters: "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975); *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 587 (3d Cir. 1999). In order to grant final approval of a class action settlement, the Court must first determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

**B. The Settlement Must be Procedurally and Substantially Fair, Adequate, and Reasonable.**

Federal Rule of Civil Procedure 23(e) provides the applicable standard for judicial approval of a class action settlement. Rule 23(e)(2), as amended, provides that courts should consider certain factors when determining whether a class action settlement is "fair, reasonable and adequate" such that final approval is warranted:

(A)    whether the class representatives and class counsel have adequately represented the class;

(B)    whether the proposal was negotiated at arm's-length;

(C)    whether the relief provided for the class is adequate, taking into account:

    (i)    the costs, risks and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of the proposed award of attorneys' fees, including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    whether the proposal treats class members equitably relative to each other. *See* Fed. R. Civ. P. 23(e)(2).

In addition to the foregoing factors, the Third Circuit considers additional factors, the first set of which comes from *Girsh*, 521 F.2d at 156:

(1) the complexity, expense and likely duration of the litigation;

(2) the reaction of the class to the settlement;

(3) the stage of the proceedings and the amount of discovery completed;

(4) the risks of establishing liability;

(5) the risks of establishing damages;

(6) the risks of maintaining the class action through the trial;

(7) the ability of the defendant to withstand a greater judgment;

(8) the range of reasonableness of the settlement fund in light of the best possible recovery; and

(9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* Importantly, no single *Girsh* factor is dispositive. The Third Circuit has explained: "a court may approve a settlement even if it does not find that each of [the *Girsh*] factors weigh in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018).

Although the Court must scrutinize the Settlement Agreement for fairness, "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged." *In re Warfarin*, 391 F.3d at 535. As set forth below, the settlement is fair, reasonable, and adequate and should be finally approved.

In addition to the *Girsh* factors, the Third Circuit, in *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 324 (3d Cir. 1998), elaborated on additional factors that reviewing courts should consider when deciding whether to approve a proposed class action settlement. These factors were then clarified in *In re Pet Food Prods. Liab. Litig.* 629 F.3d 333, 350 (3d Cir. 2010). These *Prudential* factors overlap with the *Girsh* factors and are non-exclusive. But, importantly, only the factors relevant to the litigation need to be addressed. *In re Prudential*, 148 F.3d at 323–24. The *Prudential* factors are:

(1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;

(2) the existence and probable outcome of claims by other classes and subclasses;

(3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;

(4)    whether class or subclass members are accorded the right to opt-out of the settlement;

(5)    whether any provisions for attorneys' fees are reasonable; and

(6)    whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Id.* As discussed in more detail below, the proposed Settlement satisfies the requirements of Rule 23, the *Girsh* factors, and the relevant *Prudential* factors, and should be finally approved.

## II.    THE PROPOSED SETTLEMENT IS PROCEDURALLY AND SUBSTANTIALLY FAIR, ADEQUATE, AND REASONABLE.

### A.  The Settlement Satisfies the Requirements of Rule 23(e)(2).

#### 1.    Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class.

When analyzing whether a proposed class action settlement is fair, reasonable, and adequate, the Court must consider whether "the class representative[] and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "The adequacy requirement encompasses two distinct inquiries designed to protect the interests of absentee class members: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." *Ripley v. Sunoco, Inc.*, 287 F.R.D. 300, 309 (E.D. Pa. 2012); *see also Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 182 (3d Cir. 2012). This test "assures that the named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified to prosecute the claims on behalf of the entire class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (citation and quotation marks omitted). Here, both prongs of the adequacy test are met. First, Plaintiffs' interests are aligned with those of the Settlement Class as they were all students who attended CMU during the Spring 2020 semester and enrolled in in-person classes. Second, Class Counsel are highly experienced in class action litigation, especially in the tuition refund context. Class Counsel's qualifications are set forth in the Declaration of Nicholas A. Colella (Dkt. No. 78-

1) and the Firm Resumes of Lynch Carpenter, LLP and Bursor & Fisher, P.A. (Dkt. Nos. 78-3, and 78-4) submitted in support of preliminary approval.

Additionally, Plaintiffs and Class Counsel have adequately represented the Settlement Class by zealously prosecuting this Action, including by, among other things, extensive investigation and other litigation efforts throughout the prosecution of the Action, including, *inter alia*: (1) researching and drafting the initial and amended complaint in the Action; (2) researching the applicable law with respects to the claims in the Action and the potential defenses thereto; (3) briefing motions to dismiss; (4) actively participating in similar College and University Class Actions filed across the country; and (5) engaging in extensive settlement discussions with Defendant's counsel and the exchange of information during formal discovery. *See generally* Colella Decl., ¶¶ 10, 18. Through each step of the Action, Plaintiffs and Class Counsel have strenuously advocated for the best interests of the Settlement Class. Plaintiffs and Class Counsel therefore satisfy Rule 23(e)(2)(A) for purposes of final approval.

## 2.    The Proposed Settlement Was Negotiated at Arm's-Length.

The proposed Settlement satisfies Rule 23(e)(2)(B) because the Settlement is the product of arm's-length negotiations between the Parties' counsel overseen by an experienced mediator, Hon. Diane Welsh (Ret.). Colella Decl., ¶¶ 18, 23. Further, it is well settled that in the Third Circuit class action settlements enjoy a presumption of fairness under review when: "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Nat'l Football League Players Concussion Inj. Litig*., 821 F.3d 410, 436 (3d Cir. 2016), *as amended* (May 2, 2016). Given the above and the Declaration attached hereto, Rule 23(e)(2)(B) is satisfied.

3.    **The Proposed Settlement Is Adequate in Light of the Litigation Risks, Costs and Delays of Trial and Appeal.**

Rule 23(e)(2)(C)(i) and both sets of factors described above overlap as they address the risks posed by continuing litigation. In fact, the first *Girsh* factor is directly analogous to Rule 23(e)(2)(C)(i). As further explained below, all these factors (to the extent relevant) weigh in favor of final approval of the Settlement.

*a.*    **The Risks of Establishing Liability.**

In considering the risks of establishing liability, courts often consider the complexity of the issues and magnitude of the proposed settlement class. *In re Prudential*, 148 F.3d at 318. Here, although Plaintiffs believe their case is strong, it is not without risk. *See id.* at 319 ("The fourth and fifth Girsh factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."). Here, Plaintiffs and the putative Class face risks at every juncture, including: (1) Defendant's anticipated 23(f) petition should a class be certified; (2) Defendant's anticipated motion for summary judgment; (3) the Parties' competing motions to strike each other's experts; (4) trial; and (5) appeal. Each of these steps would pose significant risks to the Settlement Class Members that could result in them recovering nothing at all. Although Class Counsel are confident in their ability to overcome these challenges, they create risks for the Class that must be weighed against the value of any potential recovery. The proposed Settlement eliminates these risks while providing relief that is fair, reasonable, and adequate.

In comparison to the risks as discussed above, the Settlement as it stands currently is an excellent result for the Settlement Class as it provides above-average benefits. *See infra* section IV(C).

### *b.*     The Risks of Establishing Damages at Trial.

The risks of establishing liability apply with equal force to the risks of establishing damages. If this litigation were to continue, Plaintiffs would rely heavily on expert testimony to establish damages, likely leading to a battle of the experts at trial and a *Daubert* challenge. If the Court were to determine that one or more of Plaintiffs' experts should be excluded from testifying at trial, Plaintiffs' case would become much more difficult to prove. Moreover, while Defendant did shift to distance learning and requested that most students leave campus, these steps were due to COVID-19 and the accompanying government orders, providing CMU with impossibility, impracticability, and/or *force majeure* defenses. Plaintiffs have never disputed the necessity of these actions; the issue is whether Plaintiffs and the Settlement Class were entitled to a refund of tuition and fees paid to CMU, and a potential impossibility defense raises a risk in establishing damages and the form of such damages (*i.e.*, compensatory or restitution). Thus, in light of the significant risks Plaintiffs faced at the time of the settlement with regard to establishing damages, including the possibility that Plaintiffs would not be able to establish damages for each student, this factor weighs heavily in favor of final approval.

### *c.*     The Settlement Eliminates the Additional Costs and Delay of Continued Litigation.

The anticipated complexity, cost, and duration of the Action would be considerable, and these factors are critical in a Court's evaluation of proposed settlements. *See Girsh*, 521 F.2d at 157 (holding that the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement). Indeed, if not for the Settlement, litigation would continue, and there is a high likelihood it would be expensive, protracted, and contentious. Colella Decl., ¶¶ 8, 10-12. Costs would be significant, and Plaintiffs and the Settlement Class would be exposed to many risks and uncertainties. The preparation for what would likely be a multi-week

trial (and possible appeals thereafter) would likely cause the Action to continue for several years before the Settlement Class could potentially receive any recovery. Such a lengthy and highly uncertain process would not serve the best interests of the Settlement Class when compared to the immediate and certain monetary benefits of the Settlement. *Id*. Accordingly, this Rule 23(e)(2)(C)(i) factor, as well as the analogous *Girsh* factors, all weigh in favor of final approval.

> ### *d.*      The Proposed Method for Distributing Relief Is Effective.

With respect to Rule 23(e)(2)(C)(ii), Plaintiffs and Class Counsel have taken appropriate steps to ensure the Settlement Class is notified about the Settlement and the Settlement Benefits are properly distributed.

Each Settlement Class Member's Settlement Benefit will be distributed automatically, with no action required by that Settlement Class Member. The Net Settlement Fund will be allocated pro rata to each Settlement Class Member based on the ratio of (a) the total amount of Spring 2020 Tuition and Fees assessed to Settlement Class Members enrolled at CMU during the Spring 2020 semester to (b) the total amount of Spring 2020 Tuition and Fees assessed to each individual Settlement Class Member enrolled at CMU during the Spring 2020 semester, less financial aid provided by CMU, and less any refunds of Tuition and/or Fees already distributed related to Spring 2020 semester. To the extent the distribution formula results in an individual payment amount of less than $50, the payment amount will be adjusted upwards so that no Settlement Class Member shall receive less than $50. By default, the Settlement Administrator will send the Settlement Benefit to each Settlement Class Member by check mailed to the Settlement Class Member's last known mailing address on file with CMU.

The Settlement Administrator has also provided a form on the Settlement Website that the Settlement Class Members may visit to (a) provide an updated address for sending a check; or (b) elect to receive the Settlement Benefit by Venmo or PayPal instead of a paper check.

Funds for Uncashed Settlement Checks, if less than $250,000, shall, subject to Court approval, be designated to a scholarship fund for CMU students to be administered by CMU. If the funds for Uncashed Settlement Checks exceed $250,000, such funds will be redistributed as a second distribution to Settlement Class Members who previously did cash their settlement check. If, after the second distribution, there are funds remaining from undeposited or uncashed checks, the funds shall, subject to Court approval, be designated to a scholarship fund for CMU students to be administered by CMU.

### *e.* **Class Counsel's Request for Attorneys' Fees Is Reasonable.**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Consistent with the fee request plainly documented in the Notice, and as discussed in Class Counsel's fee memorandum, Class Counsel seek an award of attorneys' fees in the amount of thirty-three and one-third percent of the Settlement Fund and expenses to be paid at the time of the award of court-approved attorneys' fees. Such amounts are presumptively reasonable and in line with requests frequently approved in this Circuit. For example, in *In re Ravisent Techs., Inc. Sec. Litig.*, Judge Surrick noted that "courts within [the Third] Circuit have typically awarded attorneys' fees of 30% to 35% of the recovery, plus expenses." No. CIV.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005) (citing *In re CareSciences. Inc. Sec. Litig.*, Civ. A. No. 01–5266 (E.D. Pa. Oct. 29, 2004)) (awarding one-third recovery of $3.3 million settlement fund, plus expenses).

### *f.* **The Settlement Ensures Settlement Class Members Are Treated Equitably.**

Rule 23(e)(2)(D), the final factor, considers whether class members are treated equitably. As reflected in the Settlement Agreement, the proposed Settlement treats Settlement Class Members equitably relative to each other. The Net Settlement Fund will be allocated *pro rata* to

each Settlement Class Member based on the ratio of (a) the total amount of Spring 2020 Tuition and Fees assessed to Settlement Class Members enrolled at CMU during the Spring 2020 semester to (b) the total amount of Spring 2020 Tuition and Fees assessed to each individual Settlement Class Member enrolled at CMU during the Spring 2020 semester, less financial aid provided by CMU, and less any refunds of Tuition and/or Fees already distributed related to Spring 2020 semester. To the extent the distribution formula results in an individual payment amount of less than $50, the payment amount will be adjusted upwards so that no Settlement Class Member shall receive less than $50. This equal distribution approach clearly satisfies the fair and equitable treatment requirement. *See, e.g.*, *Swinton v. SquareTrade, Inc.*, No. 18-cv-00144, 2019 WL 617791, at *8 (S.D. Iowa Feb. 14, 2019) ("There is no requirement that all class members in a settlement be treated equally. And, indeed, class members are not treated equally here. Some are entitled to cash refunds and others only benefit from a coupon and injunctive relief.") (citation omitted).

Based on the foregoing, Plaintiffs and Class Counsel respectfully submit that each of the Rule 23(e)(2) factors support granting final approval of the settlement.

## III.    The *Girsh* Factors Favor Settlement.

### A.  The Complexity, Expense, and Likely Duration of the Litigation.

The first *Girsh* factor is satisfied. As discussed above, this Action raises complex factual and legal questions regarding the alleged non-deliverance of in-person education and services supported by the tuition and fees at issue. The Parties began formal written discovery and engaged in lengthy, hard-fought negotiations. The continued prosecution of these claims will require significant additional expenses to the class, given further discovery and expert costs. Further, no matter the outcome at the district court level, the result will likely be appealed, leading to further costs and delay of any recovery. Thus, this settlement would avoid a myriad of unnecessary

15

expenditures related to further litigation. This avoidance benefits all parties while providing the Settlement Class with immediate benefits, and, thus, weighs in favor of approving settlement. *In re Gen. Motors*, 55 F.3d at 812 (holding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

### B. The Reaction of the Class to the Settlement.

The second *Girsh* factor to consider is the reaction of the class to the settlement. To determine such a reaction, the number of objectors to the settlements is often evaluated. *In re CertainTeed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234–35 (3d Cir. 2001)). Further, silence "constitutes tacit consent to the agreement." *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993). Finally, a low number of objectors or opt-outs is persuasive evidence that the proposed settlement is fair and adequate. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp 2.d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234–35).

This factor is satisfied as only two Settlement Class Members have opted out of settlement, and none have objected. *See* Valerio Decl., ¶ 12; Colella Decl. ¶ 17.

### C. The Stage of the Proceedings and the Amount of Discovery Completed.

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement." *In re Cendant*, 264 F.3d at 235. In assessing this third factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *See In re Warfarin*, 391 F.3d at 537. This does not require the parties to complete discovery. *See Tumpa v. IOC-PA, LLC*, No. 3:18-cv-112, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021) (approving a settlement where the "limited discovery" was sufficient to provide the parties "with an appreciation of the merits of the case"). While the parties did not engage in extensive formal discovery, the

informal discovery produced via the mediation process, along with the help of Hon. Diane Welsh (Ret.), provided Class Counsel with the information needed to objectively evaluate the strengths and weaknesses of Plaintiffs' and Settlement Class Members' claims. *See* Colella Decl., ¶¶ 18, 25. At its current stage, the litigation is ripe for settlement, and, thus, this factor favors final approval.

### D.  The Risks of Establishing Liability and Damages and the Risks of Maintaining the Class Action through Trial.

The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *In re NFL*, 821 F.3d at 439 (citing *In re Prudential*, 148 F.3d at 319).[3] While Plaintiffs and Class Counsel strongly believe in the merits of the case, they acknowledge the substantial risks they face at summary judgment and at class certification. *See Beck v. Manhattan Coll.*, No. 20 CIV. 3229 (LLS), 2023 WL 4266015, at *3 (S.D.N.Y. June 29, 2023), *appeal withdrawn*, No. 23-1049, 2023 WL 9233971 (2d Cir. Oct. 30, 2023) (granting summary judgment on tuition and fee claims in favor of college); *In re Suffolk Univ. Covid Refund Litig.*, No. CV 20-10985-WGY, 2022 WL 6819485, at *4 (D. Mass. Oct. 11, 2022) (denying student motion for class certification). While Plaintiffs and Class Counsel are confident they could overcome any summary judgment motion CMU could bring and are also confident they could certify a class, Plaintiffs' success is far from certain. Through the Settlement, Plaintiffs and

---

[3] The risks of maintaining the class action through "measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial." *In re Warfarin,* 391 F.3d at 537. "Because class certification is subject to review and modification at any time during the litigation, the uncertainty of maintaining class certification favors settlement," but warrants only minimal consideration. *In re Nat. Football League Players' Concussion Inj. Litig.*, 307 F.R.D. 351, 394 (E.D. Pa. 2015) (citing *Zenith Labs., Inc. v. Carter–Wallace, Inc.,* 530 F.2d 508, 512 (3d Cir.1976)).

Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. As such, these factors weigh in favor of final approval.

### E. The Ability of Defendant to Withstand a Greater Judgment.

The Seventh *Girsh* factor considers "whether the defendant[s] could withstand a judgment for an amount significantly greater than the settlement." *In re Warfarin,* 391 F.3d at 537–38. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *In re NFL*, 821 F.3d at 440. Although CMU may have the ability to withstand greater judgment, the favorable result here—a $4.8 million settlement—compared to the risks and expenses attendant to conducting this litigation and the immediacy of the benefit to Settlement Class Members weigh in favor of settlement. *See In re Linerboard Antitrust Litig.*, 321 F. Supp. 2d 619, 632 (E.D. Pa. 2004) ("[T]he settling defendant's ability to pay greater amounts [may be] outweighed by the risk that the plaintiffs would not be able to achieve any greater recovery at trial."). As such, this factor was in favor of final approval.

### F. The Range of Reasonable in Light of Best Possible Recovery and All Attendant Risks of Litigation.

In evaluating the eighth and ninth *Girsh* factors, courts ask "whether the settlement represents a good value for a weak case or a poor value for a strong case." *In re Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Id.* As such, "[t]his inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *In re Gen. Motors*, 55 F.3d at 813. Given that COVID-19 litigation is a relatively novel area of law, the risk of continued litigation is significant, making the instant Settlement,

which provides significant relief to the class now as opposed to years of litigation without the guarantee of recovery, even more reasonable.

## IV.    THE *PRUDENTIAL* FACTORS ARE SATISFIED

### A.    Maturity of the Substantive Issues.

"The first [*Prudential*] factor—maturity of the underlying substantive issues—substantially mirrors the third *Girsh* factor, the stage of the proceedings. Under this factor, the advanced development of the record weighs in favor of approval." *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2024 WL 815503, at *9 (E.D. Pa. Feb. 27, 2024). Here, given Class Counsel's knowledge of the applicable law in the tuition refund context, the substantive issues in this matter are quite mature. Due to the investigation and discussion throughout the litigation of this Action and the Parties' mediation before Judge Welsh, both Parties are in a position to fully evaluate their own strengths and weaknesses. This advanced stage lends itself in favor of final approval of the Settlement.

### B.    The Existence and Probable Outcome of Claims by Other Classes and Subclasses.

Since only two class members have elected to be excluded, this factor weighs heavily in favor of approval. *See* Valerio Decl., ¶ 12.

### C.    The Comparison between the Results Achieved by the Settlement for Individual Class or Subclass Members and the Results Achieved or Likely to be Achieved for Other Claimants

This Settlement is fair and reasonable and provides CMU students with a favorable per student settlement value. Here, this Settlement's approximately $360 per student value far exceeds recovery amounts in other comparable class action settlements involving COVID-19 tuition and fee refunds. *See, e.g.*, *Staubus v. University of Minnesota et al.*, No. 27-cv-20-8546 (Minn. Dist. Ct.) ($3.25 million settlement with a per student recovery of approximately $60); *Pfeifer et al. v.*

*Loyola University of Chicago*, No. 1:20-cv-03116 (N.D. Ill.) ($1.375 million settlement with a per student recovery of approximately $88 per student); *Espejo et al. v. Cornell University*, No. 3:20-cv-00467-MAD-ML (N.D.N.Y.) ($3 million settlement with a per student recovery of $115); *Rocchio et al. v. Rutgers, The State University of New Jersey*, No. MID-L-003039-20 (N.J. Super. Ct.) (approximately $77 per student); *Choi et al. v. Brown University*, No. 1:20-cv-00191 (D.R.I.) (approximately $155 per student); *Smith v. University of Pennsylvania*, No. 20-2086 (E.D. Pa.) (approximately $173 per student); *Levin v. Board of Regents of the University of Colorado*, No. 2020cv31409 (Colo. Dist. Ct., Denver Cnty.) (approximately $75 per student).

Given the risks of litigation, this value is fair and proportional. It is unlikely that Plaintiffs could bring these claims on their own, given the imbalance between the cost of litigation and the limited ability to recover damages. These claims also would be subject to the same defenses outlined above. As such, this *Prudential* factor weighs heavily in favor of final approval.

### D.  Whether Class or Subclass Members Are Accorded the Right to Opt-Out of the Settlement.

"Factor four considers whether class or subclass members are accorded the right to opt out of the settlement." *In re Suboxone*, 2024 WL 815503, at *10. Here, after the Court's Preliminary Approval Order, Notice was provided to the Settlement Class detailing the opt-out procedure and deadline. To date, only two class members have opted out. As such, this *Prudential* factor weighs in favor of final approval.

### E.  Whether Any Provisions for Attorneys' Fees Are Reasonable

As discussed above, the Settlement's provision for attorneys' fees is reasonable and within the range of attorneys' fee awards commonly awarded in this Circuit, and the Notice specifically advised Settlement Class Members of the attorneys' fees and expenses Class Counsel would request the Court to approve.  As such, this *Prudential* factor weighs in favor of final approval.

### F.  Whether the Procedure for Processing Individual Claims under the Settlement Is Fair and Reasonable.

Under the settlement scheme, the procedure for individual claims is fair and reasonable. Each Settlement Class Member will automatically receive their settlement benefit without the need for Settlement Class Members to take any action. Thus, this *Prudential* factor weighs in favor of final approval.

## V.  THE MANNER OF DISTRIBUTION OF THE NET SETTLEMENT FUND IS FAIR AND ADEQUATE.

The standard for approval of a proposed distribution of settlement funds to a class is the same as the standard for approving the settlement itself, *i.e.*, that the distribution plan is fair, reasonable, and adequate. *See In re Suboxone*, 2024 WL 815503, at *11. "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is reasonable." *Id.* (citation omitted); *see also Bradburn Parent Teacher Store, Inc. v. 3M (Minnesota Mining and Manufacturing Company)*, 513 F. Supp. 2d 322, 335 (E.D. Pa. 2007) (approving as reasonable a distribution plan that allocated settlement funds to class members based upon their *pro rata* share of the class's total transparent tape purchases during the damage period, net of invoice adjustments and rebates paid as of the date of the settlement).

Plaintiffs and Class Counsel believe that the proposed manner of distribution is fair and reasonable and respectfully submit it should be approved by the Court. Indeed, as noted above, the manner of distribution treats the Settlement Class equitably; each Settlement Class Members will automatically receive their equal share of the Settlement Benefit, without the need for taking any action. Notably, there have been no objections to the distribution proposal, which supports approval of the distribution plan.

**VI.    THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS FOR PURPOSES OF EFFECTUATING THE SETTLEMENT.**

In their motion for preliminary approval of the settlement, Plaintiffs requested that the Court certify the Settlement Class for settlement purposes only so that notice of the Settlement, the Final Approval Hearing, and the rights of Settlement Class Members to object to the Settlement and request exclusion from the Settlement Class could be issued. For purposes of effectuating this Settlement, the Court should finally certify the Settlement Class. As mentioned in the Court's Order, dated February 19, 2025, the Court preliminarily certified the proposed class (Dkt. No. 79). The class, as preliminarily certified, is:

> All students who were assessed tuition and/or fees to attend at least one in-person course(s) during the Spring 2020 semester at CMU but had their course(s) moved to remote learning; excluding (i) any person who properly executes and files a timely opt-out request to be excluded from the Settlement Class; and (ii) the legal representatives, successors or assigns of any such excluded person.

*Id.* at ¶ 5. Since the Court's entry of the Preliminary Approval Order, nothing has changed to alter the propriety of the Court's preliminary certification of the Settlement Class for settlement purposes. Colella Decl., ¶ 13. Thus, for all of the reasons stated in Plaintiffs' Motion for Preliminary Approval (Dkt. No. 78) (incorporated herein by reference), Plaintiffs respectfully request that the Court affirm its preliminary certification and finally certify the Settlement Class for purposes of carrying out the settlement pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) and make a final appointment of Plaintiffs as the class representatives and Class Counsel as class counsel.

**VII.    NOTICE TO THE SETTLEMENT CLASS SATISFIES THE REQUIREMENTS OF RULE 23 AND DUE PROCESS.**

Rule 23 requires that notice of a settlement be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B), and that it be directed to class members in a "reasonable manner." Fed. R. Civ. P. 23(e)(1)(B). Notice of a settlement satisfies Rule 23(e) and

due process where it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re NFL*, 821 F.3d at 435 (citation omitted). The Third Circuit has also explained that "[g]enerally speaking, the notice should contain sufficient information to enable class members to make informed decisions on whether they should take steps to protect their rights, including objecting to the settlement or, when relevant, opting out of the class." *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013).

Here, the Notice and the method used to disseminate the Notice to Potential Settlement Class Members satisfy these standards. The Court-approved Notice amply informed Settlement Class Members of, among other things: (i) the pendency of the Action; (ii) the nature of the Action and the Settlement Class's claims; (iii) the essential terms of the Settlement; (iv) the proposed manner of distribution of the Net Settlement Fund; (v) Settlement Class Members' rights to request exclusion from the Settlement Class or object to the Settlement, the manner of distribution, or the requested attorneys' fees or expenses; (vi) the binding effect of a judgment on Settlement Class Members; and (vii) information regarding Class Counsel's motion for an award of attorneys' fees and expenses and Case Contribution Awards for Plaintiffs. The Notice also provides specific information regarding the date, time, and place of the Final Approval Hearing, and sets forth the procedures and deadlines for: (i) requesting exclusion from the Settlement Class; and (ii) objecting to any aspect of the Settlement, including the proposed distribution plan and the request for attorneys' fees and expenses and cash awards for Plaintiffs.

Settlement Class Members were mailed and/or emailed notices. *See* Valerio Decl., ¶ 8. RG/2 Claims sent 12,509 emails and 824 first-class mail notices to all identified Settlement Class

Members. *Id.* In total, approximately 99.7% of the Settlement Class received notice of the proposed Settlement. *See id.*, ¶ 15.

Additionally, a settlement-specific website was created where key settlement documents were posted, including the Long Form Notice. *See id.*, ¶ 9. Furthermore, a toll-free telephone number has been set up to respond to frequently asked questions and Class Member inquiries. *Id.*, ¶ 10. Settlement Class Members had until May 19, 2025, to object to the Settlement or request exclusion from the Settlement Class. To date, there have only been two opt-outs and zero objections among class members. *See* Valerio Decl., ¶¶ 12-13; Colella Decl. ¶ 17.

Notice programs, such as the one deployed by Class Counsel, have been approved as adequate under the Due Process Clause and Rule 23. *See In re CertainTeed*, 269 F.R.D. 468. And, in other COVID-19 refund actions against other universities, substantially similar methods of notice have been approved. *See, e.g.*, *Wright v. S. New Hampshire Univ.*, No. 20-cv-609-LM, 2021 WL 1617145, at *2 (D.N.H. Apr. 26, 2021); *see also Rosado v. Barry Univ., Inc.*, No. 1:20-cv-21813-JEM, Order, (S.D.N.Y. Mar. 30, 2021). For these reasons, Notice satisfied the requirements of Rule 23 and due process.

## CONCLUSION

The $4.8 million Settlement obtained by Plaintiffs and Class Counsel represent an excellent recovery for the Settlement Class, particularly in light of the significant litigation risks the Settlement Class faces, including the very real risk of the Settlement Class receiving no recovery at all. For the foregoing reason, Plaintiffs respectfully request that the Court finally approve the proposed Settlement and the proposed manner of distribution of the Net Settlement Fund as fair, reasonable, and adequate.

Dated:  June 20, 2025

Respectfully submitted,

*/s/ Nicholas A. Colella*
**LYNCH CARPENTER, LLP**
Gary F. Lynch (PA 56887)
Nicholas A. Colella (PA 332699)
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322-9243
Gary@lcllp.com
NickC@lcllp.com

**BURSOR & FISHER, P.A.**
Philip L. Fraietta (admitted *pro hac vice*)
1330 Avenue of the Americas
New York, NY 10019
(646) 837-7150
pfraietta@bursor.com

*Class Counsel*